UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

DECURTIS LLC,

        Plaintiff,

v.                                      Civil Action No. 20-22945-Civ-Scola

CARNIVAL CORPORATION,

        Defendant.

---

CARNIVAL CORPORATION,

        Plaintiff,

v.

DECURTIS CORPORATION and
DECURTIS LLC,

        Defendants.

**DECURTIS'S MOTION TO AMEND PROTECTIVE ORDER**

Plaintiff DeCurtis LLC ("DeCurtis") respectfully requests that the Court amend its protective order to provide additional confidentiality protections, including a prosecution bar that would prevent Defendant Carnival Corporation's ("Carnival") counsel from using the information that it obtains from DeCurtis during discovery to amend its existing patent claims and/or assert new claims designed to read on DeCurtis' systems by taking advantage of highly confidential – attorneys eyes only information DeCurtis will disclose in this case. The parties agree that a prosecution bar should be included on all the other proposed amendments to the protective order. The parties even agree on most of the terms of the prosecution bar. The parties' only disagreement relates to whether attorneys who access the other parties' highly confidential – attorneys eyes only technical information, should be permitted to participate in amending claims during post-grant proceedings (*e.g.*, reexamination, reissue, or *inter partes* review ("IPR")).[1]

Good cause exists for a prosecution bar. DeCurtis has sued Carnival for omitting the company's founder, David DeCurtis, from its patent applications—whitewashing DeCurtis's material contributions to the patents that Carnival purports to own—then using these fraudulently obtained patents to damage DeCurtis' business with baseless threats of litigation. The parties are direct competitors in the field of providing technology for guest engagement systems for use on cruise ships. Carnival is represented in this litigation and in the prosecution of its patents by the same firm, Orrick Herrington Sutcliffe ("Orrick"). Because the family of patents that Carnival asserts in this case has a pending application, Carnival may continue to file for new patents, with newly drafted claims, and can seek entitlement to the earliest claimed priority date in the family. 35 U.S.C. § 120. This runs the risk that, absent the requested prosecution bar, Carnival's litigation counsel will use knowledge of DeCurtis's highly confidential information, gained through the litigation process, in order to inform the drafting of new patent rights claiming an earlier priority date.

The parties only dispute is whether the prosecution bar should preclude the parties' counsel from advising or participating in potential claim amendments sought for an existing

---

[1] While DeCurtis is cognizant of the fact that the Court has referred discovery matters to the magistrate judge, it believes this motion falls outside the bounds of this referral because the parties are requesting to amend the Court's standing protective order, which was not entered by Magistrate Judge Torres. DeCurtis respectfully requests the opportunity to brief the Court and present oral argument on the matters submitted herein.

patent in a parallel invalidity proceeding. DeCurtis does not, as a general matter, seek to bar litigation counsel from participating in the defense of such a proceeding. DeCurtis also does not seek to bar a team from Orrick consisting of attorneys who refrain from accessing DeCurtis highly confidential technical information from amending claims in such proceedings. DeCurtis merely asks that those specific attorneys at Orrick who access its highly confidential technical information be barred from affecting the scope of any claims. This request is entirely reasonable and consistent with the very purpose of a prosecution bar. The prosecution bar should be entered as DeCurtis has proposed, and the other provisions that the parties have agreed on should be entered as well.

## FACTUAL BACKGROUND

DeCurtis is a technology company that designs and develops wireless communication technologies, small wearable (or readily portable) devices, and custom software to enable businesses such as cruise lines to improve their guests' experiences by streamlining guest engagement with facilities and facilitating individualized experiences. (Compl. ¶¶ 4, 13-14, ECF 1.[2]) David DeCurtis, the founder of DeCurtis LLC, has been designing and developing such guest engagement systems for more than a decade. (*Id.* ¶¶ 14-17.) DeCurtis first made his mark developing successful systems for Disney Cruise Lines. (*Id.* ¶¶ 15-18.) John Padgett, an executive at Disney, brought DeCurtis into a project to develop guest engagement systems called "MagicBand" and "Be Our Guest" ("BOG"). (*Id.* ¶¶ 19-26.) Disney applied for patents on some of these systems—listing Padgett, DeCurtis, and others as inventors—and DeCurtis expressed concern that the patents did not fully reflect the actual technology, but Padgett waved off his concerns. (*Id.* ¶¶ 66-67.)

Padgett then started working at Carnival, where he was charged with developing a guest engagement system for Carnival's ships similar to Disney's MagicBand system. (*Id.* ¶¶ 27, 29.) He brought DeCurtis in to assist, and they and others designed a successful "proof of concept" of a guest engagement system, known as "OceanMedallion." (*Id.* ¶¶ 29-30.)

DeCurtis later left the project and independently created a brand new end-to-end solution known as the "DeCurtis Experience Platform" (the "DXP System"). (*Id.* ¶¶ 36-37.) The DXP System is a product for cruise lines that was built using DeCurtis's knowledge of general principles based on years of experience in the industry. DeCurtis developed the system without

---

[2] Unless otherwise noted, all references to the ECF docket are for Case No. 20-22945.

2

any source code, technical documents, or other written materials from Carnival. (*Id.* ¶¶ 36, 38) DeCurtis markets the DXP System to cruise lines, including Carnival's competitors. (*Id.* ¶ 39.)

In 2017, Carnival began filing applications and obtained several patents relating to guest engagement systems based on its "OceanMedallion" system. (*Id.* ¶ 43.) Carnival obtained these patents, however, by fraud on the U.S. Patent and Trademark Office. (*Id.* ¶¶ 44-84.) As detailed in DeCurtis's complaint, Carnival and its agents (a) intentionally failed to identify David DeCurtis as an inventor on the patents, and (b) intentionally concealed prior art that was material to patentability, particularly relating to the Disney BOG system and MagicBand. (*Id.*)

Carnival then began wielding the fraudulently obtained patents as a weapon against DeCurtis LLC. Early this year, Carnival's lawyer sent letters to David DeCurtis and his customers, Norwegian Cruise Lines ("NCL") and Virgin Voyages, two cruise lines that had recently announced implementation of the DXP System. The letters suggested that the systems infringed Carnival's "robust and growing" patent portfolio, placing a cloud of suspicion over DeCurtis's business and causing it actual financial injury. (*Id.* ¶¶ 89-90, 94-96.)

## PROCEDURAL BACKGROUND

On April 8, 2020, DeCurtis LLC filed this action in the Middle District of Florida. Two days later, Carnival sued DeCurtis separately in the Southern District of Florida alleging infringement of three patents that were already the subject of DeCurtis LLC's lawsuit, as well as accusing DeCurtis of trade secret misappropriation and breach of contract. On July 15, 2020, this action was transferred to the Southern District of Florida, and on July 29, 2020, it was consolidated with Carnival's action into a single action before the Honorable Robert N. Scola as Case No. 20-22945.

Before the actions were consolidated, the parties had begun negotiations over a protective order. On July 1, 2020, Carnival sent DeCurtis a proposed protective order that would govern both actions. Declaration of Patrick Schmidt in Support of Motion ("Schmidt Decl."), Ex. 1. The order that Carnival drafted was essentially identical to the model protective order that is used in the Northern District of California. *See id.*, Ex. 2 (model protective order). The only significant change that Carnival made was to completely delete the prosecution bar that the model order provides. *Id.*, Ex. 3 (redline of Carnival's original proposed order and the model protective order). On July 22, 2020, DeCurtis proposed edits to the protective order that, among other things, added the prosecution bar back in. *Id.*, Ex. 4. Carnival requested to meet and

3

confer to discuss the protective order. *Id.* ¶ 5.

On July 23, 2020, the Court issued its own, standing protective order, which did not include a prosecution bar or several other protections that were provided for in the order that the parties had been negotiating (source code provisions, protections for third-party confidentiality, etc.). (ECF 44.)

On July 24, 2020, counsel met and conferred to discuss the protective order and in particular, the prosecution bar. Carnival's counsel, Robert L. Uriarte, claimed Carnival was not opposed in principle to having a prosecution bar, but also that it did not want Orrick's attorneys to be precluded entirely from representing Carnival in patent prosecution proceedings. Mr. Uriarte said Carnival would propose some language "aimed at addressing [DeCurtis's] concerns about making sure that AEO information is not used to inform the scope of any claim amendments," in addition to making some other changes to narrow and clarify the scope of the bar. Schmidt Decl., Ex. 5 at 1. Carnival also suggested that the parties could abandon using the protective order that the parties had been negotiating (the one based on the Northern District of California model) and instead modify the Court's existing order to include the protections that the parties believed were necessary. *Id.*

On August 7, 2020, Carnival sent proposed revisions to the protective order that the parties had been negotiating. Schmidt Decl., Ex. 6. In addition to changes to the information that would trigger the prosecution bar and subject matter covered by it, Carnival proposed a significant exception to the scope of the activities covered by the bar, allowing counsel who had reviewed DeCurtis's highly confidential material related to the technology that Carnival had patented to nevertheless represent it "in a proceeding involving a challenge to a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, post-grant review, ex parte reexamination or *inter partes* reexamination review)." *Id.* § 8.

On August 14, 2020, DeCurtis returned the draft protective order to Carnival, accepting all of Carnival's changes to the order, including this significant concession of allowing counsel with access to highly confidential - attorneys eyes only technical information to participate in a post-grant challenge. DeCurtis proposed, however, a narrow carve-out that barred counsel, even if was representing Carnival in a challenge to its patents generally, from specifically participating "in drafting or advising on any amendments or alterations to any patent claim(s) in such proceeding." Schmidt Decl., Ex. 7 § 8.

4

On August 18, 2020, Carnival's counsel, T. Vann Pearce, responded by flatly refusing to agree to this limitation. Schmidt Decl., Ex. 9 at 6. No explanation for the refusal was offered. *Id.*

On September 1, 2020, DeCurtis informed Carnival that it would have no choice but to file a motion for a protective order if Carnival would not agree to the prosecution bar as drafted. *See id.* Ex. 9 at 5. DeCurtis also proposed to modify the Court's already-entered protective order to include any additional provisions that were in the protective order that the parties had been negotiating that were not already included in the Court's order, and asked Carnival to confirm there was no dispute as to these provisions. *See id.*

On September 2, 2020, Mr. Pearce, again, flatly refused to agree to the narrow provision that DeCurtis had suggested, claiming that it "would create an unfairness that Carnival cannot accept." *Id.*, Ex. 9 at 4. DeCurtis responded the same day to ask Carnival to explain what was "unfair" about the provision prior to the parties' meeting and conferring in anticipation of a motion. *See id.* Mr. Pearce replied that Carnival thought the provision was unfair because, if any post-grant challenges are initiated, they would likely be initiated by DeCurtis and a bar on litigation counsel helping to draft amendments during such a proceeding would restrict only Carnival's ability to choose its counsel, and not DeCurtis's. *Id.* at 2-3. As DeCurtis's counsel explained in response, on September 3, 2020, the fact that DeCurtis does not have patents but Carnival does is not unfair. *Id.*, Ex. 9 at 2.

The parties met and conferred on September 8, 2020. Schmidt Decl. ¶ 13. Mr. Pearce confirmed that the parties' dispute was limited to the particular clause that barred counsel with access to highly confidential – attorneys' eyes only technical information from amending or altering patent claims in a proceeding challenging a patent, and that Carnival did not object to any other aspect of the bar. *Id.* Mr. Pearce stated, however, that Carnival was not willing to agree to the particular clause DeCurtis had proposed and that the matter would need to be resolved by the Court. *Id.*

On September 18, 2020, the parties reached an agreement on the other terms of the protective order. The final proposed order is attached to the Schmidt Declaration as Exhibit 22, and a redline of changes from the Court's original order is Exhibit 23. The sole disputed clause is highlighted below:

Prosecution Bar: Absent written consent from the producer, any individual who

receives access to Highly Confidential or Highly Confidential – Source Code material comprising technical information (a "Barred Person") shall not be involved in the prosecution of patents or patent applications relating to providing automated engagement with guests of a facility using wireless sensing technology, including, without limitation, the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims. To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party, whether the patent owner, the patent challenger, or a third party, in a proceeding involving a challenge to a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, post-grant review, ex parte reexamination or inter partes review), but Barred Persons (including counsel for the receiver) may not participate, directly or indirectly, in drafting or advising on any amendments or alterations to any patent claim(s) in such proceedings. This Prosecution Bar shall begin when access to Highly Confidential or Highly Confidential – Source Code comprising technical information is first received by the affected individual and shall end two (2) years after final termination of this action.

## ANALYSIS

### I. THE PROPOSED PROSECUTION BAR REASONABLY REFLECTS THE RISK OF DISCLOSURE OF DECURTIS'S PROPRIETARY COMPETITIVE INFORMATION

The purpose of a prosecution bar is "to guard against the risk of inadvertent disclosure that may arise when litigation counsel with access to an opposing party's confidential information also prosecutes patents before the U.S. Patent and Trademark Office ('PTO') on behalf of the client." *Finjan, Inc. v. ESET, LLC*, 2017 WL 6557760, at *2 (S.D. Cal. Dec. 21, 2017). "[A] party seeking imposition of a patent prosecution bar must show that [1] the information designated to trigger the bar, [2] the scope of activities prohibited by the bar, [3] the duration of the bar, and [4] the subject matter covered by the bar reasonably reflect the risk

6

presented by the disclosure of proprietary competitive information." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1381 (Fed. Cir. 2010). Here the risk of disclosure is significant and the proposed prosecution bar is narrowly tailored based on all four *Deutsche Bank* criteria to address that risk.

### A. There is a Significant Risk That Carnival's Counsel Will Use DeCurtis's Proprietary Competitive Information to Amend or Alter its Claims

Carnival is currently represented in this litigation and before the USPTO by the same counsel, Orrick, which poses a significant risk that DeCurtis's technical information will be misused. Patent prosecutors are often "competitive decisionmakers" for their clients because they play a "significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios." *Deutsche Bank*, 605 F.3d at 1379. Accordingly when patent prosecutors are currently representing a litigant who is pursuing patent infringement claims *and* is in a position to file new applications related to the same patents or amend the existing claims, courts routinely hold that a prosecution bar is appropriate to avoid the risk of inadvertent disclosures. *See Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, 2014 WL 6629431, at *3 (N.D. Cal. Nov. 21, 2014) ("[A]llowing KSEA's counsel to have access to Stryker's confidential information about camera and operating room technology while simultaneously continuing to amend or otherwise prosecute patents in the same field is just the type of unfair competitive advantage that a prosecution bar is designed to avoid."); *In re Papst Licensing, GmbH, Patent Litig.*, 2000 WL 554219, at *4 (E.D. La. May 4, 2000) (where litigation counsel was involved in the "preparation and prosecution of patent applications related to the patents in suit" and had the "ability to file new claims in existing and pending patents based on the confidential information discovered during the course of this litigation," there is "an unacceptable opportunity for inadvertent disclosure and misuse").

Here, the possibility that information and documents will be produced in discovery that could be misused by Carnival's counsel cannot be disputed, and indeed Carnival has not disputed it. DeCurtis and Carnival are direct competitors in the field of guest engagement systems using wireless sensing technology, which is the subject matter of Carnival's patents. DeCurtis has sued Carnival for passing off as its own ideas that Mr. DeCurtis came up with or brought to Carnival, patenting those ideas without crediting Mr. DeCurtis as an inventor, and then using these fraudulently obtained patents to try to prevent DeCurtis from working with Carnival's competitors in the cruise industry. (Complaint ¶¶ 44-90, 94-96.) Given this background,

7

DeCurtis reasonably fears that Carnival will, even if not intentionally, use the information it obtains in discovery from this action to, draft further patent claims targeted directly to highly confidential features of DeCurtis's technology. Carnival has already propounded numerous document requests that seek exactly the type of documents that could be misused if they fall into the hands of a competitive decision maker at Carnival. *See* Schmidt Decl., Exs. 10 at 9-10 and 11 (requests for "[a]ll Documents used by DeCurtis in any way to aid in the design or development of the Relevant Systems," "Documents sufficient to show the design, architecture, and operation of the Relevant Systems," and "All source code relating to the Relevant Systems," as well as requests for all the source code and devices for the systems at issue).

The possibility of misuse is all the more concrete in this case because Carnival's counsel, Orrick, is a highly experienced patent prosecution firm with dozens of patent prosecutors,[3] one of whom is Carnival's lead counsel in this litigation, T. Vann Pearce. *See* Schmidt Decl., Ex. 12 (USPTO page for Mr. Pearce); Ex. 13 (list of 35 Orrick attorneys registered with the USPTO). Orrick prosecuted two of the patents at issue in this lawsuit and is currently prosecuting an application that is a continuation of the family of patents at issue. *See* Schmidt Decl., Exs. 14 (10,499,228 patent listing Orrick as counsel), 15 (10,304,271 patent listing Orrick as counsel), and 16 (transmittal letter for Application No. 16/663,942, signed by Orrick attorney, Joseph A. Chern). Because the family for these patents is still open, Carnival, guided by its counsel at Orrick, can write new applications, with new claims, entitled to the original priority date of the first two patents (2016) at any time. *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326 (Fed. Cir. 2008) ("[I]n a chain of continuing applications, a claim in a later application receives the benefit of the filing date of an earlier application . . . ."). Situations like this, where counsel has the opportunity to both review and use confidential information in an ongoing patent proceeding, are "just the type of unfair competitive advantage that a prosecution bar is designed to avoid." *Karl Storz Endoscopy-Am., Inc.*, 2014 WL 6629431, at *3.

In negotiations over the proposed protective order, Carnival has admitted that it wants to

---

[3] On its website, Orrick touts that "in the last five years, we've handled more than 155 IPRs, either on a stand-alone basis or as part of a broader litigation strategy. Our team of 20+ IP practitioners far exceed win rate averages by combining deep technical know-how, skilled drafting and case management efficiency." "Inter Partes Review (IPR)," Orrick Herrington & Sutcliffe LLP, *available at* https://www.orrick.com/en/Practices/Inter-Partes-Review-IPR (last visited on September 8, 2020).

8

use Orrick attorneys to amend its claims if a challenge is brought by DeCurtis in the USPTO. *See* Schmidt Decl., Ex. 9 at 2-3 (complaining that it would be unfair if Carnival had to "retain separate counsel (whether a separate firm or separate set of attorneys at its current firm(s)) to handle a motion to amend" in an IPR or post-grant review proceeding). But courts have routinely recognized "that even in a reexamination proceeding, a patent owner can use confidential information to restructure or amend its claims so as to improve its litigation position against alleged infringers," which is what a prosecution bar is intended to prevent. *Voice Domain Techs., LLC v. Apple, Inc.*, 2014 WL 5106413, at *9 (D. Mass. Oct. 8, 2014) (quoting *Telebuyer, LLC v. Amazon.com, Inc.*, 2014 WL 5804334, at *6 (W.D. Wash. July 7, 2014)). Since the attorneys that Carnival uses to amend or restructure its claims during such a proceeding constitute the type of "competitive decision makers" who present a serious risk for misuse of Carnival's confidential information, any prosecution bar entered must prevent these attorneys from having the ability to shape the scope of Carnival's claims.

### B. The Prosecution Bar is Reasonably Tailored to the Risk of Disclosure

Given that there is a risk to DeCurtis from the disclosure of its proprietary competitive information in the litigation, the next question is whether the proposed prosecution bar reasonably reflects that risk based on the four criteria articulated in *Deutsche Bank*: (1) the information designated to trigger the bar, (2) the scope of activities prohibited by the bar, (3) the duration of the bar, and (4) the subject matter of the bar.

#### 1. There Is No Dispute as to Three of the Four of the *Deutsche Bank* Criteria

In meeting and conferring, Carnival has conceded that it has no objection to any portion of the prosecution bar except the narrow clause pertaining to counsel amending or altering a claim in the course of a challenge to an issued patent. Accordingly, for three of the four criteria, there is no dispute that the prosecution bar is reasonably tailored to address the risk that confidential information will be misused.

*Information Designated*. The prosecution bar is triggered when attorneys get access to materials "comprising technical information" that are designated as "Highly Confidential" or "Highly Confidential – Attorney's Eyes Only," which other courts have found to be a reasonable basis for triggering a prosecution bar. *See, e.g.*, *Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC*, 881 F. Supp. 2d 254, 258 (D.P.R. 2012). Carnival drafted this language and does not dispute it is reasonable, nor could it. *See Telebuyer*, 2014 WL 5804334, at *4 (party opposing

9

prosecution bar could not complain when moving party used its own language to draft the bar because it "has made its own bed").

*Subject Matter*. The subject matter of the prosecution bar is limited to technology "relating to providing automated engagement with guests of a facility using wireless sensing technology," which is no broader than the subject matter of the patents in this lawsuit, a standard benchmark for reasonableness in the scope of a patent prosecution bar. *See Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, 2011 WL 197811, at *3 (N.D. Cal. Jan. 20, 2011) ("[T]he proper subject matter of the proposed prosecution bar in this case should be coextensive with the subject matter of the patents-in-suit, . . . .").

*Duration*: A prosecution bar that lasts only two years from the termination of an action has been found reasonable by many courts. *See, e.g.*, *Ameranth, Inc. v. Pizza Hut, Inc.*, 2012 WL 528248, at *7 (S.D. Cal. Feb. 17, 2012) ("The purpose of the bar is to prevent inadvertent disclosure of confidential information. A two-year bar fulfills this purpose more so than a one-year bar, as the confidential information will be less readily available in the memory of counsel."); *Telebuyer*, 2014 WL 5804334, at *7 (similar). During the meet and confer process leading up to this motion, Carnival never objected to the duration proposed or suggested any alternative. Schmidt Decl. ¶¶ 7-14.

## 2. Barring Counsel With Access to Highly Confidential Material From Amending Claims in a Post-Grant Proceeding is Reasonable

The scope of the prosecution bar is the sole *Deutsche Bank* factor in dispute. Carnival agrees counsel should be barred from drafting or amending claims in a patent prosecution proceeding if it has access to the opposing party's confidential information, but refuses to agree to the same thing in the context of an invalidity proceeding challenging an existing patent. Carnival's position is out of step with the modern practice for prosecution bars. As William C. Bryson, a senior Federal Circuit Court of Appeals judge, explained in *British Telecommunications PLC v. IAC/InterActiveCorp*, a prosecution bar that "allow[s] counsel who have had access to confidential information to participate in post-grant proceedings, but prohibiting them from participating in drafting or amending claims in those proceedings" "strike[s] an appropriate balance between the parties' competing interests" because it affords "modest protection" to the party concerned about disclosure while not imposing a particular

10

"heavy" burden on the patent holder.[4]  330 F.R.D. 387, 398 (D. Del. 2019); *see also, e.g.*, *Grobler v. Apple, Inc.*, 2013 WL 3359274, at *2 (N.D. Cal. May 7, 2013) (approving prosecution bar where "litigation counsel is prohibited from assisting in any crafting or amendment of patent claims" but not barred entirely from prosecuting patents); *Kelora Sys., LLC v. Target Corp.*, 2011 WL 6000759, at *7 (N.D. Cal. Aug. 29, 2011) (similar).  At least one court in this district has recognized the influential weight of Judge Bryson's analysis of the appropriate scope of a prosecution bar.  *See CustomPlay, LLC v. Amazon.com, Inc.*, 2019 WL 2251110, at *4 (S.D. Fla. May 24, 2019) (favorably citing Circuit "Judge Bryson's excellent opinion in *British Telecommunications*").

      Carnival has refused to agree to the proposed scope for two reasons.  First, Carnival complains that it would be burdensome for it to have to either obtain separate counsel to amend its claims in a proceeding challenging the patents or to have a separate team at Orrick handle the amendment.  This concern is not credible.  As Judge Bryson explained in *British Telecommunication*, a prosecution bar that allows the patent holder's counsel to either have access to an opposing party's confidential material or participate in amending or altering claims, but not *both*, may be an "inconvenience" for the patent holder but it hardly "rise[s] to the level of severe prejudice."  330 F.R.D. at 395.  Most of the patents at issue in this case were not prosecuted by Orrick, but by McDermott Will & Emery, so Carnival clearly has access to alternative counsel that is already familiar with the technology and patent family at issue, which militates against any argument of prejudice.  *See Carlson Pet Prod., Inc. v. N. States Indus., Inc.*, 2019 WL 2991220, at *9 (D. Minn. July 9, 2019) (fact that patent holder had "another outside patent-prosecution counsel" who had "been involved in [client's] patent applications for a number of years" meant that application of the protective bar would not deprive patent owner of "a patent-prosecution attorney familiar with its technology or its strategic interests"); Schmidt Decl., Exs. 17-21 (other patents at issue listing McDermott as counsel).  Furthermore, a large law firm like Orrick easily has the capacity to field a separate team to handle amendments to a claim

---

[4] There has been a clear "trend of recent decisions by courts" adopting this approach. *British Telecommunications*, 330 F.R.D. at 398 (collecting cases). Other courts have sometimes allowed counsel to participate in amending claims in post-grant proceedings, but these decisions have either (1) predated the recent trend among courts in barring this practice, (2) failed to consider the possibility of including such a narrow carve-out like the one proposed by DeCurtis here, or (3) involved unique facts that made a prosecution bar unusually burdensome on the affected party. *Id.* at 398. There is no reason the Court should follow the approach of these courts here.

in an IPR or reexamination proceeding. Courts have entered prosecution bars under circumstances that were far more onerous to a patent holder than that faced by Carnival. *See, e.g.*, *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1295 (D.N.M. 2015) (despite finding patent holder would "face significant difficulty" replacing counsel who were "intimately familiar" with technology in a "highly specialized area with a steep learning curve," court nevertheless barred counsel from representing client in litigation and USPTO at the same time).

Second, Carnival contends that the bar is not "bilateral" because, if DeCurtis were to initiate a challenge to Carnival's patent in the USPTO, DeCurtis would be able to use its litigation counsel freely but Carnival would only be able to use Orrick for non-amendment related representation. Schmidt Decl., Ex. 9 at 2. But the prosecution bar is perfectly "bilateral" because, on its face, it applies equally to both parties (*i.e.*, DeCurtis's counsel cannot use Carnival's confidential information to prosecute patents or amend claims either). Schmidt Decl. Ex. 22 ¶ 5. The fact that Carnival has patents but DeCurtis does not, does not render the prosecution bar unfair. DeCurtis is simply more likely to need the protection afforded by the prosecution bar than Carnival.[5]

Considering the information that triggers the bar, the subject matter covered, the duration, and the scope of activity prohibited, the prosecution bar proposed here reasonably reflects the risk of disclosure DeCurtis faces and therefore should be entered along with the rest of the protective order.

## II. CARNIVAL CANNOT SHOW THERE IS ANY BASIS FOR EXEMPTION

Once a moving party has shown the proposed prosecution bar reasonably reflects the risk of disclosures the burden shifts to the opposing party to show why any individual attorney should be exempt from the bar. Carnival must show "on a counsel-by-counsel basis" that (1) each lawyer that will represent it "in matters before the PTO does not and is not likely to implicate

---

[5] Carnival also belatedly complained at the parties' meet and confer that the bar is vague because it is supposedly unclear what "indirectly" participating in drafting or advising on an amendment or alteration means. Other prosecution bars, including the model order from the Northern District of California, use this word. *See* Schmidt Decl. Ex. 2 § 8. It has an ordinary, easy-to-understand meaning: counsel cannot do an end-run around the prosecution bar by giving advice or hints to separate counsel who are the ones "directly" drafting the amendment. In any event, Carnival has offered no alternative formulation or proposal to address this supposed lack of clarity, so its concerns should be overruled.

competitive decision making related to the subject matter of the litigation" and (2) "the potential injury to the [party requesting exemption] from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." *Deutsche Bank*, 605 F.3d at 1381 (emphasis added). Carnival cannot show either.

### A. Any Attorney That Meets the Narrow Criteria for Being Subject to the Prosecution Bar Is Likely to Be Involved in Competitive Decisionmaking for Carnival

In meeting and conferring, Carnival has not specifically identified any attorneys it would like to be exempted from the prosecution bar. As far as DeCurtis is aware, there are no attorneys representing Carnival currently who will both have access to DeCurtis's highly confidential information in this litigation and are prosecuting or defending its patents before the USPTO, which makes Carnival's flat refusal to agree to a narrow prosecution bar all the more inexplicable. But if there are any such attorneys, it would be difficult if not impossible for Carnival to show that their representation of Carnival before the USPTO does not "implicate competitive decisionmaking" for Carnival on the subject matter of this litigation. As the *Deutsche Bank* court explained, any attorneys who play "significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios" or "strategically amending or surrendering claim scope during prosecution" are "not likely be properly exempted from a patent prosecution bar." *Deutsche Bank*, 605 F.3d at 1379. If Carnival comes forward in its opposition with the names of attorneys that it believes should be exempt, it is doubtful there would be any grounds to do so.

### B. The Potential Injury to DeCurtis From the Misuse of its Highly Confidential Information Far Outweighs Any Harm to Carnival From Restricting Its Choice of Counsel

DeCurtis has a very concrete concern that Carnival will misuse its highly confidential information to apply for new patents or amend existing ones because it essentially already did so, which is the entire reason this litigation arose in the first place. By comparison, the impact on Carnival from the entry of this prosecution bar should be virtually non-existent. *See supra* Section I.A.2. Requiring Carnival not to allow the same counsel to have access to DeCurtis's highly confidential information in this case and to apply for new patents or amend existing ones imposes no meaningful burden on Carnival, and certainly none when compared to the significant risk of inadvertent disclosure that DeCurtis faces in the absence of such protection. A patent

13

prosecution bar should be entered with the proposed protective order.

### III. GOOD CAUSE EXISTS FOR OTHER PROPOSED MODIFICATIONS

The parties agree on all of the other proposed amendments to the proposed protective order. These amendments add provisions addressing issues related to source code review, the confidentiality of third-party materials, requests for confidential materials made in other litigation, and unauthorized disclosures, as well as a few other changes. A redline of the revisions to the Court's existing order can be seen as Exhibit 23 to the Schmidt Declaration. Good cause exists for the addition of these provisions because they help to protect the confidentiality of the parties' materials as well as the materials of third-parties, they impose no additional burden on the Court in overseeing the litigation, and they will make discovery proceedings more just and efficient. The parties respectfully request that the Court amend its protective order to include these provisions.

### CONCLUSION

In light of the foregoing, DeCurtis's request for a prosecution bar should be granted and the protective order amended as proposed.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), the below-signed counsel hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

Dated: September 25, 2020

Respectfully submitted,

DECURTIS LLC

By: */s/ Jason P. Stearns*
    One of its attorneys

David C. Gustman (Pro Hac Vice pending)
Jeffery M. Cross (Pro Hac Vice pending)
Jill C. Anderson (Pro Hac Vice pending)
Jennifer L. Fitzgerald (Pro Hac Vice pending)
**FREEBORN & PETERS LLP**

311 S. Wacker Drive, Suite 3000
Chicago, IL 60606

Jason Stearns
Florida Bar No. 059550
**FREEBORN & PETERS LLP**
201 N. Franklin Street, Suite 3550
Tampa, FL 33602
Tel. (813) 488-2920
Email: jstearns@freeborn.com
        ckitchell@freeborn.com

| | |
|---|---|
| Tel. (312) 360-6000<br>Email:  dgustman@freeborn.com<br>            jcross@freeborn.com<br>            janderson@freeborn.com<br>            jfitzgerald@freeborn.com | Attorneys for Plaintiff DeCurtis LLC and<br>DeCurtis Corporation |

Scott L. Watson (Pro Hac Vice pending)
Justin C. Griffin (Pro Hac Vice pending)
Patrick T. Schmidt (Pro Hac Vice pending)
Zachary A. Schenkkan (Pro Hac Vice pending)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**

865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel. (213) 443-3000
Email:  swatson@quinnemanuel.com
            justingriffin@quinnemanuel.com
            patrickschmidt@quinnemanuel.com
            zackschenkkan@quinnemanuel.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September25th, 2020, the foregoing was filed and served by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

<i>/s/   Jason P. Stearns</i><br>
Jason P. Stearns