**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**DECURTIS LLC,**

                **Plaintiff,**

**v.**                                   **Civil Action No. 1:20-cv-22945-RNS**

**CARNIVAL CORPORATION,**

                **Defendant.**               **Oral Argument Requested**

_____

**CARNIVAL CORPORATION,**

                **Plaintiff,**

**v.**

**DECURTIS CORPORATION and**
**DECURTIS LLC,**

                **Defendants.**

**<u>DECURTIS'S REPLY IN SUPPORT OF ITS</u>**
**<u>MOTION TO AMEND PROTECTIVE ORDER</u>**

## PRELIMINARY STATEMENT

The Opposition seeks to minimize the risk that Carnival could use DeCurtis's highly confidential – attorney's eyes only ("AEO") technical information to amend Carnival's patents in an *inter partes review* ("IPR") proceeding. Carnival claims there are IPR procedures and USPTO rules that "mitigate" this risk, but it does not cite any that offer explicit protection. If there were such procedures or rules, courts would not need to enter prosecution bars like the one requested here. Yet they do, and in fact it is the favored approach in modern patent practice. As Senior Federal Circuit Judge William C. Bryson explained in *British Telecommunications PLC v. IAC/InterActiveCorp*, 330 F.R.D. 387, 396 (D. Del. 2019), a bar that allows a patentee's litigation counsel to participate in IPR proceedings so long as they do not advise on the drafting of any claim amendments strikes a reasonable balance between the patentee and the alleged infringer's competing interests. Carnival fails to explain why the clear guidance articulated by Judge Bryson in *British Telecommunications* should not be followed here.

Carnival also argues there is some uncertainty about what type of AEO material might be produced in this litigation that Carnival could use to amend its claims to DeCurtis's detriment. Carnival's argument is disingenuous; it knows exactly what type of material DeCurtis is concerned will be misused. The parties are direct competitors, worked together for years, and are asserting claims and counter-claims for unfair competition, patent infringement, and trade secret misappropriation, all centered on guest engagement technology involving wearable devices. Carnival is seeking in discovery the source code and technical documents that undergird all of the major features of DeCurtis' guest engagement systems. Any competent patent attorney with access to such material could use it to revise Carnival's patents to read directly onto DeCurtis's technology while avoiding prior art.

While Carnival claimed during the months of negotiations between the parties that it was opposed to the bar that DeCurtis was proposing because it would not be "bilateral" and it would be burdensome for Carnival to have to use separate counsel to amend a claim in an IPR proceeding, those arguments are barely an afterthought in the Opposition. Carnival submits no declaration or other evidence establishing that it is particularly important that it use its litigation counsel in an IPR proceeding. Carnival weakly complains that it would be put "in a difficult situation" if it had to "coordinat[e] litigation strategy and consistent arguments between multiple sets of counsel" (at 10), but that is a "situation" that AmLaw 100 firms must deal with on a

regular basis when representing multinational corporations asserting claims for patent infringement and trade secret misappropriation against a competitor. The marginal inconvenience Carnival would be put through pales in comparison to the prejudice DeCurtis would suffer if Carnival were able to misuse DeCurtis's AEO information to amend its patents to read directly onto DeCurtis's technology. Not only would that pave the way for Carnival to seek significant damages from this litigation, but it could potentially destroy DeCurtis's entire business which is predicated on developing and implementing guest engagement systems like those at issue here for cruise lines and related industries. A prosecution bar preventing Carnival's litigation counsel with access to AEO information from advising on the drafting of any claim amendments is reasonable and should be entered.

## **ARGUMENT**

**I.     IPR PROCEDURES AND USPTO PATENT RULES WILL NOT PREVENT CARNIVAL FROM AMENDING CLAIMS USING DECURTIS'S CONFIDENTIAL INFORMATION**

Carnival argues (at 6-7) that DeCurtis's concern about the misuse of its AEO material is "misplaced" because there are IPR procedures and USPTO rules that "mitigate" this risk.[1] Carnival is unable to cite to any procedures or rules that would actually have the effect of preventing Carnival's counsel from using what it learns about DeCurtis's technology to amend DeCurtis's claims in an IPR proceeding—because no such rules exist.

The single USPTO rule that Carnival cites (six times) states expressly that Carnival *can* amend its claims in an IPR proceeding, and can even do so more than once upon a proper showing. 37 C.F.R. § 42.121(a), (c). The various procedural and technical obstacles to amending a claim that Carnival cites—e.g., the patentee must confer with the board, must "clearly show" the basis for the changes, cannot enlarge the scope of the claim, and must satisfy the general requirements of patent eligibility—do not limit Carnival's ability to use AEO information to draft claims. Carnival misleadingly says (at 7) that it would be unable to

---

[1]     Carnival has sandbagged DeCurtis by raising this argument for the first time in the Opposition. As can be seen from the correspondence that DeCurtis submitted previously, Carnival's purported concern during the meet and confer process was that the prosecution bar was not "bilateral" enough. (*See, e.g.*, Schmidt Decl. Ex. 2 at 2-3.) In its opposition, Carnival moves the goal posts, focusing almost entirely on arguments that DeCurtis is not likely to be prejudiced in a reexamination proceeding and making only a token attempt to show Carnival will be unfairly prejudiced by the proposed prosecution bar. *See infra* Section III. Carnival's gamesmanship serves as an addition ground for the rejection of its arguments.

2

"unilaterally" amend and that "DeCurtis would have the opportunity to respond" to any amendment, but that is beside the point.  In the context of a proposed amendment in the IPR, DeCurtis may have the ability to respond to whether the amendment is proper under the USPTO rules (*e.g.*, whether it avoids the prior art, does not enlarge the claim, and satisfies the other requirements of patent eligibility), but those rules do not allow DeCurtis to question whether Carnival has misused DeCurtis's confidential information in drafting a narrowing amendment. Carnival does cite any instance in which the USPTO entertained a request to police the patentee's suspected use of a respondent's AEO information produced in separate litigation, or otherwise refused to allow an amendment because the patentee was shown to have exploited such AEO information.  Nor is DeCurtis aware of any such precedent.[2]

While Carnival makes much of the fact that it is only possible to "narrow" a claim in an IPR proceeding, that does not mean Carnival could not misuse DeCurtis's AEO material.  As Judge Bryson explained in *British Telecommunications PLC*, "even though claims may only be narrowed in post-grant proceedings, the risk associated with the improper use of confidential information is that the patent prosecutors can arrange to strategically narrow claims to avoid prior art while still capturing the defendants' products."  330 F.R.D. at 396 (internal quotations omitted).  Under normal circumstances, amending a claim involves a degree of uncertainty because the patentee does not know whether, in narrowing a claim, it may undermine its infringement position by making the patent too narrow to apply to its competitors' products.  But if the patentee's counsel knows the specific details of the competitor's technology, because it has had access to its source code and technical documents, as Carnival's litigation counsel will in this case, then narrowing the claim in a way that maps onto the competitor's systems, while avoiding the prior art, is relatively easy to do.

---

[2]   Carnival also argues that it is unnecessary to apply a prosecution bar to amending claims in an IPR proceeding because the protective order already precludes parties from using designated material for any purpose other than this litigation.   As the Federal Circuit explained in *Deutsche Bank*, such provisions are inadequate, and the whole purpose of adding a prosecution bar to a protective order is to address their inadequacy.  *See In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("Typically, protective orders include provisions specifying that designated confidential information may be used only for purposes of the current litigation. . . . Courts have recognized, however, that there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise.").

Carnival does not deny, or even really address, the fact that a narrowing amendment in an IPR proceeding may be used to map a claim into a competitor's system in an IPR proceeding, and thus its argument that IPR procedures and USPTO rules protect DeCurtis is unpersuasive and should be rejected.

## II.     CASE LAW SUPPORTS IMPOSING A PROSECUTION BAR RESTRICTING LITIGATION COUNSEL FROM AMENDING CLAIMS IN IPR PROCEEDINGS

As discussed in DeCurtis's motion (at 10-12), while courts applying *Deutsche Bank* were at one time skeptical that about the need to bar litigation counsel from amending or altering claims in an IPR proceeding, that is the modern practice as discussed in *British Telecommunications PLC*. Carnival's efforts to distinguish Judge Bryon's "excellent opinion" in *British Telecommunications PLC,* and the cases collected therein, fall short. *See CustomPlay, LLC v. Amazon.com, Inc.*, 2019 WL 2251110, at *4 (S.D. Fla. May 24, 2019).

Carnival claims that "recent USPTO precedent and motion to amend practice have, in effect, addressed" the concerns raised in *British Telecommunications PLC* and other cases "by making clear that proposed claim amendments are intertwined with substantive responses regarding prior art invalidity."[3] (Opp. at 8.) Carnival cites no actual authority suggesting this is true, and the argument does not follow logically. Whether or not a patentee's amendment must address prior art invalidity, the patentee can still "strategically narrow claims to avoid prior art while still capturing the defendants' products" which represents "a potentially significant risk of prejudice from the plaintiff's attorneys' exposure to the defendants' confidential materials." *British Telecommunications PLC*, 330 F.R.D. at 396. That a patentee may not be able to "proactively" (Opp. at 8) offer the narrowing amendment, but rather must make the amendment to address a ground of invalidity, is not a meaningful, or even relevant, limitation on the patentee's opportunity to misuse AEO information. The whole purpose of an IPR proceeding is to challenge the validity of the patent. Under Carnival's logic, the challenger would have to waive its arguments regarding invalidity—i.e., not initiate an IPR proceeding at all—in order to protect itself against the possibility that Carnival will respond to the invalidity challenge by

---

[3]    Carnival also purports to distinguish *British Telecommunications PLC* on the grounds that Judge Bryson had already rejected the same argument in a prior but related case. (Opp. at 8 n.4.) That is irrelevant unless the court was relying on the higher standards applicable to a motion for reconsideration, which it was not.

amending its claims to read directly onto the challenger's technology.  It would be far more reasonable and equitable to simply require Carnival to use different counsel to amend its claims.

Carnival's reliance in its Opposition on the Patent and Trademark Appeals Board's ("PTAB") decision in *Lectrosonics Inc. v. Zaxcom Inc.*, Case Nos. IPR2018-01129, -1130, Paper No. 15 (P.T.A.B. Feb. 25, 2019) is misplaced.  *Lectrosonic* does not purport to address the misuse of AEO information in amending claims in an IPR proceeding and does not say that there is "precedent" or "practice" that diminishes the need for a prosecution bar in such situations.  In fact, *Lectrosonics* confirms that the limitations on amendments are not as restrictive as Carnival would have the Court believe.  *See id.* at 5, 7 (confirming that the PTAB rules "do[] *not* require . . . every word added to or removed from a claim in a motion to amend be solely for the purpose of overcoming an instituted ground" of unpatentability, and acknowledging that patentees *are* allowed to make a "proposed substitute claim adding a novel and nonobvious feature or combination to avoid the prior art") (emphasis added).

Carnival also refers the Court back to an unpublished slip opinion it issued eight years ago, long before *British Telecommunications PLC* was decided, claiming that this Court once "observed" that "a prosecution bar in the reexamination context [is] largely unnecessary."  (Opp. at 7 (quoting *Omega Patents, LLC v. Skypatrol, LLC*, No. 11-cv-24201, Slip Op. at 13 (S.D. Fla. June 15, 2012) (Torres, J.)).  That was actually a quote from *Ameranth, Inc. v. Pizza Hut, Inc.*, 2012 WL 528248, at *8 (S.D. Cal. Feb. 17, 2012), a case that was expressly distinguished in *British Telecommunications PLC*, as being part of the older line of cases that "predate[]" the more modern decisions precluding counsel with access to AEO from amending claims in a reexamination proceeding.  *See* 330 F.R.D. at 398.  Moreover, neither the *Ameranth* court nor this Court in *Omega Patents, LLC* considered the possibility that a patentee could strategically narrow a claim in an IPR proceeding to read directly onto a competitor's technology while avoiding prior art.[4]  The Court is not bound by its decisions in *Omega Patents, LLC* and should not follow it here.

Carnival attempts, and fails, to distinguish other cases on various grounds.  Carnival says that the court in *Front Row Techs., LLC v. NBA Media Ventures, LLC* did "not restrict the

---

[4] *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC* is similarly distinguishable. 2015 WL 7257915, at *2 (D. Del. Nov. 17, 2015) (refusing to bar participating in post-granting proceeding but failing to consider how a narrowing amendment in an IPR proceeding could in fact be "competitively used to draft claims that read on Defendants' products").

patentee's litigation counsel's ability [sic] to participate in reexamination proceedings." (Opp. at 7; *see also id.* at 11.) Actually, the parties in *Front Row* mutually agreed to limit the prosecution bar so that it did not apply to post-granting proceedings at all, making it unnecessary for the *Front Row* court to resolve the issue. 125 F. Supp. 3d 1260, 1295 & n.15 (D.N.M. 2015). Thus, *Front Row* does not support Carnival's position. Carnival says *Grobler v. Apple Inc.*, 2013 WL 3359274 (N.D. Cal. May 7, 2013) is distinguishable because the proposed protective order was based on the Northern District's Model Protective Order, but the language in *this* proposed order *is* based on the Northern District's Model Protective Order. That is the order *Carnival* chose originally to start negotiations with DeCurtis when DeCurtis first filed this lawsuit in the Middle District of Florida.[5] (Mot. at 3; Schmidt Decl., Ex. 3.)

Finally, Carnival notes that in *Voice Domain Technologies, LLC v. Apple, Inc.*, 2014 WL 5106413, at *9 (D. Mass. Oct. 8, 2014) and *Telebuyer, LLC v. Amazon.com, Inc.*, 2014 WL 5804334, at *6 (W.D. Wash. July 7, 2014), the courts left open the "possibility" of allowing participation in reexamination proceeding upon further application to the court. Of course, Carnival will always have the option to seek leave to amend this protective order in the future if it can show a good cause, but that is irrelevant to the instant motion. Once DeCurtis has satisfied its burden to show there a risk of misuse of its AEO, the burden is on Carnival to show why any particular attorney seeking to participate in amending or revising claims should be exempt. *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1381 (Fed. Cir. 2010). In its Opposition, Carnival has not met this standard and it cannot vaguely reserve the right to request an exemption as a substitute for meeting the standards articulated by the Federal Circuit.

The case law does not support Carnival's position. A prosecution bar should be entered barring litigation counsel from advising on claim amendments in an IPR proceeding.

## III. DECURTIS HAS SHOWN WHY THERE IS A PARTICULARIZED RISK OF HARM IN THIS LITIGATION

Carnival argues (at 9-10) that DeCurtis has not sufficiently stated how and what DeCurtis AEO material may be misused by Carnival. This argument is difficult to square with the fact

---

[5] Carnival cites another old, unpublished slip opinion to distinguish *Grobler*. *See Bonutti Skeletal Innovations LLC v. Linvatec Corporation*, No. 12-cv-01379, Slip Op. at 9 (M.D. Fla. Nov. 15, 2013). Carnival fails to mention that the primary ground for denying the proposed bar at issue in *Bonutti* was that there was a request to bar litigation counsel from participating at all in the reexamination process once an amendment was proposed. This prosecution bar does not impose any similarly sweeping limitation.

that Carnival drafted the provisions of the protection order that determine the subject matter triggering protection under the protection bar—"Highly Confidential or Highly Confidential – Source Code material comprising technical information"—and with the fact that Carnival never asserted during the months of negotiations between the parties over the protective order that it was unclear what particular kinds of information DeCurtis was concerned might be misused. (Mot. at 3-5.)  If Carnival had such concerns, it could have opposed the entire prosecution bar on the grounds that the risk of any misuse by Carnival was speculative, just as the nonmoving party did in the case it relies on.  *See Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, 2012 WL 6049746, at *4 (D. Ariz. Dec. 5, 2012) (denying request for prosecution bar *entirely* because party failed to show there was any risk of misuse from the disclosure of sensitive information).

In any event, DeCurtis *has* made an adequate showing of potential harm.  As DeCurtis explained in its motion, the background of the parties' dispute is that David DeCurtis helped to build Carnival's guest engagement system and contributed to the invention of the patents Carnival is asserting in this litigation before going on to work with other companies and competing directly with Carnival in the field of guest engagement systems utilizing wearable devices.   Carnival is now suing DeCurtis for patent infringement and trade secret misappropriation, and is seeking in discovery detailed AEO information about DeCurtis's new systems.  (*See* Mot. at 9; Schmidt Decl. Exs. 10 at 9-10 and 11 (discovery requests for source code and technical documents concerning design, architecture, and operation of DeCurtis's guest engagement systems); Opp. at 9 n.5 (acknowledging Carnival is trying to obtain through discovery DeCurtis's "trade secret information").   The gist of Carnival's claims is that DeCurtis's systems are not really new and that he is simply using Carnival's patented technology and/or trade secrets unlawfully.  (Carnival's First Amended Complaint ¶¶ 3, 60-61, 85-96).

Once Carnival's counsel has access to the AEO source code and technical documents that are used for DeCurtis's systems, Carnival's allegations that DeCurtis is not doing anything new or distinct from what Carnival already patented will be a self-fulfilling prophecy.  Carnival can rewrite its patent claims to match the disclosed details about DeCurtis's systems.  This level of specificity about the type of data that may be misused is almost identical to what Carnival concedes (at 9) was adequate in other cases.  *See, e.g.*, *CustomPlay, LLC v. Amazon.com, Inc.*, 2019 WL 2251110, at *2 (S.D. Fla. May 24, 2019) (source code and trade secrets); *Carlson Pet*

*Products, Inc. v. North States Industries, Inc.*, 2019 WL 2991220, at *9 (D. Minn. July 9, 2019) ("information regarding technical specifications, design, and development"); *Kelora Systems, LLC v. Target Corporation*, 2011 WL 6000759, at *7 ("highly confidential, technical information such as source code").

Other cases relied on by Carnival are inapposite.  In *Paice, LLC v. Hyundai Motor Co.,* a court denied a request to bar particular individuals from participating in an IPR proceeding *but only after finding that the bar already prohibited the individuals from amending claims in an IPR proceeding.*  2014 WL 4955384, at *4 (D. Md. Sept. 29, 2014) ("I am satisfied that the prohibition in the current prosecution bar that Plaintiffs' representatives 'not participate in or be responsible for . . . drafting or revising patent claims' constitutes sufficient protection to mitigate the risk that Plaintiff's litigation counsel could influence the Ford–IPR in the way Defendants claim.").  *Paice* thus supports the bar that DeCurtis asks for here, which allows Orrick to participate in IPR proceedings so long as it is not advising on the amendment of any claims.  In *PPS Data, LLC v. Athenahealth, Inc.*, another older unpublished slip opinion that Carnival cites, the parties *agreed* to extend the bar to post-grant hearings.  No. 11-cv-00746, Slip Op. at 16 (M.D. Fla. Jan. 30, 2012).  The only dispute was over a proposed exception that would allow litigation counsel "to discuss publicly available material" with the party's separate IPR counsel. Carnival has not requested any exception like this, which makes *PPS Data* irrelevant.

DeCurtis has adequately shown that there is a risk of the prejudice from the type of material that it will produce in discovery to Carnival, and a prosecution bar should be entered to protect against that risk.

## IV. CARNIVAL FAILS TO SHOW THAT IT WOULD BE BURDENED BY HAVING TO USE OTHER COUNSEL TO AMEND CLAIMS IN AN IPR PROCEEDING

As Carnival's own cases acknowledge, a court "must balance the risk of inadvertent disclosure or competitive use of confidential information against the potential harm to the opposing party in denying its choice of counsel."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, No. 2015 WL 7257915, at *2 (D. Del. Nov. 17, 2015).  In considering the potential harm to the party opposing the bar, courts consider "the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO."  *Deutsche Bank*, 605 F.3d at 1381.  Carnival fails to make any concrete

showing regarding any of these factors, in contrast to the authority Carnival cites. *See Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F. Supp. 3d 270, 274 (D. Mass. 2016) (party submitted declarations showing "counsel have represented [party] in many district court and patent proceedings" and "are now engaged in an IPR concerning two of the patents at issue in this suit" which led court to find party should not be barred from using its preferred counsel).

Carnival fails to convincingly explain why it cannot use any of the other 35 patent attorneys at Orrick to amend a claim, or why it could not use the patent prosecutors, McDermott Will & Emery, who obtained most of the patents at issue.  (Mot. at 11.)  Nor does Carnival show why it is particularly important that its litigation counsel in this Action participate in the amendment process.  The declaration submitted by lead counsel T. Vann Pearce is a barebones vehicle for attaching irrelevant USPTO materials.  *See* Pearce Decl. Exs. A-D.  It contains no explanation of the length of time he, or anyone at Orrick, has represented Carnival, much less an explanation of why it would be so harmful for a multinational corporation like Carnival to use another attorney to perform the limited role of preparing any amendments to be submitted in an IPR proceeding. Carnival does not even cite to Mr. Pearce's declaration in making its prejudice argument.  (Opp. at 10-11.)

With nothing concrete to suggest that it will be prejudiced if the bar is entered as DeCurtis proposed, Carnival resorts to vaguely saying that it will be put "in the difficult position of coordinating litigation strategy and consistent arguments between multiple sets of counsel." (Opp. at 10.)   Carnival offers no concrete support to suggest this would actually be burdensome—most complex litigation involves similar complications (including this litigation where Carnival is represented by two firms and numerous lawyers)—but even if this represents *some* burden, it is not significant compared to the magnitude of the harm DeCurtis could suffer if AEO information produced in this litigation is used to modify Carnival patents to read directly onto DeCurtis's systems.  As DeCurtis explained in its Motion (10-11), barring Carnival from using litigation counsel to amend its claims in an IPR proceeding affords DeCurtis the "modest protection" it needs while not imposing a particularly "heavy" burden on Carnival.  *British Telecommunications PLC*, 330 F.R.D. at 389.  Carnival fails to rebut this point and show there is anything particular onerous about imposing such a bar under the facts presented here.

Carnival also suggests (at 11) that the prosecution bar is too vague because it applies to "indirectly" assisting in amending a claim.  The Court rejected a nearly identical argument in the

unpublished slip opinion that Carnival cites, *Omega Patents*, No. 11-cv-24201, Slip Op. at 11, and it should do so again.  The meaning of the word is obvious, as DeCurtis explained in its Motion (at 12 n.5).

Lastly, although the main reason that Carnival refused to agree to the proposed bar was that it was not "bilateral" (Schmidt Decl., Ex. 9 at 5), Carnival now all but concedes that it actually is, shifting its argument to claiming that the "application" of the bar would be unfair because Carnival has patents and DeCurtis does not.  (Opp. at 11.)  Carnival cites no authority suggesting that a prosecution bar must apply equally to parties with patents and those without, and indeed the notion is directly at odds with the purpose of prosecution bars, which is to prevent *patentees* from misusing AEO information to amend or assert patent claims.

## Conclusion

In light of the foregoing, DeCurtis's request for a prosecution bar should be granted and the protective order amended as proposed.

Dated: October 16, 2020

Respectfully submitted,

DECURTIS LLC

By:  /s/ *Jason P. Stearns*
          One of its attorneys

David C. Gustman (Pro Hac Vice)
Jeffery M. Cross (Pro Hac Vice)
Jill C. Anderson (Pro Hac Vice)
Jennifer L. Fitzgerald (Pro Hac Vice)
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Tel. (312) 360-6000
Email:  dgustman@freeborn.com
          jcross@freeborn.com
          janderson@freeborn.com
          jfitzgerald@freeborn.com

Scott L. Watson (Pro Hac Vice)
Justin C. Griffin (Pro Hac Vice)
Patrick T. Schmidt (Pro Hac Vice)
Zachary A. Schenkkan (Pro Hac Vice)
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St., 10th Floor

Jason Stearns
Florida Bar No. 059550
Freeborn & Peters LLP
201 N. Franklin Street, Suite 3550
Tampa, FL 33602
Tel. (813) 488-2920
Email:  jstearns@freeborn.com
          ckitchell@freeborn.com
*Attorneys for Plaintiff DeCurtis LLC and DeCurtis Corporation*

10

Los Angeles, CA 90017
Tel. (213) 443-3000
Email:  swatson@quinnemanuel.com
        justingriffin@quinnemanuel.com
        patrickschmidt@quinnemanuel.com
        zackschenkkan@quinnemanuel.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on October 16, 2020, the foregoing was filed and served by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/   Jason P. Stearns*
Jason P. Stearns