## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22945-Civ-SCOLA/TORRES

DECURTIS LLC,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____

CARNIVAL CORPORATION,

      Plaintiff,

v.

DECURTIS CORPORATION and DECURTIS LLC,

      Defendant.

_____/

### ORDER ON DECURTIS'S MOTION TO AMEND A PROTECTIVE ORDER

This matter is before the Court on DeCurtis LLC's ("DeCurtis") motion to amend [D.E. 77] a protective order [D.E. 44] that the Court entered on July 23, 2020. Carnival Corporation ("Carnival") responded to the motion on October 9, 2020 [D.E. 80] to which DeCurtis replied on October 16, 2020. [D.E. 83]. Therefore, DeCurtis's motion is now ripe for disposition. After careful consideration of the

motion, response, reply, relevant authority, and for the reasons discussed below, DeCurtis's motion to amend is **GRANTED**.[1]

## I.    BACKGROUND

DeCurtis is an Orlando-based technology company that designs and manufactures systems using wireless communications, small portable devices, and custom software to assist businesses in improving guest experiences.  Carnival, on the other hand, is the creator and owner of a groundbreaking technology platform known as the One Cruise Experience Access Network, which combines a first-of-its-kind wearable device with a network of servers, sensors, readers, and software to deliver guest engagement and personal service to guests on Carnival's ships.

The founder of DeCurtis, David DeCurtis ("Mr. DeCurtis") has a history of designing and developing guest engagement systems for more than a decade.  Mr. DeCurtis made his mark developing successful systems for Disney Cruise Lines. John Padgett ("Mr. Padgett"), an executive at Disney, brought Mr. DeCurtis into a project to develop guest engagement systems, and Disney subsequently applied for patents on some of these systems.  Mr. Padgett later started working at Carnival, where he was charged with developing a guest engagement system for Carnival's cruise ships, and he brought Mr. DeCurtis into assist in the development of a guest engagement system.

Mr. DeCurtis left the project and created a new product for cruise lines that was built using his knowledge of general principles in the industry.  He purportedly

---

[1]    On November 20, 2020, the Honorable Robert N. Scola referred all pretrial matters to the undersigned Magistrate Judge for disposition.  [D.E. 102].

developed the system without any source code, technical documents, or other written materials from Carnival. In 2017, Carnival began filing applications and obtained several patents related to guest engagement systems. DeCurtis claims that Carnival obtained these patents via fraud on the U.S. Patent and Trademark Office (the "Patent Office") when Carnival failed to identify Mr. DeCurtis as an inventor of these patents and concealed prior art that was material to patentability.

DeCurtis filed this action in the Middle District of Florida and, two days later, Carnival sued DeCurtis separately in the Southern District of Florida. Before this action was consolidated on July 29, 2020, the parties began negotiations over a protective order with a model sample that is commonly used in the Northern District of California as a starting point.[2] The parties exchanged several drafts over the ensuing months and agreed on almost all the terms of the protective order except a single clause (italicized below) on whether counsel could draft or advise any amendments or alterations to any patent claims in post-grant proceedings before the Patent Office:

---

[2]     The Northern District of California has approved a Model Protective Order that governs discovery unless the court enters a different protective order. *See* U.S. District Court for the Northern District of California's Stipulated Protective Orders webpage, at https://www.cand.uscourts.gov/forms/model-protective-orders/ ("The protective orders on this page are court-approved model forms."); N.D. Cal. Patent L.R. 2–2 ("The Protective Order authorized by the Northern District of California shall govern discovery unless the Court enters a different protective order."). In the ordinary course, "the court treats the model protective order as setting forth presumptively reasonable conditions regarding the treatment of highly confidential information." *Kelora Sys., LLC v. Target Corp.,* 2011 WL 6000759, at *2 (N.D. Cal. Aug. 29, 2011).

Prosecution Bar: Absent written consent from the producer, any individual who receives access to Highly Confidential or Highly Confidential – Source Code material comprising technical information (a "Barred Person") shall not be involved in the prosecution of patents or patent applications relating to providing automated engagement with guests of a facility using wireless sensing technology, including, without limitation, the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims. To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party, whether the patent owner, the patent challenger, or a third party, in a proceeding involving a challenge to a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, post-grant review, ex parte reexamination or inter partes review), *but Barred Persons (including counsel for the receiver) may not participate, directly or indirectly, in drafting or advising on any amendments or alterations to any patent claim(s) in such proceedings*. This Prosecution Bar shall begin when access to Highly Confidential or Highly Confidential – Source Code comprising technical information is first received by the affected individual and shall end two (2) years after final termination of this action.

[D.E. 77 at 7 (emphasis added) (hereinafter referred to as the "IPR Amendment")].[3]

The parties could not reach an agreement on the language of the prosecution bar, resulting in the motion for protective order that is now ripe for disposition.

---

[3]    Although post-grant matters include reexamination and reissue proceedings, the vast majority include *inter parties* review ("IPR").  IPRs are a trial proceeding conducted at the Patent Office to review the patentability of one or more claims in a patent only on a ground that could be raised under 35 U.S.C. §§ 102 and 103, and only on the basis of prior art consisting of patents or printed publications.  IPRs allow "private parties to challenge previously issued patent claims in an adversarial process before the Patent Office that mimics civil litigation."  *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1352 (2018).

## II.     APPLICABLE PRINCIPLES AND LAW

Federal Circuit law governs the determination of whether a patent prosecution bar is necessary. *See In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373, 1378 (Fed. Cir. 2010).  A "prosecution bar" is a prophylactic provision that may be included in a protective order where there is a risk that the recipient of confidential information, whom is in a competitive position, may inadvertently disclose information received during discovery. *See id.* ("[T]here may be circumstances in which even the most rigorous efforts of the recipient of such information . . . may not prevent inadvertent compromise.").

The party seeking to include a prosecution bar carries the burden of establishing good cause for its inclusion. *Id.*  This burden requires that the requesting party prove that opposing counsel is involved in "competitive decisionmaking" for its client. *Id.*  The requesting party must also establish that the proposed prosecution bar is reasonable in scope. *Id.* at 1381 ("[A] party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information.").  Even if the court is satisfied that a risk of inadvertent disclosure exists, the court must weight that risk against the potential injury to the party deprived of its counsel of choice. *Id.* at 1380.  "In balancing these conflicting interests the district court has broad discretion to decide what degree of protection is required." *Id.* (citing *Seattle Times*

5

*Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L.Ed.2d 17 (1984); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).

If the requesting party meets its burden to show that the opposing counsel is a competitive decision maker, and that the prosecution bar is reasonable, then the burden shifts to the party opposing the prosecution bar to establish that it should be exempt. *See In re Deutsche Bank*, 605 F.3d at 1379. The party seeking an exemption must show on a counsel-by-counsel basis:

> (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

*Id.*

### III.   ANALYSIS

The pending motion to amend the Court's protective order concerns a dispute over confidentiality protections and an IPR Amendment to prevent lawyers in this case from participating in drafting or advising on amendments or alterations to patent claims before the Patent Office. The parties agree that a prosecution bar should be included in this case. The parties also agree on *almost* all of the terms of the protective order. The only dispute is whether the prosecution bar should preclude the lawyers from advising or participating in potential claim amendments sought for an existing patent in a parallel invalidity proceeding.

DeCurtis says that, as a general matter, it does not seek to prohibit all of Carnival's lawyers from participating in the defense of a post-grant proceeding. DeCurtis also claims that it does not seek to bar an entire team from Carnival's litigation counsel, Orrick Herrington Sutcliffe ("Orrick"), from accessing DeCurtis's highly confidential technical information.  Instead, DeCurtis only asks that the specific attorneys at Orrick who work on this matter and access DeCurtis's highly confidential technical information be barred from affecting the scope of any claims in a post-grant proceeding.  This is necessary, in DeCurtis's view, because Orrick could "use knowledge of DeCurtis's highly confidential information, gained through the litigation process, in order to inform the drafting of new patent rights claiming an earlier priority date."  [D.E. 77 at 2].

Carnival opposes the relief sought because, if adopted, the IPR Amendment would harm its ability to defend the validity of its patents and give DeCurtis an unfair tactical advantage. Carnival is concerned that DeCurtis would use the protective order to attack Carnival's patents in an adversarial process before the Patent Office and that DeCurtis, unlike Carnival, could use any counsel that it desires.  Carnival also claims that any request to modify the Court's protective order is unnecessary because the current one already prohibits the parties from using any confidential information produced for any other purpose outside of this case.  Carnival reasons that DeCurtis has failed to present any credible risk that anyone will use any confidential information and failed to allege any specific harm to justify the IPR amendment.  For these reasons and others, Carnival concludes

that the Court should enter the proposed protective order without the IPR Amendment.

### A.   *Competitive Decisionmaker*

As a threshold matter, the requesting party must establish, on a counsel-by-counsel basis, that the attorneys are involved in competitive decisionmaking.[4]   *See In re Deutsche Bank*, 605 F.3d at 1379 ("Whether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis . . . .").   Competitive decisionmaking is defined as: "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."   *Id. (*quoting *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)).

The Federal Circuit has recognized that patent prosecution does not

---

[4]     District courts are split on how to apply the moving party's initial burden.   *See, e.g.*, *Front Row Techs., LLC. v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1277 (D.N.M. 2015).   A majority of courts require the movant to show that the bar reasonably reflects the risk of inadvertent disclosure of proprietary competitive information and that the bar as applied to specific lawyers will prevent the risk of inadvertent disclosure.   *Id.* (citing *NeXedge, LLC v. Freescale Semiconductor, Inc.*, 820 F. Supp. 2d 1040, 1043 (D. Ariz. 2011)).   Other courts only require the movant to show that a patent prosecution bar is reasonable, before shifting the burden to the party seeking an exemption from the proposed prosecution bar to demonstrate that a specific lawyer's role will not likely implicate competitive decisionmaking and that any potential injury from the restrictions imposed on its choice of counsel outweighs the other party's potential injury resulting from its inadvertent use of protected information.   *Id.* at 1278 (citing *Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC*, 881 F. Supp. 2d 254, 257 (D.P.R. 2012)).   Regardless of whether the Court adopts the majority or minority view, the result remains the same for the reasons provided below.

inherently involve competitive decisionmaking. "Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking." *In re Deutsche Bank*, 605 F.3d at 1379. The Federal Circuit has also recognized an important distinction between attorneys that are substantially engaged with prosecution (those that have an "opportunity to control the content of patent applications and the direction and scope of protection sought in those applications,") and those attorneys whose role is "little more than reporting office actions or filing ancillary paperwork . . . ." *Id.* at 1379-80.

DeCurtis argues that Orrick represents Carnival in this case and before the Patent Office, and that the law firm poses a significant risk that technical information will be misused. DeCurtis claims that patent prosecutors are often competitive decisionmakers because they play a significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios." *In re Deutsche Bank*, 605 F.3d at 1379. Indeed, when patent prosecutors are representing a party pursuing patent infringement claims and those lawyers are in a position to file new applications related to the same patents or amendments to existing claims, DeCurtis contends that courts routinely hold that a prosecution bar is appropriate to avoid the risk of inadvertent disclosures. *See, e.g., Northbrook Digital, LLC v. Vendio Services, Inc.,* 625 F. Supp. 2d 728, 759–760 (D. Minn. 2008) (noting that competitive decisionmaking is much more likely to be implicated "where there is a relationship between the prosecution and the patents-

in-suit"); *Commissariat A L'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1196965 at *3 (D. Del. May 25, 2004) (holding that where CEA's patent attorneys were prosecuting patents in the field of technology involved in the litigation, they must be barred from having access to Dell's highly confidential information or be prohibited from prosecuting patents in that field of technology for one year following conclusion of the litigation); *In re Papst Licensing, GmbH, Patent Litig.*, 2000 WL 554219, at *4 (E.D. La. May 4, 2000) ("[I]t is clear that the advice and participation of the Papst parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the Non–Papst parties confidential information.").

DeCurtis takes aim at Carnival's lead counsel in this case, Timothy Pierce, [D.E. 77-13] as well as thirty-five other Orrick attorneys [D.E. 77-14] who are registered with the Patent Office. DeCurtis states that Orrick is a big law firm that has prosecuted two of the patents at issue in this case and has ongoing litigation with respect to an application for other relevant patents. Because these patent disputes are ongoing and Carnival has admitted that it seeks to use Orrick's lawyers to amend any future claims should DeCurtis present a challenge before the Patent Office, DeCurtis concludes that nothing more is required to show competitive decisionmaking.

DeCurtis's argument is well taken because this is one of the limited situations where a law firm routinely prosecutes patent applications on behalf of a

client in the same technical area that is the subject matter of a collateral proceeding. *See In re Deutsche Bank*, 605 F.3d at 1379 ("The concern over inadvertent disclosure manifests itself in patent infringement cases when trial counsel also represents *the same client* in prosecuting patent applications before the PTO.") (emphasis added). There is also evidence that Orrick is currently litigating patents for Carnival (or has done so recently) on the same subject matter, that Carnival intends to use Orrick in future proceedings before the Patent Office, and that Carnival relies on Orrick "such as to involve counsel's advice and participation in any or all of the client's decisions." *U.S. Steel Corp.,* 730 F.2d at 1468 n.3; *see also Ameranth, Inc. v. Pizza Hut, Inc.,* 2012 WL 528248, at *5-*8 (S.D. Cal. Feb. 17, 2012) (finding that the plaintiff's litigation counsel who also prosecuted patents on behalf of the plaintiff was a competitive decisionmaker).

Carnival's response is that DeCurtis has failed to present any credible risk that the former will intentionally misuse information for this case to amend claims during an IPR. That argument is unpersuasive because the issue is not merely whether lawyers will intentionally misuse confidential information but whether there is a "risk that such information will be used or disclosed inadvertently because of the lawyer's role in the client's business decisions." *F.T.C. v. Sysco Corp.,* 83 F. Supp. 3d 1, 3-4 (D.D.C. 2015) (citing *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992); *Carpenter Tech. Corp. v. Armco, Inc.,* 132 F.R.D. 24, 27 (E.D. Pa. 1990)).

Carnival has also not shown that "the potential injury . . . from restrictions

imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." *In re Deutsche Bank*, 605 F.3d at 1381.  If, for example, Carnival intends to use Orrick for all patent-related matters, it can designate lawyers for this case and other lawyers for an IPR proceeding so long as the latter does not gain access to highly confidential information to trigger the prosecution bar.  *See Cummins-Allison Corp. v. Glory LTD*, 2003 U.S. Dist. Lexis 23653, at *26-*27 (N.D. Ill. Jan. 2, 2004) (explaining that "the party could choose not to disclose confidential information to patent prosecution counsel, in which case that counsel could continue to prosecute patent applications; or, the party could choose to reveal confidential information to patent prosecution counsel, and accept limitations on that attorney's ability to prosecute certain patent applications for a period of time").  Whatever Carnival decides, there are plenty of lawyers at Orrick to use in both proceedings so that it will not be unduly harmed, or that it will be severely restricted in its choice of counsel.  Thus, DeCurtis has shown that Orrick's lawyers are competitive decisionmakers and that, if the IPR Amendment is included in the Court's protective order, Carnival will have to make a strategic decision to determine how and to what extent it applies.

## B.   *The Scope of the Prosecution Bar*

Next, DeCurtis must establish that the proposed prosecution bar is reasonable in scope.  "[A] party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the

12

bar reasonably reflect the risk presented by the disclosure of proprietary information." *In re Deutsche Bank,* F.3d at 1381.  DeCurtis says that there is no dispute as to three of the four factors, and that Carnival conceded this point during their meet and conferral.  However, for the sake of fairness and completeness, we consider each factor in turn.

### 1. Information Designated to Trigger the Bar

The first factor considers whether the information designated in a protective order is sufficient to trigger a prosecution bar.  Courts have drawn a fine line between financial data and business on one hand, and highly confidential technical information on the other.  Financial data or business information does not generally raise a sufficient risk for a prosecution bar.  *See, e.g., Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, 2011 WL 197811, at *2 (N.D. Cal. Jan. 20, 2011); *Opperman v. Path, Inc.,* 2013 WL 5643334, at *2 (N.D. Cal. Oct. 15, 2013) ("Because the proposed bar would be triggered by information that typically would not be relevant to the prosecution of a patent, such as confidential sales and competitive data, the bar is overly broad as currently drafted.").  By contrast, highly confidential or technical information – such as source code – almost always triggers a prosecution bar.  *See Applied Signal Tech., Inc.,* 2011 WL 197811, at *2 ("In contrast with financial data or business information, confidential technical information, including source code, is clearly relevant to a patent application and thus may pose a heightened risk of inadvertent disclosure.").

Here, the parties designated their protected information as "Highly Confidential" because of the need to safeguard source code materials. This satisfies the first factor because "[s]ource code is 'highly confidential, technical information' that creates a "heightened risk of inadvertent disclosure." *Telebuyer, LLC v. Amazon.com, Inc.*, 2014 WL 5804334, at *2 (W.D. Wash. July 7, 2014) (citing cases). Therefore, given the type of information that the parties wish to protect, the first factor supports the entry of a prosecution bar.

### 2. Scope of Activities Prohibited by the Bar

The second factor is the only *Deutsche Bank* factor that is in dispute. The parties agree that counsel should be barred from drafting or amending claims in a patent prosecution proceeding if it has access to the opposing party's confidential information. Yet, Carnival disagrees that the limitation should apply in the context of a post-grant proceeding that challenges an existing patent. [D.E. 80 at 10 ("[P]atent prosecution occurs *ex parte* in non-public proceedings between the patent applicant and [the Patent Office,] prosecution bars can be an appropriate tool for mitigating the risk that a litigant will patent its adversary's confidential technology.")].

Most courts have allowed prosecution bars on activities closely associated with patent prosecution. In *Kelora Sys., LLC v. Target Corp.*, for example, the court described a proposed prohibition on "directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims" as "appropriately limited." 2011 WL 197811, at *2. Other courts have approved a

prosecution bar governing "patent prosecution"—with "prosecution" defined to include "directly or indirectly drafting, amending, advising or otherwise affecting the scope or maintenance of patent claims, but [ ] not [ ] representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* reexamination." *Applied Signal Tech., Inc.,* 2011 WL 197811, at *2 n.1.[5]   Ultimately, whenever parties cannot reach an agreement on the scope of a prosecution bar, courts have taken into consideration the parties' proposals and added their own language. *See Liveperson, Inc. v. 24/7 Customer, Inc.,* 2015 WL 4597546, at *6 (S.D.N.Y. July 30, 2015) ("Since the parties cannot agree on the meaning of the phrase in question, the optimal approach is to excise it completely, and add clarifying language to the section on the activities exempted from the bar.").

The disagreement here is due to a split among district courts in determining the scope of a prosecution bar.   Similar to this case, much of the litigation on patent prosecution bars has focused on whether bars can permissibly include patent reexamination and reissue proceedings.   Older cases have generally held that prosecution bars can be extended to include reissue proceedings, but should not

---

[5]   Carnival suggests that the prosecution bar is too vague because it uses the word "indirectly" and that term is too vague in determining what a lawyer cannot do in connection with drafting or advising on an amendment.   This is a feeble argument because "indirectly" has a plain and obvious definition.   It means that the attorneys subject to the prosecution bar cannot give advice or hints to other counsel who are the ones "directly" drafting an amendment. *See, e.g., Applied Signal Tech., Inc.,* 2011 WL 197811, at *2 n.1 (finding that the scope of activities prohibited by the bar –"directly or indirectly drafting, amending, advising, or otherwise affecting the scope of maintenance of patent claims"–was appropriately narrow).   To the extent Carnival had any lingering concerns with respect to the meaning of the word, this footnote should put that uncertainty to bed.

encompass reexamination. *See Ameranth, Inc.,* 2012 WL 528248, at *6 ("[A] review of cases directly discussing a prosecution bar applied to reexamination finds near unanimous support against extending the bar to cover reexamination[.]") (citing cases). In *Ameranth*, for instance, the court explained that reexamination and reissue proceedings are not synonymous. In the former, "[a]mendments are allowed . . . though they 'must not enlarge the scope of a claim nor introduce new matter.'" *Id.* at *6 (citing *Manual of Patent Examining Procedure* § 2666.01). The court also found that "the restrictions placed on reexamination . . . effectively mitigates the potential to misuse PTO procedures to gain a collateral business or litigation advantage, thereby rendering a prosecution bar in the reexamination context largely unnecessary.'" *Id.* (quoting *Pall Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 173 (E.D.N.Y. 2008)).

However, on reissue, the court found that there are greater possibilities to enlarge the scope of the patent claims, particularly when the Patent Office is considering continuation applications. *Id.* at *7. The court noted that there was a higher likelihood of harm because "an amendment may enlarge the scope of the claims, provided it is applied for within two years from the grant of the original patent." *Id.* Therefore, the court found that extending the prosecution bar to include reissue proceedings was reasonable. *Id.*

*Ameranth* is consistent with many older decisions because the refusal to extend a prosecution bar to patent reexamination proceedings generally depends on three considerations. First, older decisions view reexamination as "a limited

proceeding assessing only the patentability of existing claims against specific prior art references." *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 183 (D. Del. 2010). These courts state that confidential information is "basically irrelevant" to those determinations. *See id.* at 184.  Second, older decisions view reexamination claims as only being narrowed: "[N]o product that did not infringe a patent before reexamination could ever infringe that patent following reexamination." *Id.*  And third, these courts have sometimes predicted that patent holders will attempt to maintain the broadest possible interpretation of their claims on reexamination irrespective whether they have any new confidential information. *See id.*

On the other hand, a "newer line of cases recognizes that even in a reexamination proceeding, a patent owner can use confidential information to restructure or amend its claims so as to improve its litigation position against alleged infringers." *Telebuyer, LLC,* 2014 WL 5804334, at *6; *see also Shared Memory Graphics, LLC v. Apple, Inc.,* 2010 WL 4704420, at *3 (N.D. Cal. Nov. 12, 2010) ("[A] patent owner may well choose to restructure claims in a manner informed by the alleged infringer's confidential information gleaned from litigation[.]"); *Grobler v. Apple Inc.,* 2013 WL 3359274, at *2 (N.D. Cal. May 7, 2013) (extending prosecution bar to cover reexamination, in a limited form); *EPL Holdings, LLC v. Apple Inc.*, 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013) (holding that counsel "may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims").  These decisions recognize that drafting, amending, restructuring, or

otherwise participating in reexamination proceedings may constitute "competitive decision-making," as the Federal Circuit contemplated in *In re Deutsche Bank*. 605 F.3d at 1378-79. Thus, more recent cases have prohibited "litigation counsel who have access to the opposing party's confidential information from participating in any way in post-grant proceedings regarding the same patents that were at issue in the litigation." *British Telecommunications PLC v. IAC/InterActiveCorp.*, 330 F.R.D. 387, 396 (D. Del. 2019).

Having carefully reviewed these decisions, we find that the newer line of cases is more compelling because "[a] prosecution bar serves little purpose if it bars only some of the activity that could lead to inadvertent use." *Telebuyer, LLC,* 2014 WL 5804334, at *4. A prosecution bar should, in other words, "cover the whole universe of confidential information disclosed, and prohibit the full category of patent activities in which that information might be inadvertently used." *Id.*

Carnival argues that the older line of cases should prevail and that the Court should not depart from a decision that the undersigned issued eight years ago in *Omega Patents, LLC v. Skypatrol, LLC*, No. 11-cv-24201, Slip Op. at 13 (S.D. Fla. June 15, 2012) (finding that "a prosecution bar in the reexamination [is] context largely unnecessary.") (quoting *Ameranth, Inc.*, 2012 WL 528248, at *8). We decline to follow *Omega Patents*, in many respects, because it never considered the possibility that a patentee could strategically narrow a claim in an IPR proceeding to read directly onto a competitor's technology while avoiding prior art. That is significant, as more recent decisions have found, because "there is still some risk

entailed in permitting litigation counsel who have had access to confidential information to participate in drafting and amending claims in post-grant review proceedings." *British Telecommunications*, 330 F.R.D. at 398. And the reason for that risk is because claims can be narrowed in a way that preserves their validity but still covers the products of other parties. *See id*. While that might not be the greatest risk in a post-grant proceeding, it is "still great enough to warrant the modest protection of barring litigation counsel from participating in the amendment process." *Id*.

Carnival complains that the scope of the prosecution bar is still too burdensome because it would have to either obtain separate counsel to amend its claims in a post-grant proceeding or otherwise have a separate team at Orrick to handle the two collateral matters.[6] Carnival says that this is problematic because its litigation counsel would be most familiar with DeCurtis's invalidity positions and would be in the best position to address any claim amendments in an IPR proceeding. If Carnival is required to pick and choose between certain lawyers for different matters, it fears that it will be placed in the difficult position of coordinating litigation strategy and arguments between multiple sets of counsel – all while wondering whether DeCurtis might later complain that Carnival's lawyers

---

[6]   Carnival argues that the IPR procedures and Patent Office rules on claim amendments provide sufficient protection against any potential misuse of information. This is not compelling because, even if the Patent Office allows DeCurtis the opportunity to respond to any claim amendments, it is unclear whether the applicable rules allow DeCurtis to question whether Carnival has misused confidential information. The Court is convinced that the best approach is to memorialize these protections in a protective order. So, even if the Patent Office offers some protections, they will go hand in hand with the proposed IPR Amendment.

are "indirectly" advising on an issue that might violate the protective order.

The Federal Circuit has instructed courts to consider several factors in balancing the restrictions on counsel against the risk of disclosure – specifically, "the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO." *In re Deutsche Bank*, 605 F.3d at 1381.  Carnival's response falls short, at the outset, because it fails to grapple with any of these factors.  Carnival noticeably fails to explain, for example, why it cannot use any of the other thirty-five Orrick attorneys or the lawyers at McDermott Will & Emery ("McDermott").[7]

Carnival nonetheless maintains that it would be put in a difficult position of coordinating litigation strategy between multiple sets of counsel if the IPR Amendment stands.  But, most complex litigation involves different sets of lawyers as Carnival has already shown in this case when it hired both Orrick and Gray Robinson.  It is therefore unclear why it would be a herculean task with different teams of lawyers or law firms when Carnival is already doing that in this case.  Indeed, many parties have been forced to make a similar choice, where a decision must be made to keep certain lawyers in one case as opposed to post-grant challenges in a collateral matter.  That does not mean, however, that the choice rises to the level of an undue burden:

---

[7]     Carnival hired lawyers at McDermott to obtain many of the patents that are now at issue in this case.

Admittedly, entering a prosecution bar in this case will force Carlson to make a difficult choice. It may either continue to have Messrs. Tecce and Wasserman represent its interests in this litigation, where they are free to receive all the information that will be provided by North States, or Carlson may decide that Tecce and Wasserman are too important to its ongoing patent-prosecution activities, have them continue in that capacity without being exposed to discovery materials in this litigation and retain new litigation counsel to handle this lawsuit. However, forcing such a choice on Carlson is not unfair because there is a significant risk that its litigation counsel could inadvertently use technical information regarding North States' unreleased products that will be disclosed in this case. Moreover, the Court notes that Carlson has another outside patent-prosecution counsel, Robert J. Jacobson, who has been involved in Carlson's patent applications for a number of years, including for the patents in suit. This means that if Carlson chooses to have Tecce and Wasserman continue in their roles as litigation counsel in this case, making them subject to the prosecution bar, Carlson will not be left without a patent-prosecution attorney familiar with its technology or its strategic interests.

*Carlson Pet Prod., Inc. v. N. States Indus., Inc.*, 2019 WL 2991220, at *9 (D. Minn. July 9, 2019) (internal citation omitted).

And even if the coordination among different teams of lawyers or law firms is a burden, Carnival has failed to show how it outweighs the potential harm that DeCurtis could suffer if certain technical information produced in this case is used to modify Carnival's patents to read directly onto DeCurtis's systems. If, for example, Carnival misused DeCurtis's technical information, it could potentially destroy DeCurtis's entire business in developing guest engagement systems. The potential harm significantly outweighs any burden that Carnival might encounter. Carnival's "burden" is therefore nothing more than an inconvenience as the record already shows that it is more than capable of coordinating its litigation strategy with different teams of lawyers. *See, e.g., British Telecommunications PLC*, 330

F.R.D. at 395 ("The Court recognizes that limiting the participation of litigation counsel in any way in any post-grant proceedings that may arise would impose an inconvenience on British Telecom. However, the Court is not persuaded that the inconvenience would rise to the level of severe prejudice.").

Carnival's second concern is that the prosecution bar is not bilateral because, if DeCurtis initiated a post-grant challenge to Carnival's patents, DeCurtis would be able to use its litigation counsel freely whereas Carnival would only be able to use Orrick for non-amendment related representation. The reason Carnival would be placed in such a situation is because Carnival is the party asserting patent infringement claims against DeCurtis. And, as a result, Carnival is concerned that DeCurtis may decide to file IPRs against Carnival's patents in connection with ongoing litigation. Therefore, Carnival reasons that, while the prosecution bar appears to be bilateral on its face, it only applies to Carnival in practice.

Carnival's argument is unpersuasive because, although it complains that the prosecution bar is not bilateral, it tacitly concedes that its objection is only based on the fact that Carnival is the party asserting patent infringement and that DeCurtis is not. Yet, it is entirely unclear how that argument holds any water if Carnival's objection is based on nothing other than its own personal circumstances. Carnival also cites no authority that a prosecution bar must apply equally to parties with patents for it to be considered bilateral. And the reason for that omission might be because the purpose of prosecution bars is, in some respects, to prevent *patentees* (i.e. Carnival) from misusing technical information to amend or assert patent

claims.  Simply because Carnival is the only party in this case that has patents does not render the prosecution bar unfair.  The prosecution bar is bilateral because neither party's counsel can use the confidential information of the other to prosecute patents or amend claims.

Finally, Carnival contends that, even if the IPR Amendment is adopted, Carnival should be given an opportunity to seek leave of court in the future to the extent DeCurtis initiates a post-grant challenge.  DeCurtis does not oppose this relief because "Carnival will always have the option to seek leave to amend this protective order in the future if it can show a good cause[.]"  [D.E. 83 at 7].  We agree with that assertion because this is one circumstance where the burden may, at a future date, outweigh the risk of disclosure.  If, for example, DeCurtis initiates a post-grant challenge, the proceeding might be "part and parcel of the litigation at issue."  *Shared Memory Graphics,* 2010 WL 4704420, at *4.  And if that should happen, "a complete bar on participation in reexamination proceedings would force the receiving party to retain separate counsel for what is essentially the same dispute[.]"  *Telebuyer, LLC*, 2014 WL 5804334, at *7.

The Court will therefore require the parties to add one provision to the proposed protective order: "[i]f [DeCurtis] should bring reexamination proceedings, counsel for [Carnival] would be permitted to participate in those proceedings upon a grant of leave from the court."  *Voice Domain Techs., LLC v. Apple, Inc.*, 2014 WL 5106413, at *9 (D. Mass. Oct. 8, 2014); *see also Telebuyer, LLC*, 2014 WL 5804334, at *7   ("[U]pon a grant of leave from the Court, counsel may be permitted to

23

participate in reexamination proceedings brought by the producing party. The scope of permitted activities will determined at that time."); *Shared Memory Graphics,* 2010 WL 4704420, at *4 (holding that patentee counsel should not be banned from reexamination proceedings so long as (1) the proceedings are initiated by the opposing party, and (2) counsel expressly agrees that in the reexamination it will not rely on any confidential information supplied by the opposing party). This addresses any concerns that the parties might have about gamesmanship and allow for Carnival to reserve any future arguments for the Court's consideration at a later date.

### *3. Duration of the Bar*

The third factor looks to the duration of the prosecution bar. This factor is satisfied because the parties agreed that the prosecution bar should be limited to two years after final termination of this action. This is appropriate because "[a] two-year bar fulfills this purpose more so than a one-year bar, as the confidential information will be less readily available in the memory of counsel." *Ameranth, Inc. v. Pizza Hut, Inc.,* 2012 WL 528248, at *7. Given that "[c]ourts routinely hold that prosecution bars with two-year durations are reasonable," and there is no dispute between the parties on the time limitation, we agree that a two year prosecution bar is appropriate. *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1283 (D.N.M. 2015) (citing cases); *see also Applied Signal Technology, Inc.,* 2011 WL 197811, at *2 (finding that a two-year post-litigation bar was reasonable); *Kelora Sys., LLC v. Target Corp.*, 2011 WL 6000759, at *7 (N.D. Cal.

Aug. 29, 2011) (finding a two-year prosecution bar to be reasonable).

### *4. Subject Matter Covered by the Bar*

The fourth factor concerns the subject matter of the prosecution bar.  Courts generally center the subject matter of a prosecution bar on the patents at issue in a specific case.  A proposed prosecution bar's subject should be "coextensive with the subject matter of the patents-in-suit." *Applied Signal Tech., Inc.,* 2011 WL 197811, at *3.  Some courts have used the same "subject matter of the patents-in-suit" language. *See Cheah IP LLC v. Plaxo, Inc.,* 2009 WL 1190331, at *2-3 (N.D. Cal. 2009); *E–Contact Techs., LLC v. Apple, Inc.,* 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012) ("[I]t is the subject matter of the patent-in-suit which the Court must focus on, rather than on the scope of any individual claim asserted.").  And other courts have broadened the subject to include patent claims that "relate to the subject matter of this action." *Karl Storz Endoscopy–Am., Inc. v. Stryker Corp.,* 2014 WL 6629431, at *3.

This factor has been met in this case because the subject matter of the prosecution bar is the same as the subject matter of the patents.  That is, both the prosecution bar and the patents are limited to technology related to providing automated engagement with guests of a facility using wireless sensing technologies.  And because they are coextensive, all four factors show that the proposed prosecution bar is reasonable in scope.

**C.**     ***Whether DeCurtis Failed to Identify any Specific Harm***

Next, Carnival claims that DeCurtis failed to identify any specific harm in connection with the protection of "highly confidential information" and failed to explain how the use of that information would be harmful in an IPR proceeding. *See PPC Broadband, Inc. v. Times Fiber Commc'ns, Inc.*, 2014 WL 859111, at *3 (N.D.N.Y. Mar. 5, 2014) ("It is not enough to identify a general risk that confidential information disclosed during litigation may influence counsel's representation of a party before the [Patent Office].") (citing *Deutsche Bank,* 605 F.3d at 1379 ("Indeed, denying access to a party's outside counsel on the ground that they also prosecute patents for that party is the type of generalization [we have] counseled against. . . . The facts, not the category[,] must inform the result.")).

There is no need to give this argument much consideration because the harm that the protective order guards against is obvious.   This case, as stated earlier, concerns allegations of patent infringement, unfair competition, and trade secret misappropriation.   And all of those claims are based on guest engagement technology involving wearable devices.   So, the purpose of the protective order is to prevent patent attorneys on both sides from accessing source code and other technical documents and then using those items to revise any patents to read onto the technology of a competitor.

The protective order also identifies the potential harm with language related to "highly confidential information" so that neither party can use any source code or technical documents other than for the purposes of this case.   This language

26

clarifies that a party may not gain access to technical documents, and then write patent claims to match the disclosed details about the opposing party's system. *See Carlson Pet Prod., Inc. v. N. States Indus., Inc.*, 2019 WL 2991220, at *6 (D. Minn. July 9, 2019) ("[T]echnical and design information, especially that which concerns unreleased products is the very kind of information that courts have identified as deserving of protection against inadvertent use.") (citing *Deutsche Bank*, 605 F.3d at 1381 (explaining the greater risk of inadvertent competitive use when litigation will involve the disclosure of "information related to new inventions and technology under development, especially those that are not already the subject of pending patent applications")).   Besides, that is the reason the parties negotiated a prosecution bar in the first place – to prevent the opposing party from using confidential information to restructure or amend claims so as to improve its litigation position with the benefit of confidential information produced from the other party.   Because the harm is self-evident in both the motion and in the parties' underlying communications, the final argument is equally misplaced.[8]

---

[8]     Carnival implies that it is unnecessary to use a prosecution bar to amend claims in an IPR proceeding because the protective order already precludes parties from using designated materials for any purpose other than this case.   The problem is that courts have recognized "that that there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *In re Deutsche Bank*, 605 F.3d at 1378.   In other words, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C. Cir. 1980).

### IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that DeCurtis's motion to amend is **GRANTED**.  The parties shall confer and submit a stipulated protective order that complies with the terms set forth above, including the provision that allows Carnival to seek leave of Court should DeCurtis initiate a post-grant proceeding.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of January, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge