**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

DECURTIS LLC,

       Plaintiff,

v.

CARNIVAL CORPORATION,

       Defendant.

CARNIVAL CORPORATION               Civil Action No. 1:20-22945-Civ-Scola

       Plaintiff,

v.

DECURTIS CORPORATION and
DECURTIS LLC,

       Defendant.

**DECURTIS ANSWER TO CARNIVAL CORPORATION'S SECOND AMENDED
COMPLAINT FOR (1) BREACH OF CONTRACT; (2) VIOLATIONS OF THE
DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1832 et seq.; (3) VIOLATIONS OF
THE FLORIDA UNIFORM TRADE SECRETS ACT, Fla. Stat. §§ 688.001 et seq.;
AND (4) PATENT INFRINGEMENT**

1

DeCurtis Corporation and DeCurtis LLC (collectively "DeCurtis") file this Answer to Carnival Corporation's Second Amended Complaint for (1) Breach of Contract, (2) Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832 et seq.; (3) Violations of the Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001 et seq.; and (4) Patent Infringement (Dkt. No. 88, "Complaint") as follows:

## PRELIMINARY STATEMENT

1.      DeCurtis denies that Carnival is the creator and owner of at least some aspects of the One Cruise Experience Access Network®, also referred to as the O.C.E.A.N.™ or OCEAN® Platform, including technology and intellectual property developed by others, such as David DeCurtis, and improperly claimed by Carnival.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1, and on that basis denies each and every allegation contained therein.

2.      DeCurtis admits that Carnival and its related entities have engaged DeCurtis Corporation to perform services including but not limited to services related to the project that ultimately became the OCEAN® Platform, and that DeCurtis Corporation and Carnival signed a Master Services Agreement ("MSA").  The remaining allegations in Paragraph 2 contain legal conclusions for which neither admission nor denial is necessary. To the extent a response is required, except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 2.

3.      DeCurtis admits that Carnival sent a letter to DeCurtis requesting an audit of certain DeCurtis records, which DeCurtis declined as being outside of the scope of the pertinent provisions of the MSA.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 3.

4.      DeCurtis admits that on April 8, 2020 DeCurtis LLC filed a civil action in the United States District Court for the Middle District of Florida challenging the enforceability of Carnival's patents.  DeCurtis admits that on July 15, 2020, the District Court for the Middle District of Florida granted Carnival's motion to transfer DeCurtis' action to the Southern District of Florida, and that case was ultimately consolidated with the present one.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 4.

5.      Paragraph 5 of Carnival's Complaint contains legal conclusion for which neither admission nor denial is required.

## PARTIES

6.      On information and belief, DeCurtis admits the allegations set forth in Paragraph 6.

7.      DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7, and on that basis denies each and every allegation contained therein.

8.      DeCurtis admits that DeCurtis Corporation is an inactive corporation that was organized under the laws of the State of Florida, and had its principal place of business in Orlando, Florida.  DeCurtis admits that DeCurtis LLC is a Delaware limited liability corporation headquartered in Orlando, Florida.  DeCurtis admits that DeCurtis LLC provides technology relating to guest engagement systems, including for cruise ships.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 8.

9.      DeCurtis admits that DeCurtis LLC was formed in April 2019.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 9.

## JURISDICTION AND VENUE

10.     The allegations in paragraph 10 of Carnival's Complaint constitute legal conclusions for which neither admission nor denial is required.

11.     The allegations in paragraph 11 of Carnival's Complaint constitute legal conclusions for which neither admission nor denial is required.

12.     DeCurtis does not contest that personal jurisdiction and venue are proper in this action.

13.     DeCurtis does not contest that personal jurisdiction and venue are proper in this action.

14.     DeCurtis denies the allegations of Paragraph 14.

## FACTUAL ALLEGATIONS

### Carnival's Breakthrough Technology in Guest Experience: the OCEAN® Platform[1]

15.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15, and on that basis denies each and every allegation contained therein.

16.     To the extent Carnival alleges that it was the first in the cruise industry to develop wearable technology, with wireless communication, for guest engagement, DeCurtis denies this allegation.  Disney Cruise Lines, for example, developed wearable technology, with wireless communications, for guest engagement systems long before Carnival.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16, and on that basis denies such remaining allegation contained therein.

---

[1]   The headings in this Answer are reproduced from Carnival's Complaint for the sake of clarity.  To the extent the headings contain any factual allegations requiring an admission or denial, DeCurtis denies such allegations.

17.     DeCurtis admits that Carnival worked on a guest engagement system involving guest wearable devices under the name "Project Trident" in the 2014-2015 time frame.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 17, and on that basis denies the remaining allegations contained therein.

18.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18, and on that basis denies each and every allegation contained therein.

19.     DeCurtis admits that Project Trident work was carried out at location called the Carnival Experience Innovation Center ("XIC").  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19, and on that basis denies the remaining allegations contained therein.

20.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20, and on that basis denies each and every allegation contained therein.

21.     DeCurtis denies that Project Trident "was not following an obvious or predictable path."  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21, and on that basis denies such remaining allegation contained therein.

22.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22, and on that basis denies each and every allegation contained therein.

### DeCurtis Becomes a Contractor Subject to the Parties' MSA

23.     DeCurtis admits that Carnival contracted DeCurtis Corporation for work related to the OCEAN® Platform.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23, and on that basis denies each and every allegation contained therein.

24.     DeCurtis admits that DeCurtis Corporation and Carnival signed a mutual non-disclosure agreement dated on or about July 1, 2014.  DeCurtis admits that DeCurtis Corporation and Carnival subsequently signed a Master Services Agreement ("MSA").  The remaining allegations in Paragraph 24 contain legal conclusions for which neither admission nor denial is necessary.  To the extent a response is required, except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 24.

25.     Paragraph 25 either contains factual allegations for which DeCurtis lacks knowledge or information sufficient to form a belief as to their truth, or contains legal conclusions for which neither admission nor denial is necessary. To the extent a response is required, except as expressly admitted, DeCurtis denies each and every allegation in Paragraph 25.

26.     DeCurtis responds that MSA agreement between DeCurtis Corporation and Carnival speaks for itself and refers to that agreement for a complete statement of its terms. Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 26.

27.     DeCurtis responds that MSA agreement between DeCurtis Corporation and Carnival speaks for itself and refers to that agreement for a complete statement of its terms. Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 27.

28.     The allegations in Paragraph 28 contain legal conclusions for which neither admission nor denial is necessary. To the extent a response is required, except as expressly admitted, DeCurtis denies each and every allegation of Paragraph 28.

29.     DeCurtis responds that MSA agreement between DeCurtis Corporation and Carnival speaks for itself and refers to that agreement for a complete statement of its terms. Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 29.

30.     DeCurtis responds that MSA agreement between DeCurtis Corporation and Carnival speaks for itself and refers to that agreement for a complete statement of its terms. Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 30.

31.     DeCurtis admits that Carnival and DeCurtis Corporation entered into SOWs defining some of the services DeCurtis Corporation would provide for Carnival and some of the work product and deliverables DeCurtis Corporation would create for Carnival.  To the extent Carnival alleges that the SOWs are the exclusive definition of services and work product DeCurtis Corporation was asked to deliver to Carnival, DeCurtis denies the allegation. Regarding the content of the SOW agreements between DeCurtis Corporation and Carnival, DeCurtis responds that the SOW agreements speak for themselves and refers to those agreements for a complete statement of their terms.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 31.

32.     DeCurtis admits that Carnival worked with DeCurtis Corporation for over a year. The remaining allegations in Paragraph 32 either contain factual allegations for which DeCurtis lacks knowledge or information sufficient to form a belief as to their truth, or contains legal conclusions for which neither admission nor denial is necessary. To the extent a response is

required, except as expressly admitted, DeCurtis denies the remaining allegations in Paragraph 32.

33.     DeCurtis admits that DeCurtis Corporation personnel worked at Carnival's XIC and were provided documents and information necessary for such personnel to perform their work. Regarding Carnival's investment in creating such information, DeCurtis lacks information sufficient to form a belief as to the truth of such allegations.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 33.

34.     DeCurtis admits that DeCurtis Corporation personnel were provided documents and information necessary for such personnel to perform their work.  DeCurtis denies that the information recited in paragraph 34 qualifies as a trade secret or as confidential information under the MSA. Regarding Carnival's investment in creating such information, DeCurtis lacks information sufficient to form a belief as to the truth of such allegations.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 34.

35.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35, and on that basis denies each and every allegation contained therein.

### Carnival's Successful Introduction of the OCEAN® Platform

36.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36, and on that basis denies each and every allegation contained therein.

37.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37, and on that basis denies each and every allegation contained therein.

38.     To the extent Carnival alleges that only Carnival's work, investment, and ingenuity are reflected in the results of Project Trident, DeCurtis denies the allegation.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 38, and on that basis denies the remaining allegation contained therein.

39.     To the extent Carnival alleges that an innovation of the OCEAN Platform is the use of portable wearable devices as BLE-emitting beacon devices in a guest engagement system, DeCurtis denies the allegation.  This feature is discussed extensively in the prior art.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 39, and on that basis denies the remaining allegation contained therein.

40.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40, and on that basis denies each and every allegation contained therein.

41.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41, and on that basis denies each and every allegation contained therein.

42.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42, and on that basis denies each and every allegation contained therein.

### Carnival's Patent Protection for Innovations from Project Trident

43.     DeCurtis admits that Carnival has applied for and obtained patents relating to work on Project Trident.  DeCurtis denies that such patents are valid, enforceable, or valuable. DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations contained in Paragraph 43, and on that basis denies the remaining allegations contained therein.

44.     DeCurtis admits that Carnival has applied for and obtained patents relating to work on Project Trident.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 44, and on that basis denies such remaiing allegation contained therein.

45.     DeCurtis admits that United States Patent Numbers 10,045,184 (the "'184 Patent"); 10,049,516 (the "'516 Patent"); and 10,157,514 (the "'514 Patent") have issued with Carnival as assignee, and are asserted in this lawsuit.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 45, and on that basis denies such allegations.

46.     DeCurtis admits that the '184 Patent reflects a filing date of March 15, 2017, claims priority to certain provisional patent applications, and reflects an issuance date of August 7, 2018.  DeCurtis admits that the '514 and '516 Patents reflect a filing date of March 16, 2017, claim priority to certain provisional patent applications, and reflect an issuance date of December 18, 2018 and August 14, 2018, respectively.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 46, and on that basis denies the remaining allegation contained therein.

47.     DeCurtis admits paragraph 47 contains a partial quotation from the specification of the '184 Patent.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 47.

48.     DeCurtis admits that the '184 Patent describes "individual guest devices."  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 48.

49.     DeCurtis admits paragraph 49 contains a partial quotation from the specification of the '184 Patent.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 49.

50.     The allegations in paragraph 50 regarding what the claims of Carnival's patents cover state legal conclusions to which no admission or denial is required.  To the extent a response is deemed required, DeCurtis denies the allegations of Paragraph 50.

51.     DeCurtis admits paragraph 51 contains a partial quotation from the specification of the '184 Patent.  The allegations in paragraph 51 regarding what the claims of Carnival's patents cover state legal conclusions to which no admission or denial is required.  To the extent a response is deemed required, DeCurtis denies such allegations.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 51.

52.     DeCurtis denies the allegations of Paragraph 52.

53.     DeCurtis denies the allegations of Paragraph 53.

54.     DeCurtis denies the allegations of Paragraph 54.

55.     DeCurtis admits paragraph 55 contains a partial quotation from the specification of the '184 Patent.  The allegations in paragraph 55 regarding what the claims of Carnival's patents cover state legal conclusions to which no admission or denial is required.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 55.

56.     DeCurtis denies the allegations of Paragraph 56.

57.     DeCurtis denies the allegations of Paragraph 57.

58.     The allegations in paragraph 58 regarding what the claims of Carnival's patents cover state legal conclusions to which no admission or denial is required.  To the extent a

response is deemed required, DeCurtis denies such allegations.  DeCurtis also denies the remaining allegations of Paragraph 58.

59.     The allegations in paragraph 59 regarding what the claims of Carnival's patents cover state legal conclusions to which no admission or denial is required.  To the extent a response is deemed required, DeCurtis denies such allegations.  DeCurtis also denies the remaining allegations of Paragraph 59.

60.     DeCurtis denies the allegations of Paragraph 60.

61.     DeCurtis denies the allegations of Paragraph 61.

62.     DeCurtis denies the allegations of Paragraph 62.

63.     DeCurtis denies the allegations of Paragraph 63.

64.     DeCurtis admits paragraph 64 contains a partial quotation from the specification of the '184 Patent.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 64.

65.     DeCurtis admits paragraph 65 contains partial quotations from the specification of the '184 Patent.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 65.

66.     DeCurtis denies the allegations of Paragraph 66.

67.     DeCurtis admits paragraph 67 contains partial quotations from the specification of the '184 Patent.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 67.

68.     DeCurtis denies the allegations of Paragraph 68.

69.     DeCurtis denies the allegations of Paragraph 69.

70.     DeCurtis denies the allegations of Paragraph 70.

71.     DeCurtis admits that DeCurtis LLC's markets a DeCurtis Location Solution. DeCurtis denies that this system infringes any of the Asserted Patents, either directly or indirectly.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 71.

72.     DeCurtis denies the allegations of Paragraph 72.

73.     The allegations in paragraph 73 regarding what Carnival's patent claims cover (i.e., the scope of the claimed "portable device") state legal conclusions to which no admission or denial is required.  To the extent a response is deemed required, DeCurtis denies such allegations.  DeCurtis also denies the remaining allegations of Paragraph 73.

74.     The allegations in paragraph 74 regarding what Carnival's patent claims cover (i.e., the scope of the claimed "portable device") state legal conclusions to which no admission or denial is required.  To the extent a response is deemed required, DeCurtis denies such allegations.  DeCurtis also denies the remaining allegations of Paragraph 74.

75.     DeCurtis denies the allegations of Paragraph 75.

76.     The allegations in paragraph 76 regarding what Carnival's patent claims cover (i.e., the scope of the claimed "portable device") state legal conclusions to which no admission or denial is required.  To the extent a response is deemed required, DeCurtis denies such allegations.  DeCurtis also denies the remaining allegations of Paragraph 76.

77.     DeCurtis denies the allegations of Paragraph 77.

78.     DeCurtis denies the allegations of Paragraph 78.

79.     DeCurtis denies the allegations of Paragraph 79.

80.     DeCurtis denies the allegations of Paragraph 80.

81.     DeCurtis admits paragraph 81 contains a partial quotation from the specification of the '184 Patent.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 81.

82.     DeCurtis denies the allegations of Paragraph 82.

83.     DeCurtis denies the allegations of Paragraph 83.

84.     DeCurtis denies the allegations of Paragraph 84.

85.     DeCurtis denies the allegations of Paragraph 85.

### DeCurtis' Misappropriation of Carnival's Technology

86.     DeCurtis admits that it contracted with Norwegian Cruise Lines ("NCL") to work on development of NCL's Cruise Freedom platform.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding statements made by NCL contained in Paragraph 86, and on that basis denies such allegations contained therein. Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 86.

87.     DeCurtis admits that it marketed technology using Bluetooth Low Energy readers. Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 87.

88.     DeCurtis denies the allegations of Paragraph 88.

89.     DeCurtis denies the allegations of Paragraph 89.

90.     Carnival provides no citation for the statements quoted in paragraph 90, and these quotations appear to have been pieced together from multiple sources without context.  Although not clear, it appears that these quotations relate specifically to DeCurtis' development of its BLE reader, and not the development of its DXP platform.  DeCurtis denies that it "leveraged" any experience from its work at Carnival in developing its BLE reader.  Also, because it is unclear what "publications, interviews, and marketing materials" Carnival is referring to in Paragraph 90, DeCurtis denies the remaining allegations of Paragraph 90 as well.

91.    DeCurtis denies the allegations of Paragraph 91.

92.    DeCurtis admits that Carnival sent it correspondence in January 2020 threatening to assert its patents to keep DeCurtis from using its competing technology.  DeCurtis responds that the letter speaks for itself and refers to that document for a complete statement of its contents.  DeCurtis denies the remaining allegations of Paragraph 92.

93.    DeCurtis admits that Carnival sent a letter to Virgin Voyages regarding Carnival's patent portfolio in approximately early February 2020.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93, and on that basis denies each and every allegation contained therein.

94.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94, and on that basis denies each and every allegation contained therein.

95.    DeCurtis admits that it contracted with Virgin Voyages ("Virgin") to work on technology relating to guest engagement systems on Virgin cruise ships.  DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding when Virgin began building its first cruise ship contained in Paragraph 95, and on that basis denies such allegations contained therein.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 95.

96.    DeCurtis denies the allegations in paragraph 96.

**DeCurtis' Breaches of Audit Requirements of the MSA to Conceal its Misconduct**

97.    DeCurtis admits that Carnival sent a letter to DeCurtis requesting an audit of certain DeCurtis records.  DeCurtis responds that the letter speaks for itself and refers to that document for a complete statement of its contents.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 97.

98.     DeCurtis admits that it sent a letter, dated February 24, 2020, to Carnival denying Carnival's audit request as being outside of the scope of the pertinent provisions of the MSA. DeCurtis responds that the letter speaks for itself and refers to that document for a complete statement of its contents.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 98.

99.     DeCurtis denies the allegations of Paragraph 99.

100.    DeCurtis admits that it refused Carnival's request for documents outside the scope of its audit rights under the MSA.  To the extent Carnival alleges that it was entitled under the MSA to audit these documents, DeCurtis denies the allegation.  Except as expressly admitted, DeCurtis denies the remaining allegations of Paragraph 100.

101.    DeCurtis denies the allegations of Paragraph 101.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

102.    DeCurtis incorporates by reference its responses to the allegations in paragraphs 1-42 and 86-101.

103.    Paragraph 103 is a legal conclusion for which neither admission nor denial is required.  To the extent a response is deemed required, DeCurtis denies the allegations of Paragraph 103.

104.    Paragraph 104 is a legal conclusion for which neither admission nor denial is required.  To the extent a response is deemed required, DeCurtis denies the allegations of Paragraph 104.

105.    Paragraph 105 contains a legal conclusion for which neither admission nor denial is required.  Further, Paragraph 105 recites alleged use of Carnival trade secrets and confidential information, which claims have been dismissed by the Court (*see* Dkt. 144).  DeCurtis denies

that it breached its obligations under the MSA.  To the extent any further response is deemed required, DeCurtis denies the remaining allegations of Paragraph 105.

106.    Paragraph 106 is a legal conclusion for which neither admission nor denial is appropriate.  To the extent a response is deemed required, DeCurtis denies the allegations of Paragraph 106.

107.    Paragraph 107 is a legal conclusion for which neither admission nor denial is appropriate.  To the extent a response is deemed required, DeCurtis denies the allegations of Paragraph 107.

**SECOND CLAIM FOR RELIEF**
**(Violations of the Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq*.)**

108.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 108.

109.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 109.

110.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 110.

111.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 111.

112.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 112.

113.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 113.

114.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 114.

115.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 115.

116.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 116.

117.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 117.

118.    DeCurtis understands that Carnival's Second Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 118.

## THIRD CLAIM FOR RELIEF
### (Violations of the Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001 et seq.)

119.    DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 119.

120.    DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 120.

121.    DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 121.

122.    DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 122.

123.    DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 123.

124.    DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 124.

125.    DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 125.

126.     DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 126.

127.     DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 127.

128.     DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 128.

129.     DeCurtis understands that Carnival's Third Claim for Relief has been dismissed (Dkt. 144) by the Court with prejudice and therefore no response to this paragraph is required. To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 129.

## FOURTH CLAIM FOR RELIEF
### (Infringement of United State Patent No. 10,045,184)

130.     DeCurtis incorporates by reference its responses to the allegations in paragraphs 1-97.

131.     DeCurtis admits that Exhibit A purports to be a copy of the '184 Patent.  DeCurtis admits that the document purports to have a issuance date of August 7, 2018 and lists as inventors John Padgett, Michael G. Jungen, Douglas Steele, Kyle Prestenback, Richard J. Criado, Vince Ball, Adam Leonards, Glenn Curtis, Manny Vellon, Patrick Mendiuk, Sander Lam and lists as assignee Carnival Corporation.  Except as expressly admitted, DeCurtis denies all remaining allegations of Paragraph 131.

132.     DeCurtis admits that Carnival is listed as the assignee of the '184 Patent. DeCurtis denies that Carnival owns all substantial rights in the '184 Patent, because DeCurtis is

20

an omitted inventor and has not assigned legal title to such rights.  Except as expressly admitted,

DeCurtis denies the remaining  allegations of Paragraph 132.

133.    DeCurtis denies the allegations of Paragraph 133.

134.    DeCurtis denies the allegations of Paragraph 134.

135.    DeCurtis admits that Paragraph 135 recites claim 11 of the '184 Patent.

136.    DeCurtis denies the allegations of Paragraph 136.

137.    DeCurtis denies the allegations of Paragraph 137.

138.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth

of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are

presently using.  To the extent Paragraph 138 alleges that certain technology is within the scope

of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither

admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any

asserted patent claim.  To the extent any further response to the allegations in Paragraph 138 are

deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

139.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth

of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are

presently using.  To the extent Paragraph 139 alleges that certain technology is within the scope

of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither

admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any

asserted patent claim.  To the extent any further response to the allegations in Paragraph 139 are

deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

140.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth

of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are

presently using.  To the extent Paragraph 140 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 140 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

 141. DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 141 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 141 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

 142. DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 142 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 142 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

 143. DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 143, and on that basis denies each and every allegation contained therein.

144.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 144, and on that basis denies each and every allegation contained therein.

145.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 145 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 145 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

146.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 146, and on that basis denies each and every allegation contained therein.

147.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 147 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 147 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

148.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 148 alleges that certain technology is within the scope

of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 148 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

149.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 149 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 149 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

150.    Paragraph 150 is a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that it has made, used, offered for sale, and sold systems in the United States that infringe the '184 Patent.  To the extent any further response is deemed required, DeCurtis denies the additional allegations of Paragraph 150.

151.    DeCurtis denies the allegations of Paragraph 151.

152.    DeCurtis denies the allegations in paragraph 152.

153.    DeCurtis denies the allegations in Paragraph 153.

154.    DeCurtis admits that it has had knowledge of the '184 Patent since no later than January 29, 2020.  The remaining allegations in paragraph 154 contain legal conclusions for which neither admission nor denial is required.  To the extent a response is deemed required, DeCurtis denies the remaining allegations of Paragraph 154.

155.    DeCurtis denies the allegations in paragraph 155.

156.     DeCurtis denies the allegations in paragraph 156.

### FIFTH CLAIM FOR RELIEF
### (Infringement of United State Patent No. 10,049,516)

157.     DeCurtis incorporates by reference its responses to the allegations in paragraphs

1-97.

158.     DeCurtis admits that Exhibit B purports to be a copy of the '516 Patent.  DeCurtis

admits that the document purports to have a issuance date of August 14, 2018 and lists as

inventors John Padgett, Michael G. Jungen, Douglas Steele, Kyle Prestenback, Richard J.

Criado, Vince Ball, Adam Leonards, Glenn Curtis, Manny Vellon, Patrick Mendiuk, Sander Lam

and lists as assignee Carnival Corporation.  Except as expressly admitted, DeCurtis denies all

remaining allegations of Paragraph 158.

159.     DeCurtis admits that Carnival is listed as the assignee of the '516 Patent.

DeCurtis denies that Carnival owns all substantial rights in the '516 Patent, because DeCurtis is

an omitted inventor and has not assigned legal title to such rights.  Except as expressly admitted,

DeCurtis denies the remaining allegations of Paragraph 159.

160.     DeCurtis denies the allegations of Paragraph 160.

161.     DeCurtis denies the allegations of Paragraph 161.

162.     DeCurtis admits that Paragraph 162 recites claim 13 of the '516 Patent.

163.     DeCurtis denies the allegations of Paragraph 163.

164.     DeCurtis lacks knowledge or information sufficient to form a belief as to the truth

of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are

presently using.  To the extent Paragraph 164 alleges that certain technology is within the scope

of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither

admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any

asserted patent claim.  To the extent any further response to the allegations in Paragraph 164 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

165.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 165 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 165 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

166.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 166 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 166 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

167.    DeCurtis understands that Carnival's contributory infringement claims pertaining to the '516 Patent have been dismissed by the Court with prejudice (Dkt. 144) and therefore no response to this paragraph is required.  To the extent a response is deemed required, DeCurtis denies the allegations in paragraph 167.

168.    DeCurtis denies the allegations of Paragraph 168.

169.    DeCurtis admits that it has had knowledge of the '516 Patent since no later than January 29, 2020.  The remaining allegations in paragraph 169 contain legal conclusions for

which neither admission nor denial is required.  To the extent a response is deemed required,

DeCurtis denies the remaining allegations of Paragraph 169.

170.    DeCurtis denies the allegations of Paragraph 170.

**SIXTH CLAIM FOR RELIEF**
**(Infringement of United State Patent No. 10,157,514)**

171.    DeCurtis incorporates by reference its responses to the allegations in paragraphs

1-97.

172.    DeCurtis admits that Exhibit C purports to be a copy of the '514 Patent.  DeCurtis

admits that the document purports to have a issuance date of December 18, 2018 and lists as

inventors John Padgett, Michael G. Jungen, Douglas Steele, Kyle Prestenback, Richard J.

Criado, Vince Ball, Adam Leonards, Glenn Curtis, Manny Vellon, Patrick Mendiuk, Sander Lam

and lists as assignee Carnival Corporation.  Except as expressly admitted, DeCurtis denies all

remaining allegations of Paragraph 172.

173.    DeCurtis admits that Carnival is listed as the assignee of the '514 Patent.

DeCurtis denies that Carnival owns all substantial rights in the '514 Patent, because DeCurtis is

an omitted inventor and has not assigned legal title to such rights.  Except as expressly admitted,

DeCurtis denies the allegations of Paragraph 173.

174.    DeCurtis denies the allegations of Paragraph 174.

175.    DeCurtis denies the allegations of Paragraph 175.

176.    DeCurtis admits that Paragraph 176 recites claim 11 of the '514 Patent.

177.    DeCurtis denies the allegations of Paragraph 177.

178.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth

of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are

presently using.  To the extent Paragraph 178 alleges that certain technology is within the scope

of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 178 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

179.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 179 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 179 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

180.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 180 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any asserted patent claim.  To the extent any further response to the allegations in Paragraph 180 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

181.    DeCurtis lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to any technology that Virgin, or any Virgin passengers, are presently using.  To the extent Paragraph 181 alleges that certain technology is within the scope of certain specific asserted patent claim elements, it calls for a legal conclusion for which neither admission nor denial is required.  DeCurtis denies that has infringed, directly or indirectly, any

asserted patent claim.  To the extent any further response to the allegations in Paragraph 181 are deemed necessary, except as expressly admitted, DeCurtis denies such allegations.

182.    Paragraph 182 is a legal conclusion for which neither admission nor denial is appropriate.  DeCurtis denies that it has made, used, offered for sale, and sold systems in the United States that infringe the '514 Patent.  To the extent any further response is deemed required, DeCurtis denies the additional allegations of Paragraph 182.

183.    DeCurtis denies the allegations of Paragraph 183.

184.    DeCurtis denies the allegations of Paragraph 184.

185.    DeCurtis denies the allegations of Paragraph 185.

186.    DeCurtis admits that it has had knowledge of the '514 Patent since no later than January 29, 2020.  The remaining allegations in paragraph 186 contain legal conclusions for which neither admission nor denial is required.  To the extent a response is deemed required, DeCurtis denies the remaining allegations of Paragraph 186.

187.    DeCurtis denies the allegations of Paragraph 187.

188.    DeCurtis denies the allegations of Paragraph 188.

## **RESPONSE TO PRAYER FOR RELIEF**

DeCurtis incorporates by reference all preceding paragraphs of this Answer as if fully set forth herein.  DeCurtis denies any and all allegations of wrongdoing alleged in the Complaint. DeCurtis denies all allegations that Carnival is entitled to any relief requested in paragraphs "A" to "N" of the Complaint's Prayer for relief, or any other relief.

## **RESPONSE TO DEMAND FOR TRIAL BY JURY**

DeCurtis avers that Carnival's demand for trial by jury purports to state a legal conclusion that does not require a response.

## DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), and without altering any applicable burdens of proof, DeCurtis asserts the following defenses to the Complaint and reserves the rights to assert additional defenses.

## FIRST DEFENSE

### (Failure to State a Claim for Relief – All Claims)

The Complaint fails to state a claim on which relief can be granted.

## SECOND DEFENSE

### (Statute of limitations – Breach of Contract)

Carnival's claims for breach of contract are barred in whole or in part by the applicable statute of limitations.

## THIRD DEFENSE

### (Lack of Standing – Breach of Contract)

Carnival's claims are barred in whole or in part by Carnival's lack of standing.

## FOURTH DEFENSE

### (Wrong Party – Breach of Contract)

Carnival's claims for breach of contract are barred to the extent it seeks to enforce contractual provisions against a non-party to the contract.

## FIFTH DEFENSE

### (No Breach of Enforceable Contract – Breach of Contract)

Carnival's claims for breach of contract are barred because there has been no breach of any enforceable contract between DeCurtis and Carnival

30

## SIXTH DEFENSE

**(Failure to Satisfy Conditions Precedent – Breach of Contract)**

Carnival's claims for breach of contract are barred for failure to satisfy conditions precedent to relief.

## SEVENTH DEFENSE

**(Indefiniteness – Breach of Contract)**

Carnival's claims for breach of contract are barred because material terms of the contract are too incomplete and uncertain to give rise to an enforceable cause of action.

## EIGHTH DEFENSE

**(No Damages – Breach of Contract)**

Carnival's claims for breach of contract are barred because it has not suffered any damages as a result of DeCurtis' alleged conduct.

## NINTH DEFENSE

**(Speculative Damages – Breach of Contract)**

Carnival's alleged breach of contract damages, if any, are speculative and not recoverable.

## TENTH DEFENSE

**(Failure to Mitigate Damages – Breach of Contract)**

Carnival failed to mitigate its alleged damages for breach of contract and, to the extent of such failure to mitigate, any damages awarded to Carnival should be reduced accordingly.

## ELEVENTH DEFENSE

### (No Irreparable Harm – Breach of Contract)

Carnival is not entitled to equitable relief (injunction or specific performance) because any alleged injury to Carnival is not immediate or irreparable.

## TWELFTH DEFENSE

### (No Right to Injunctive Relief or Specific Performance)

Carnival is not entitled to recover injunctive relief or specific performance on its breach of contract claims.

## THIRTEENTH DEFENSE

### (Equitable Defenses – Breach of Contract)

Carnival's claims for relief, in whole or in part, are barred by the doctrines of  waiver, laches, unclean hands, implied license, and/or estoppel.

## FOURTEENTH DEFENSE

### (Lack of Standing – Patent Infringement)

Carnival lacks all substantial rights in the '184, '514, and/or '516 Patents and therefore lacks standing to assert these patents.

## FIFTEENTH DEFENSE

### (Equitable Defenses – Patent Infringement)

Carnival's patent infringement claims are barred, in whole or in part, by estoppel, acquiescence, waiver, unclean hands, and/or other equitable defenses.

## SIXTEENTH DEFENSE

### (Express or Implied License – Patent Infringement)

Carnival's patent infringement claims are barred, in whole or in part, by express licenses agreements and/or under the doctrine of implied license.

## SEVENTEENTH DEFENSE

### (Exhaustion/First Sale Doctrine – Patent Infringement)

Carnival's patent infringement claims are barred, in whole or in part, by the doctrine of

patent exhaustion and/or the first sale doctrine.

## EIGHTEENTH DEFENSE

### (Failure to Mark – Patent Infringement)

Carnival is barred from recovering damages for any alleged patent infringement because

it has made, offered for sale, or sold within the United States, a patented article without giving

proper notice to the public that the same is patented under 35 U.S.C. § 287.

## NINETEENTH DEFENSE

### (No Irreparable Harm – Patent Infringement)

Carnival is not entitled to injunctive relief because any alleged injury to Carnival is not

immediate or irreparable.

## TWENTIETH DEFENSE

### (No Entitlement To Costs – Patent Infringement)

Carnival is barred by 35 U.S.C. § 288 from recovering any costs associated with its

patent infringement claims in this suit.

## TWENTY-FIRST DEFENSE

### (No Willful Infringement / Exceptional Case)

The Complaint fails to state a claim for relief against DeCurtis for willful infringement

that would qualify for treble damages under 35 U.S.C. § 284 and fails to state a claim for relief

against Defendants that would qualify this as an exceptional case under 35 U.S.C. § 285.

## TWENTY-SECOND DEFENSE

### (Non-Infringement of the '184 Patent)

DeCurtis does not infringe and has not infringed, directly or indirectly, any valid claim of the '184 Patent.  This is because Carnival cannot demonstrate infringement under 35 U.S.C. § 271, and/or any use of any claimed invention in the United States meets the "temporary presence" exception of 35 U.S.C. § 272.

## TWENTY-THIRD DEFENSE

### (Invalidity of the '184 Patent)

All asserted claims of the '184 Patent are invalid for failure to satisfy the conditions of patentability in 35 U.S. C. §§ 101 *et seq.*, including, but not limited to §§ 101, 102, 103, and/or 112.

## TWENTY-FOURTH DEFENSE

### (Unenforceability of the '184 Patent)

All asserted claims of the '184 Patent are unenforceable for inequitable conduct during prosecution of the '184 Patent.  In support of this defense, DeCurtis hereby incorporates all general allegations (paragraphs 12-39) in its Counterclaims set forth below, as well as all allegations pertaining to Counterclaim Count Two (paragraphs 49-54) set forth below.

## TWENTY-FIFTH DEFENSE

### (Non-Infringement of the '516 Patent)

DeCurtis does not infringe and has not infringed, directly or indirectly, any valid claim of the '516 Patent.  This is because Carnival cannot demonstrate infringement under 35 U.S.C. § 271, and/or any use of any claimed invention in the United States meets the "temporary presence" exception of 35 U.S.C. § 272.

## TWENTY-SIXTH DEFENSE

### (Invalidity of the '516 Patent)

All asserted claims of the '516 Patent are invalid for failure to satisfy the conditions of patentability in 35 U.S. C. §§ 101 *et seq.*, including, but not limited to §§ 101, 102, 103, and/or 112.

## TWENTY-SEVENTH DEFENSE

### (Unenforceability of the '516 Patent)

All asserted claims of the '516 Patent are unenforceable for inequitable conduct during prosecution of the '516 Patent.  In support of this defense, DeCurtis hereby incorporates all general allegations (paragraphs 12-39) in its Counterclaims set forth below, as well as all allegations pertaining to Counterclaim Count Seven (paragraphs 90-96) set forth belo.

## TWENTY-EIGHTH DEFENSE

### (Non-Infringement of the '514 Patent)

DeCurtis does not infringe and has not infringed, directly or indirectly, any valid claim of the '514 Patent.  This is because Carnival cannot demonstrate infringement under 35 U.S.C. § 271, and/or any use of any claimed invention in the United States meets the "temporary presence" exception of 35 U.S.C. § 272.

## TWENTY-NINTH DEFENSE

### (Invalidity of the '514 Patent)

All asserted claims of the '514 Patent are invalid for failure to satisfy the conditions of patentability in 35 U.S. C. §§ 101 *et seq.*, including, but not limited to §§ 101, 102, 103, and/or 112.

## THIRTIETH DEFENSE

**(Unenforceability of the '514 Patent)**

All asserted claims of the '514 Patent are unenforceable for inequitable conduct during prosecution of the '514 Patent.  In support of this defense, DeCurtis hereby incorporates all general allegations (paragraphs 12-39) in its Counterclaims set forth below, as well as all allegations pertaining to Counterclaim Count Four (paragraphs 64-70) set forth below.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, DeCurtis LLC alleges the following against Carnival Corporation ("Carnival"):

### PARTIES

1.      DeCurtis LLC is a Delaware limited liability corporation headquartered in Orlando, Florida.  DeCurtis LLC provides technology relating to guest engagement systems, including for cruise ships.

2.      Carnival Corporation is a Panamanian corporation with its principal place of business in Miami, Florida. Among other businesses, Carnival operates cruise lines for use by the public. Carnival is listed as the assignee of the '184, '516, and '514 Patents

### JURISDICTION AND VENUE

3.      Subject to the affirmative defenses and denials set forth above, this Court has jurisdiction over the subject matter of these Counterclaims under, without  limitation, 28 U.S.C. §§ 1331, 1338, 1367, 2201 and 2202, based on an actual controversy between DeCurtis LLC, on one  hand, and Carnival, on the other hand, arising  under the Patent Laws of the United States, Title 35, United States Code.

4.       Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b). Carnival has consented to venue by filing suit against DeCurtis LLC in this district.

5.       Carnival has submitted to the personal jurisdiction of this Court by bringing the present action alleging infringement of United States Patent Nos. 10,045,184 (the "'184 Patent"); 10,049,516 (the "'516 Patent"); and 10,157,514 (the "'514 Patent") (collectively, the "Asserted Patents").

**PATENTS AT ISSUE**

6.      This is an action for declaratory judgment of noninfringement, invalidity, and

unenforceability of one or more claim of U.S. Patent No. 10,045,184 ; one or more claim of U.S.

Patent No. 10,049,516; and one or more claim of U.S. Patent No. 10,157,514 under the Patent

Laws of the United States, Title 35, United States Code, and the Declaratory Judgment Act, 28

U.S.C. § 2201 *et seq.*

7.      These Counterclaims arise out of Carnival's attempt to enforce the Asserted

Patents against DeCurtis LLC.

8.      Carnival alleges that it owns the '184 Patent, the '516 Patent, and the '514 Patent.

9.      Carnival has alleged in the present action that DeCurtis LLC infringes the '184

Patent, the '516 Patent, and the '514 Patent.

10.     Carnival further alleges that the DeCurtis Experience Platform and associated

technology that DeCurtis LLC has implemented for its customers Virgin Voyages ("Virgin") and

Norwegian Cruise Line ("NCL") (the "DXP System") infringes or causes infringement of one or

more claims of the '184 Patent, the '514 Patent, and the '516 Patent.

11.     An actual and justiciable controversy exists between Carnival and DeCurtis LLC

as to whether DeCurtis LLC and the accused DXP System and associated technology infringes

any valid claim of the Asserted Patents.

**GENERAL ALLEGATIONS PERTAINING TO INEQUITABLE CONDUCT COUNTS**

12.     The claims of the '184 Patent, '516 Patent, and '514 Patent are unenforceable

against DeCurtis due to, at least, Carnival's inequitable conduct.  For example, the extent that the

Carnival's asserted patents are based on patentable inventions, they are unenforceable for

fraudulently failing to name at least one rightful inventor, including David DeCurtis, as an

inventor.

13.     Where an application does not name the correct inventor(s), and the applicant has not filed a request to correct inventorship, USPTO personnel are directed to reject the claims under 35 U.S.C. § 101 and 35 U.S.C. § 115. Additionally, at all relevant times, the patent regulations have provided that "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [USPTO], which includes a duty to disclose to the [USPTO] all information known to that individual to be material to patentability," as defined under the regulations. 37 C.F.R. § 1.56(a).

14.     Under the patent regulations, the duty of candor and good faith applies to "individuals associated with the filing or prosecution of a patent application," including not only the inventors and attorneys, but "[e]very other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application." 37 C.F.R. § 1.56(c). This duty includes the correct identification of all inventors.

15.     On the applications for the '184 Patent, '516 Patent, and '514 Patent, John Padgett and Michael Jungen, both of them Carnival employees at the time, are named as inventors. But these patents omit David DeCurtis as an inventor despite his material contributions to the conception of at least one aspect in one or more claims in each of these patents. David DeCurtis contributed to the ideas in these patents during his work on the Experience Innovation Center ("XIC") or ("EIC") project at Carnival between 2014 and 2015.

16.     Before filing the applications for the '184 Patent, '516 Patent, and '514 Patent, Carnival and its agents recognized David DeCurtis as the inventor on a number of the patent ideas included in these applications. Upon information and belief, corroborating evidence exists at Carnival demonstrating DeCurtis's role as an inventor.

17.     For example, DeCurtis did, in fact, conceive of the idea for guest device wearables that could be mounted in a variety of accessory form factors.  DeCurtis conceived of this idea as an improvement to previous work on the Disney "MagicBand" concept (discussed further below), which was restricted to  a single wearable band.   DeCurtis's idea was that guests on extended cruise voyages would wear the guest devices in a variety of different social situations and that it would be desirable to have the guest device easily interface with a number of different wearable accessories (e.g., wristband, necklace, lapel pin, etc.).

18.     DeCurtis first conveyed this idea to Padgett in approximately July 2014 during a meeting in Padgett's office at Carnival. Padgett had wanted to use a version of the MagicBand guest device but DeCurtis explained that a plastic wrist device would not work for cruise ship passengers, especially those dressed for dinner in formal wear. DeCurtis proposed using a gold coin (like a pirate coin) and explained that the device should fit into a pocket, on a belt, or as part of a necklace. Padgett accepted DeCurtis's idea, which became embodied in the "Ocean Coin" concept (later renamed "OceanMedallion"). DeCurtis then worked with Adam Leonards and Glenn Curtis to develop DeCurtis's idea, which existed before Leonards began work on the idea or Curtis joined the "OceanMedallion" project.  DeCurtis's ideas related to wearable guest devices are now reflected in at least claim 20 of the '514 Patent, specifically elements relating to the shape, size, and design of portable guest devices and the ability of these portable guest devices to interact with accessories.

19.     Additionally, Carnival and Padgett knew that DeCurtis was among a group of inventors for techniques related to unlocking doors using low power BLE technologies.  David DeCurtis in fact, contributed to the conception of the overall door unlocking concept during his work on the Carnival EIC program. This work built upon the BLE- door lock concepts that

Padgett and his team experimented with at Disney.  For example, in approximately the summer of 2014, DeCurtis told Padgett that guest wearable devices must have both BLE and NFC capabilities to ensure the ability to unlock doors even when a BLE battery was exhausted.  This idea is now reflected in at least claim 10 of the '514 Patent.

20.     Moreover, in January and February of 2015, DeCurtis helped to conceive of techniques for communicatively coupling door access panels via power efficient networks to a centralized reservation and logging system. These ideas are reflected in at least the claims of the '184 Patent.  Also in January and February 2015, DeCurtis helped to conceive of techniques for efficiently leveraging BLE communications in both a low-power beacon state, as well as a more power-intensive bi-directional state. These ideas are reflected in at least the claim 11 of the '184 Patent.

21.     Finally, in early 2015 DeCurtis conceived and communicated to others on the EIC project the idea for using capacitive touch door handles that would only trigger the latch upon a user touching the door handle to improve safety. Carnival and its agents recognized DeCurtis's sole conception of this idea. This idea is now reflected in at least the claims of the '516 Patent.

22.     Based on standard practices and procedures at the USPTO, Padgett and Jungen would have had to disclose the inventors on each of the inventions for which they sought patents. The Carnival Patents do not identify David DeCurtis as an inventor.  To this date, none of the '184 Patent, the '514 Patent, or the '516 Patent have been amended to include David DeCurtis as an inventor.

23.     More than half of the persons named as inventors on the Carnival Patents, including Padgett and Jungen, were familiar with the filing requirements of the USPTO from filing other, unrelated patents. Several of the named inventors on the Carnival Patents have

applied for more than 10 patents. Among the most frequent fliers were Padgett, Jungen, and Leonards. Despite a duty to disclose it, Padgett and Jungen each knowingly and intentionally concealed from the USPTO that David DeCurtis was an inventor on many of the patent ideas presented as purported inventions claimed in the applications for the Carnival Patents. The failure to identify DeCurtis as an inventor was not inadvertent; it was repeated over the course of multiple patent applications filed at different times over a period of three years.

24.     Upon information and belief, other employees and representatives of Carnival who were associated with the filing or prosecution of the patent family were also (1) then aware that David DeCurtis was an inventor of many of the patent ideas asserted as claims in the family of Carnival Patents, (2) had a duty to disclose David DeCurtis's involvement with these ideas, and (3) intentionally concealed this fact from the USPTO.

25.     Carnival and its agents had a motive to omit David DeCurtis as a named inventor from the Asserted Patents. Carnival and its agents knew that had David DeCurtis been named as an inventor on the Carnival Patents, DeCurtis would have been under an obligation to explain to the USPTO examiner that certain other of the inventions that Carnival was trying to patent, including aspects of the invention that is the subject of the Asserted Patents, were taught and/or suggested by prior art systems that David DeCurtis and the other named inventors were previously involved with.

26.     For example, prior to working at Carnival, John Padgett and many other of the named inventors worked on guest engagement systems for cruise lines and theme parks while employed by the Walt Disney Corporation and its subsidiaries ("Disney"). David DeCurtis was contracted by Padgett for work on the Disney systems while Padgett was a Disney executive.

Both Padgett and David DeCurtis had knowledge of these systems and their status as material prior art to the inventions that the named inventors sought to patent at Carnival.

27.     One of the systems that the named Carnival inventors and DeCurtis worked together on at Disney was the Disney "Magic Band" System.  The MagicBand System made use of  wearable guest devices in the form of a wristband that used BLE-like and NFC protocols to communicate wirelessly with sensors positioned around Disney theme parks. The "MagicBand" devices worn by guests operated as "portable beacon" devices that continuously emitted a beacon signal capable of detection by sensors positioned throughout a theme-park environment. The sensors of the MagicBand system were communicatively coupled to a back-end, central server capable of tracking guest location and interactions with sensors throughout the theme park.  Using the MagicBand systems, guests were able to seamlessly interface with devices throughout Disney's theme park.  The MagicBand could further be used to gain admission to the park and to unlock guest hotel room guest doors.  These features render the MagicBand system material prior art to at least the independent claims of the '184 Patent.

28.     Similarly, the named Carnival inventors and DeCurtis worked on a Disney restaurant concept called the "Be Our Guest" System.  The "Be Our Guest" System leveraged the MagicBand technology discussed above to provide seamless guest service in a restaurant environment.  The "Be Our Guest" System involved the use of stationary sensors positioned in restaurant tables, which were capable of receiving wireless BLE beacon signals from MagicBand devices worn by guests in order to determine guest location for delivery of orders.  The Be Our Guest System further involved the use of kiosk terminals and wireless point of sale terminals utilizing NFC communications that allowed guests to use their MagicBand devices to place and pay for orders.  These features are material prior art to, for example, claim 19 of the '184 Patent.

29.     Finally, the Disney CDA System involved the use of wearable bands, capable of wireless communication leveraging both NFC and BLE communications, in order to track children on Diseny's cruise ships.  The system used stationary sensors positioned throughout designated areas, and beacon signals emitted from the portable, wearable bracelets in order to track and log the location of children at a back-end server through a communication network. Further, near-field communication ("NFC") communication was used for child check-in and roll-call at designated locations.  These features are material prior art to at least the independent claims of the '184 Patent.

30.     Each of the Disney "MagicBand," "Be Our Guest," and "CDA" systems were in public use in the United States as early as 2012—more than one-year before the earliest purported priority date of any of the Carnival Patents. Any person skilled in the art of designing guest engagement systems would understand the technology, systems, and methods involved in the "MagicBand," "Be Our Guest," and CDA guest engagement system.  Thus, as known to Carnival and its agents, these systems, including their use of portable user devices acting as beacons, were in "public use" and "available to the public," qualifying it as prior art under AIA 35 U.S.C. § 102(a)(1).  Yet, Carnival did not disclose any of these Disney Systems as prior art during prosecution.

31.     Carnival and its agents knew that these Disney systems were material prior art to the patents it was filing, knew that David DeCurtis had knowledge of the systems, and knew that if they named David DeCurtis as an inventor on the Carnival patents, Mr. DeCurtis would disclose the existence of these prior art Disney Systems to the Patent Office, resulting in Patent Office rejecting the patents.  For example, each of these systems made use of portable devices as "beacon" devices, which is a feature that Carnival has repeatedly touted as a key "inventive"

feature of its Asserted Patents.  Thus, the Disney Systems support the inference that Carnival intentionally omitted Mr. DeCurtis as an inventor.

32.      Carnival and its agents were further motivated to fraudulently omit David DeCurtis as a named inventor from the Carnival patents to prevent Mr. DeCurtis from informing the patent office of a known, prior art systems for wirelessly controlling an electronic door lock mechanism.   One such electronic door locking solution was the solution provided by third-party Assa Abloy, a global leader in the design and development of wireless electronic door lock technology for the hospitality industry.  Carnival and its agents knew of Assa Abloy's door lock technology because, upon information and belief, they considered sourcing this technology for implementation in their own Ocean Medallion System (*i.e.*, the system Carnival now contends practices all of the asserted claims of the Asserted Patents in this case).

33.      One of Assa Abloy's signature products known to Carnival and its agents is the "Allure" system, which involves the use of an "access panel" that is mounted separately from an electronically controlled door.  The "access panel" interacts wirelessly with a guest device (using, for example, Bluetooth Low Energy or NFC communications) to determine whether access is authorized.  Then, in turn, the access panel interacts wireless with the door lock communication module to selectively unlock the door.  This "separate access panel" architecture provides an elegant design, and also avoids the cost and complexity of installing access related electronics directly onto a door.




34.     The "Allure" electronic lock system provides further capability when combined with Assa Abloy's Access Management System, which allows for integration of the access panels with communication networks and back-end servers in order to log and track guest access. This architecture further enables secure access and authorization protocols, using encrypted channels, in order to ensure guest safety and security.

35.     The Assa Abloy "Allure" electronic lock system was in public use in the United States as early as 2013.  Any person skilled in the art of designing electronic locks would understand the technology, systems, and methods involved in Assa Abloy's "Allure" electronic lock systems. As known to Carnival and its agents, Assa Abloy's "Allure" electronic locks were therefore in "public use" and "available to the public," qualifying it as prior art under AIA 35 U.S.C. § 102(a)(1).

36.     Upon information and belief, Carnival personnel involved in the prosecution of the Carnival Patents, including Padgett and Jungen were aware of the Assa Abloy Allure System

and its features, including the separate access panel feature, the back-end communication feature, and the available security and authorization features provided by Assa Abloy. Documents produced by Carnival in this litigation show that Carnival had prior knowledge of Assa Abloy "Allure" electronic lock system. See CARNIVAL00000730-741. Upon information and belief, Carnival sought to source Assa Abloy Allure access panels for its OceanMedallion System—the same system Carnival now claims is covered by the Carnival Patents at issue. Yet, Carnival did not disclose the Assa Abloy Allure System as prior art during prosecution.

37.     Upon information and belief, Carnival and its agents, including the named inventors, knew that if they named David DeCurtis as an inventor on the Carnival patents, Mr. DeCurtis would alert the U.S. Patent Office to the existence of the Assa Abloy Allure System, which would result in the Patent Office refusing to allow the Carnival Patent claims to issue. Thus, the Assa Abloy System supports the inference that Carnival intentionally and fraudulently omitted David DeCurtis as an inventor of the Carnival Patents.

38.     The USPTO would not have issued the '184 Patent, the '514 Patent, or the '516 Patent if it had known that the applicants had misrepresented inventorship by failing to disclose the true origin of these purported inventions.

39.     Padgett, Jungen, and, upon information and belief, other Carnival employees and representatives, fraudulently procured the Carnival Patents knowing that DeCurtis LLC and its customers would be forced to engage in the expensive and time-consuming process of designing alternatives to the fraudulently-obtained and otherwise unenforceable patents to avoid the expense and risk of patent infringement litigation.

## COUNT ONE
### (Declaratory Judgment of Invalidity of the '184 Patent)

40.     DeCurtis LLC re-alleges and incorporates by reference Paragraphs 1 to 11 as if fully set forth herein.

41.     Carnival has sued DeCurtis LLC in the present action, alleging infringement of the '184 Patent, and that the '184 Patent is valid.

42.     The claims of the '184 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Section 101, 102, 103, and/or 112.

43.     The '184 Patent claims recite patent-ineligible subject matter in violation  of § 101 because they are directed to an abstract idea and because they lack an inventive  concept sufficient to transform the claim into patent-eligible invention.  For example,  the claims are directed to the abstract idea of wirelessly communicating and logging guest information and recite nothing more than conventional and commonly  known components to carry out the abstract idea.

44.     The claims are anticipated and/or rendered obvious by the prior art.

45.     The claims are invalid under 35 U.S.C. § 112 because they lack written description, are not enabled, and/or are not sufficiently definite.

46.     DeCurtis LLC is entitled to a declaratory judgment that the claims of the '184 Patent are invalid.

47.     An immediate, real, and justiciable controversy exists between DeCurtis and Carnival regarding the validity of the '184 Patent.

48.     Carnival has also filed this action without a good faith basis, making this an exceptional case. Consequently, Carnival is liable for any and all attorneys' fees, expenses, and costs incurred by DeCurtis in connection with this action.

## COUNT TWO
### (Declaratory Judgment of Unenforceability of the '184 Patent)

49.     DeCurtis LLC restates and incorporates by reference the allegations in paragraphs 1 through 39 as if fully set forth herein.

50.     David DeCurtis made material contributions to the conception of the invention embodied in one or more claims of the '184 Patent.

51.     Carnival and its agents, including the named inventors of the '184 Patent, knew of Mr. DeCurtis' material contributions to conception, yet knowingly and fraudulently omitted Mr. DeCurtis as an inventor.  Carnival and its agents omitted Mr. DeCurtis, in part, to avoid Mr. DeCurtis of informing the Patent Office of material prior art in the form of the Disney MagicBand, Be Our Guest, and CDA Systems, as well as the Assa Abloy Allure System.

52.     Carnival and its agents fraudulent omission of Mr. DeCurtis as an inventor was material.

53.     Accordingly, the '184 Patent is unenforceable for inequitable conduct.

54.     Carnival has also filed this action without a good faith basis, making this an exceptional case. Consequently, Carnival is liable for any and all attorneys' fees, expenses, and costs incurred by DeCurtis in connection with this action.

## COUNT THREE
### (Declaratory Judgment of Invalidity of the '514 Patent)

55.     DeCurtis LLC re-alleges and incorporates by reference Paragraphs 1 to 11 as if fully set forth herein.

56.     Carnival has sued DeCurtis LLC in the present action, alleging infringement of the '514 Patent, and that the '514 Patent is valid.

57.     The claims of the '514 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Section 101, 102, 103, and/or 112.

58.     The '514 Patent claims recite patent-ineligible subject matter in violation  of § 101 because they are directed to an abstract idea and because they lack an inventive  concept sufficient to transform the claim into patent-eligible invention.  For example,  the claims are directed to the abstract idea of wirelessly communicating and logging guest information and recite nothing more than conventional and commonly  known components to carry out the abstract idea.

59.     The claims are anticipated and/or rendered obvious by the prior art.

60.     The claims are invalid under 35 U.S.C. § 112 because they lack written description, are not enabled, and/or are not sufficiently definite.

61.     DeCurtis LLC is entitled to a declaratory judgment that the claims of the '514 Patent are invalid.

62.     An immediate, real, and justiciable controversy exists between DeCurtis and Carnival regarding the validity of the '514 Patent.

63.     Carnival has also filed this action without a good faith basis, making this an exceptional case. Consequently, Carnival is liable for any and all attorneys' fees, expenses, and costs incurred by DeCurtis in connection with this action.

**COUNT FOUR**
**<u>(Declaratory Judgment of Unenforceability of the '514 Patent)</u>**

64.     DeCurtis LLC restates and incorporates by reference the allegations in paragraphs

1 through 39 as if fully set forth herein.

65.     David DeCurtis made material contributions to the conception of the invention

embodied in one or more claims of the '514 Patent.

66.     Carnival and its agents, including the named inventors of the '514 Patent, knew of

Mr. DeCurtis' material contributions to conception, yet knowingly and fraudulently omitted Mr.

DeCurtis as an inventor.  Carnival and its agents omitted Mr. DeCurtis, in part, to avoid Mr.

DeCurtis of informing the Patent Office of material prior art in the form of the Disney

MagicBand, Be Our Guest, and CDA Systems, as well as the Assa Abloy Allure System.

67.     Carnival and its agents fraudulent omission of Mr. DeCurtis as an inventor was

material.

68.     Accordingly, the '514 Patent is unenforceable for inequitable conduct.

69.     Additionally, the '514 Patent shares a substantially similar specification to the

'184 Patent. The inventions disclosed in the Carnival Patents are all directed to guest

engagement systems, and they all stem from related developmental work on the Project Trident.

Carnival and its agents omitted David DeCurtis from each of the Carnival Patents with the

similar motive of avoiding the possibility that DeCurtis would identify certain material prior art

that would impact the prosecution of the entire Carnival Patent family. As such, the inequitable

conduct on the '184 Patent similarly infects the '514 Patent rendering it unenforceable for this

separate reason.

70.     Carnival has also filed this action without a good faith basis, making this an exceptional case. Consequently, Carnival is liable for any and all attorneys' fees, expenses, and costs incurred by DeCurtis in connection with this action.

## COUNT FIVE
### (Declaratory Judgment of Non-Infringement of the '516 Patent)

71.     DeCurtis LLC re-alleges and incorporates by reference Paragraphs 1 to 11 as if fully set forth herein.

72.     Carnival has sued DeCurtis LLC in the present action, alleging infringement of the '516 Patent, and that the '516 Patent is valid.

73.     On information and belief, Carnival claims to own all rights, title, and interest in the '516 Patent.

74.     The '516 Patent has two independent claims, claims 1 and 13.

75.     Claim 1 of the '516 Patent recites:

A door latch assembly comprising:

> a door knob;
>
> a latch selectively operated by operation of the door knob;
>
> an electrical isolation sleeve mounted on a spindle of the door latch assembly and configured to electrically isolate the door knob from other portions of the door latch assembly;
>
> an electronically controlled locking mechanism operative to selectively unlock the latch;
>
> a proximity sensor operative to sense contact or proximity of a user with the door knob; and
>
> an access panel separate from the door knob and the latch, and including a radio configured for wireless communication with the electronically controlled locking mechanism, a first transceiver configured for wireless communication with a portable user device, and a second transceiver for communication with a reservation server,

wherein the electronically controlled locking mechanism is operative to selectively unlock the latch based on the contact or proximity of the user with the door knob sensed by the proximity sensor,

the door knob is electrically isolated from a ground potential,

the proximity sensor is a capacitive touch sensor electrically connected to the electrically isolated door knob and operative to sense contact or proximity of the user with the electrically isolated door knob, and

the access panel is configured to receive door access information from the reservation server via the second transceiver, determine whether the latch should be unlocked based on the door access information received from the reservation server, and transmit an instruction to unlock the latch to the electronically controlled locking mechanism via the radio based on the determination.

76.     Claim 13 of the '516 Patent recites:

A door latch assembly comprising:

a latch assembly including a latch and an electronically controlled locking mechanism operative to selectively unlock a door;

a door lock communication module electrically connected to the electronically controlled locking mechanism of the latch assembly, and including a radio configured for wireless communication; and

an access panel separate from and fixedly mounted proximate to the door lock communication module and latch assembly, and including a radio configured for wireless communication with the door lock communication module, a first transceiver configured for wireless communication with a portable user device, and a second transceiver for communication with a reservation server,

wherein the access panel separate from and fixedly mounted proximate to the door lock communication module is configured to receive door access information from the reservation server via the second transceiver, determine whether the door should be unlocked based on the door access information received from the reservation server, and transmit an instruction to unlock the door to the door lock communication module via the radio based on the determination.

77.     DeCurtis is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '516 Patent.  For example, with the with respect to the '516 patent, there can be no literal infringement of any claim requiring an "access panel" that communicates

via a "second transceiver" with a "reservation server" (e.g., claims 1, 13, 15, and 18 of the '516

patent) at least because Carnival clearly and unambiguously limited this claim to a "wireless"

second transceiver during prosecution of the '516 patent.  See 4/23/2018 Remarks at 10 ("The

[prior art] is notably not described as having multiple wireless communication interfaces

including 'a radio […], a first transceiver […], and a second transceiver […],' in accordance with

those detailed in claim 71.") (Emphasis added).  Moreover, DeCurtis does not provide hardware

or software relating to numerous claim limitation of the '516 patent, including a "door knob," "a

latch," "an electronically controlled locking mechanism," a "proximity sensor," an "access

panel," or a "reservation server," and DeCurtis' DXP system and associated technology therefore

does not infringe the claims of the '516 Patent.

　　　　78.　　DeCurtis LLC is entitled to a declaratory judgment that at least one claim of the

'516 Patent is not infringed.

　　　　79.　　An immediate, real, and justiciable controversy exists between DeCurtis and

Carnival regarding the alleged infringement of the '516 Patent.

　　　　80.　　Carnival has also filed this action without a good faith basis, making this an

exceptional case. Consequently, Carnival is liable for any and all attorneys' fees, expenses, and

costs incurred by DeCurtis in connection with this action.

### COUNT SIX
### (Declaratory Judgment of Invalidity of the '516 Patent)

　　　　81.　　DeCurtis LLC re-alleges and incorporates by reference Paragraphs 1 to 11 as if

fully set forth herein.

　　　　82.　　Carnival has sued DeCurtis LLC in the present action, alleging infringement of

the '516 Patent, and that the '516 Patent is valid.

83.     The claims of the '516 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Section 101, 102, 103, and/or 112.

84.     The '516 Patent claims recite patent-ineligible subject matter in violation  of § 101 because they are directed to an abstract idea and because they lack an inventive  concept sufficient to transform the claim into patent-eligible invention.  For example,  the claims are directed to the abstract idea of wirelessly communicating and logging guest information and recite nothing more than conventional and commonly  known components to carry out the abstract idea.

85.     The claims are anticipated and/or rendered obvious by the prior art.

86.     The claims are invalid under 35 U.S.C. § 112 because they lack written description, are not enabled, and/or are not sufficiently definite.

87.     DeCurtis LLC is entitled to a declaratory judgment that the claims of the '516 Patent are invalid.

88.     An immediate, real, and justiciable controversy exists between DeCurtis and Carnival regarding the validity of the '516 Patent.

89.     Carnival has also filed this action without a good faith basis, making this an exceptional case. Consequently, Carnival is liable for any and all attorneys' fees, expenses, and costs incurred by DeCurtis in connection with this action.

### COUNT SEVEN
### <u>(Declaratory Judgment of Unenforceability of the '516 Patent)</u>

90.     DeCurtis LLC restates and incorporates by reference the allegations in paragraphs 1 through 39 as if fully set forth herein.

91.     David DeCurtis made material contributions to the conception of the invention embodied in one or more claims of the '516 Patent.

92.     Carnival and its agents, including the named inventors of the '516 Patent, knew of Mr. DeCurtis' material contributions to conception, yet knowingly and fraudulently omitted Mr. DeCurtis as an inventor.  Carnival and its agents omitted Mr. DeCurtis, in part, to avoid Mr. DeCurtis of informing the Patent Office of material prior art in the form of the Disney MagicBand, Be Our Guest, and CDA Systems, as well as the Assa Abloy Allure System.

93.     Carnival and its agents fraudulent omission of Mr. DeCurtis as an inventor was material.

94.     Accordingly, the '516 Patent is unenforceable for inequitable conduct.

95.     Additionally, the '516 Patent shares a substantially similar specification to the '184 Patent. The inventions disclosed in the Carnival Patents are all directed to guest engagement systems, and they all stem from related developmental work on the Project Trident. Carnival and its agents omitted David DeCurtis from each of the Carnival Patents with the similar motive of avoiding the possibility that DeCurtis would identify certain material prior art that would impact the prosecution of the entire Carnival Patent family. As such, the inequitable conduct on the '184 Patent similarly infects the '516 Patent rendering it unenforceable for this separate reason.

96.     Carnival has also filed this action without a good faith basis, making this an exceptional case. Consequently, Carnival is liable for any and all attorneys' fees, expenses, and costs incurred by DeCurtis in connection with this action.

## PRAYER FOR RELIEF

WHEREFORE, DeCurtis prays that this Court enter judgment.

A.      In favor of DeCurtis, and against Carnival, thereby dismissing Carnival's Complaint in its entirety, with prejudice, with Carnival taking nothing by way of its claims;

B.      Declaring and adjudging that DeCurtis has not infringed, and are not now infringing any valid claim of the '516 Patent, under any subsection of 35 U.S.C. § 271;

C.      Declaring and adjudging that all asserted claims of the Asserted Patents are invalid;

D.      Declaring and adjudging that all claims of the Asserted Patents are unenforceable for inequitable conduct;

E.      That this case stands out from others and as such is an exceptional case pursuant to 35 U.S.C. § 285 and ordering Carnival to pay DeCurtis' reasonable attorneys' fees incurred in this action;

F.      A judgment and order requiring Carnival to pay DeCurtis pre-judgment and post-judgment interest on any amounts awarded.

G.      That Carnival pay all costs incurred by DeCurtis in this action; and awarding DeCurtis all other relief that the court deems just and proper.

**<u>DEMAND FOR JURY</u>**

DeCurtis respectfully requests a trial by jury on all issues so triable.


Dated: May 3, 2021                                Respectfully submitted,

                                                 DECURTIS LLC


                                                 */s/ Jason P. Stearns*
                                                 By:  /s/ Jason P. Stearns
                                                        One of its attorneys

David C. Gustman (Pro Hac Vice)
Jeffery M. Cross (Pro Hac Vice)
Jill C. Anderson (Pro Hac Vice)
Jennifer L. Fitzgerald (Pro Hac Vice)
**FREEBORN & PETERS LLP**
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Tel. (312) 360-6000
Email:  dgustman@freeborn.com
          jcross@freeborn.com
          janderson@freeborn.com
          jfitzgerald@freeborn.com


Scott L. Watson (Pro Hac Vice)
Justin C. Griffin (Pro Hac Vice)
Patrick T. Schmidt (Pro Hac Vice)
Zachary A. Schenkkan (Pro Hac Vice)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel. (213) 443-3000
Email:  swatson@quinnemanuel.com
          justingriffin@quinnemanuel.com
          patrickschmidt@quinnemanuel.com
          zackschenkkan@quinnemanuel.com

Jason P. Stearns
Florida Bar No. 059550
**FREEBORN & PETERS LLP**
201 N. Franklin Street, Suite 3550
Tampa, FL 33602
Tel. (813) 488-2920
Email:  jstearns@freeborn.com
          ckitchell@freeborn.com
*Attorneys for Plaintiff DeCurtis LLC and*
*DeCurtis Corporation*