UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-22945-SCOLA/TORRES

DECURTIS LLC,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____

CARNIVAL CORPORATION,

    Plaintiff,

v.

DECURTIS CORPORATION and
DECURTIS LLC,

    Defendants.

_____/

**REPORT AND RECOMMENDATION
ON CARNIVAL'S MOTION TO DISMISS AND/OR STRIKE
DECURTIS' COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**

    This matter is before the Court on Carnival Corporation's ("Carnival") motion to dismiss or alternatively strike DeCurtis Corporation and DeCurtis LLC's (collectively, "DeCurtis") counterclaims and affirmative defenses (the "Motion"). [D.E. 160]. DeCurtis responded in opposition on June 7, 2021. [D.E. 161]. Carnival replied on June 14, 2021. [D.E. 162]. Therefore, the Motion is now ripe for

1

disposition. Having reviewed the briefing and the relevant case law, and for the reasons discussed below, the Court recommends that the Motion be **DENIED**.[1]

## I. BACKGROUND

This consolidated patent case involves dueling complaints that have been whittled down through the motion-to-dismiss process and can no longer be amended. [D.E. 144]. Presently, Carnival's operative complaint alleges a total of four counts against DeCurtis: (1) breach of contract; (2) infringement of United States Patent No. 10,045,184 (the "'184 Patent"); (3) infringement of United States Patent No. 10,049,516 (the "'516 Patent"); and (4) infringement of United States Patent No. 10,157,514 (the "'514 Patent").[2] [D.E. 88].

Prior to Carnival's motion to dismiss [D.E. 94], DeCurtis' operative complaint alleged ten counts against Carnival [D.E. 87]. First, DeCurtis sought declaratory relief regarding the unenforceability of Carnival's patent portfolio, which included but was not limited to the '184 Patent, '516 Patent, and '514 Patent. DeCurtis alleged alternative theories for the unenforceability of Carnival's patent portfolio: the patents were unenforceable either because Carnival withheld material prior art during the prosecution of its patents (the "prior-art theory") or because Carnival failed to name Mr. DeCurtis, the namesake and founder of DeCurtis, as an inventor on the relevant patents (the "inventorship theory"). These theories of unenforceability overlapped, to

---

[1] On November 20, 2020, the Honorable Robert N. Scola referred this motion to the Undersigned Magistrate for disposition. [D.E. 102].

[2] Insofar as the infringement claim relating to the '516 Patent is premised on the theory of contributory infringement, this claim has been dismissed with prejudice. [D.E. 144].

an extent, because Carnival was allegedly motivated to omit Mr. DeCurtis from the list of inventors on its patents because it feared that Mr. DeCurtis would disclose material prior art to the United States Patent and Trademark Office ("PTO") and, thereby, jeopardize the viability of Carnival's patent applications.

The Court ultimately dismissed without prejudice DeCurtis' claim for declaratory relief regarding the unenforceability of Carnival's patent portfolio due to a lack of subject matter jurisdiction. [D.E. 144]. But the alternative theories of unenforceability undergirded several other claims brought by DeCurtis, and so the Court evaluated the merits of these alleged theories when it ruled on Carnival's motion to dismiss. Accordingly, the Court determined that the inventorship theory was sufficiently alleged, but the prior-art theory was not. Thus, to the extent that DeCurtis' claims of monopolization, attempted monopolization, tortious interference, and unfair competition depended upon the prior-art theory, those claims were dismissed with prejudice. But because those counts were premised on multiple theories of unenforceability and non-infringement, they remain pending.

The remaining five counts in DeCurtis' operative complaint also sought declaratory relief. Specifically, DeCurtis sought a declaration of non-infringement with respect to the '184 Patent and the '514 Patent. Carnival did not move to dismiss these counts, and so they remain pending as well.[3] DeCurtis additionally sought a

---

[3] Carnival actually noted in its motion to dismiss that it was not challenging these counts because "DeCurtis can assert those declaratory judgment claims as counterclaims to Carnival's complaint. Thus, although there was no subject matter jurisdiction as to those claims when DeCurtis filed its complaint, Carnival does not

declaration of non-infringement with respect to three other patents held by Carnival, but these counts were ultimately dismissed without prejudice due to lack of subject matter jurisdiction. [D.E. 144]. The table below illustrates the current state of DeCurtis' operative complaint, which now contains only six counts.

| COUNT | CLAIM FOR RELIEF | CURRENT STATUS |
|---|---|---|
| I | Declaratory judgment: unenforceability of the '184 Patent, '514 Patent, '516 Patent, '642 Patent, '978 Patent, '271 Patent, and '228 Patent. | Dismissed without prejudice for lack of subject matter jurisdiction. Insofar as this claim relied upon the prior-art theory of unenforceability, dismissed with prejudice. |
| II | Monopolization in violation of Section 2 of the Sherman Act. | Dismissed with prejudice, but only with respect to the prior-art theory of unenforceability. |
| III | Attempted monopolization in violation of Section 2 of the Sherman Act. | Dismissed with prejudice, but only with respect to the prior-art theory of unenforceability. |
| IV | Tortious interference with contract and business relationships. | Dismissed with prejudice, but only with respect to the prior-art theory of unenforceability. |
| V | Unfair competition under Florida common law. | Dismissed with prejudice, but only with respect to the prior-art theory of unenforceability. |
| VI | Declaratory judgment: non-infringement of the '184 Patent. | Pending. |
| VII | Declaratory judgment: non-infringement of the '514 Patent. | Pending. |
| VIII | Declaratory judgment: non-infringement of the '228 Patent. | Dismissed without prejudice for lack of subject matter jurisdiction. |
| IX | Declaratory judgment: non-infringement of the '271 Patent. | Dismissed without prejudice for lack of subject matter jurisdiction. |
| X | Declaratory judgment: non-infringement of the '642 Patent. | Dismissed without prejudice for lack of subject matter jurisdiction. |

---

move to dismiss those counts as doing so would have no practical effect." [D.E. 94 at 1, n.1]. The irony of this statement will soon become apparent.

After resolving the parties' respective motions to dismiss, the Court denied them the opportunity to amend their complaints and ordered the parties to "file their respective answers to the complaints on or before May 3, 2021." [D.E. 144]. Carnival timely filed its answer and affirmative defenses to DeCurtis' operative complaint. [D.E. 156]. DeCurtis also timely filed its answer and affirmative defenses to Carnival's operative complaint, however, it additionally attached seven counterclaims to this responsive pleading:

> (1) declaratory judgment of invalidity of the '184 Patent;
> (2) declaratory judgment of unenforceability of the '184 Patent;
> (3) declaratory judgment of invalidity of the '514 Patent;
> (4) declaratory judgment of unenforceability of the '514 Patent;
> (5) declaratory judgment of non-infringement of the '516 Patent;
> (6) declaratory judgment of invalidity of the '516 Patent; and
> (7) declaratory judgment of unenforceability of the '516 Patent.

[D.E. 155]. For procedural and substantive reasons, Carnival disputes the propriety of DeCurtis' counterclaims, three of its affirmative defenses,[4] and some of the factual allegations pled in support of those counterclaims and defenses. Accordingly, Carnival has moved to dismiss (or alternatively strike) these counterclaims, affirmative defenses, and factual allegations. DeCurtis opposes the Motion.

## II. ANALYSIS

Carnival advances several arguments to explain why DeCurtis' counterclaims and affirmative defenses (and the factual allegations in support thereof) are procedurally and/or substantively improper. Procedurally, Carnival argues that *all*

---

[4] The affirmative defenses at issue relate to the unenforceability of Carnival's patents. Specifically, Carnival seeks to dismiss and/or strike affirmative defense 24 (unenforceability of the '184 Patent), affirmative defense 27 (unenforceability of the '516 Patent), and affirmative defense 28 (unenforceability of the '514 Patent).

5

of DeCurtis' counterclaims should be dismissed (or stricken) because the counterclaims were filed after the parties' deadline to amend their pleadings and are otherwise redundant. Substantively, Carnival argues that the counterclaims and affirmative defenses that relate to unenforceability are an attempt to improperly "resurrect" DeCurtis' unenforceability claims based on the prior-art theory, which the Court previously dismissed with prejudice.[5] Alternatively, Carnival submits that some of the factual allegations made in support of these counterclaims and affirmative defenses ought to be stricken because the allegations illustrate a substantively improper attempt to bolster DeCurtis' inventorship theory, which is still a pending issue in the case. Although Carnival makes many arguments, none of them is persuasive.

### A. *DeCurtis' counterclaims are procedurally proper and not redundant and, therefore, should not be dismissed or stricken.*

When Judge Scola adopted this Court's reports and recommendations regarding the parties' dueling motions to dismiss, [D.E. 144], he declined to afford the parties leave to amend their operative complaints as the deadline for the amendment of pleadings had since passed. Accordingly, Judge Scola ordered the parties to file their respective answers by a certain date. The parties complied with this order by filing their responsive pleadings in a timely fashion.

---

[5] As discussed below, Carnival appears to have abandoned this argument in its reply brief due to DeCurtis' unequivocal representation that its unenforceability counterclaims and affirmative defenses are premised solely on the inventorship theory that this Court found to be sufficiently alleged.

6

Carnival now argues that DeCurtis' choice to attach seven counterclaims to its timely filed answer was procedurally improper because the deadline for the amendment of pleadings is behind us and DeCurtis failed to obtain the Court's leave before filing its counterclaims, in violation of Federal Rule of Civil Procedure 16(b)(4). But Carnival's procedural argument suffers from at least one glaring error: the record clearly shows that DeCurtis' answer, which incorporates its affirmative defenses and counterclaims, is not an *amended* pleading.

Federal Rule of Civil Procedure 7(a) defines the seven "pleadings" that are allowed in federal court; "counterclaim" is not on that exhaustive list. By contrast, counterclaims, which are governed by Federal Rule of Civil Procedure 13, are permissible components of a pleading – usually an answer – that cannot stand alone on the docket. *See, e.g., KAABOOWorks Services v. Pilsl*, Case No. 17-cv-02530, 2019 WL 1979927, at *4 (D. Colo. May 3, 2019) ("[T]o the extent that Plaintiff here complains only about the timing of the Counterclaims, counterclaims are not, standing alone, considered a pleading . . . . [and so the] deadline for . . . amendment of pleadings is therefore inapplicable."). Accordingly, Carnival's argument that DeCurtis needed to obtain leave to file its counterclaims pursuant to Rule 16(b)(4) is fundamentally incorrect. *See id.* DeCurtis' answer and counterclaims were timely filed and are, therefore, procedurally proper.

Carnival alternatively moves to strike all seven counterclaims simply because they are largely duplicative of DeCurtis' affirmative defenses. Indeed, Federal Rule of Civil Procedure 12(f) permits the Court to strike "redundant" matters from a

7

pleading, but when deciding whether to strike a counterclaim on the basis that it is redundant, courts consider whether the declaratory judgment sought serves a "useful purpose." *See Medmarc Casualty Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011); *Centre Hill Courts Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, Case No. 19-cv-80111, 2019 WL 7899220, at *3 (S.D. Fla. Apr. 10, 2019) ("[T]here is no favorable reason or useful purpose to retain Defendant's counterclaim."); *Armour Group, Inc. v. Labock*, Case No. 11-cv-61991, 2012 WL 12838313, at *2 (S.D. Fla. Feb. 10, 2012) ("If Defendants . . . could offer some rationale why their declaratory judgment counterclaim was not needlessly duplicative of issues that will be resolved in Plaintiff's Complaint, the Court would be inclined to allow the claim to go forward.").

Here, DeCurtis submits that its counterclaims are necessary "to conform the pleadings to the scope of the issues that the Court found adequately pleaded" and "to ensure that Carnival does not unilaterally withdraw its infringement theories without providing DeCurtis with adequate assurance that it will not later be sued again on these same patents." [D.E. 161 at 11]. In light of the record and DeCurtis' representations, the Court finds that DeCurtis' counterclaims serve a useful purpose. Therefore, the Court declines to strike the counterclaims as redundant.

It need not be reiterated because Carnival's representations to this Court do not control the implementation of the Federal Rules of Civil Procedure, but Carnival expressly acknowledged in its motion to dismiss DeCurtis' operative complaint that DeCurtis *could* assert some of its declaratory judgment claims as counterclaims to

8

Carnival's complaint. [D.E. 94 at 1, n. 1]. Thus, it is not surprising that Carnival's arguments here sound insincere. But the truth is that, if Carnival didn't want to subject itself to counterclaims, then it shouldn't have filed a complaint in federal court. Accordingly, Carnival's motion to dismiss (or alternatively strike) DeCurtis' counterclaims as procedurally improper should be **DENIED**.

### B. *DeCurtis' counterclaims and affirmative defenses are substantively proper and should not be dismissed or stricken.*

To be clear, Carnival's substantive challenge is not directed at every counterclaim, affirmative defense, and factual allegation in support thereof. By contrast, on substantive impropriety grounds, Carnival's Motion is limited to counterclaims 2, 4, and 7, affirmative defenses 24, 27, and 30, and the factual allegations in paragraphs 26-37 of DeCurtis' answer.

#### 1. *DeCurtis is not attempting to resurrect its prior-art theory of unenforceability.*

Carnival's first argument – that the foregoing counterclaims, defenses, and allegations are an improper attempt to "resurrect" DeCurtis' dismissed-with-prejudice prior-art theory of unenforceability – would be well taken if Carnival had not abandoned it in its reply. Indeed, *res judicata* should theoretically operate to prevent DeCurtis from reintroducing claims for relief based on the prior-art theory, but DeCurtis represented in its response that no such resurrection is underway. By contrast, says DeCurtis, any factual allegation in its answer relating to the previously dismissed prior-art theory is limited to the inventorship theory because the latter theory contemplates that Carnival's motive for omitting Mr. DeCurtis from the list of

9

inventors on its patents was its concern that Mr. DeCurtis would disclose material prior art to the PTO and, thereby, jeopardize the viability of Carnival's patent applications. In its reply, Carnival appears to accept this "judicial admission" from DeCurtis before refocusing on the other reasons that, in Carnival's view, some of DeCurtis' counterclaims, defenses, and allegations are substantively improper. Accordingly, this Court declines to fully evaluate the merits of this particular argument. The prior-art theory of unenforceability is behind us.

### 2. *DeCurtis' elaboration on the alleged motive underlying its inventorship theory of unenforceability is not substantively improper.*

Although Carnival's briefing here is not a model of clarity, the balance of its arguments regarding substantive impropriety do not appear to seek the dismissal of DeCurtis' unenforceability counterclaims, defenses, and allegations; rather, these arguments support Carnival's alternative motion to strike.

Accordingly, Carnival's next argument is that some of the unenforceability allegations in DeCurtis' answer improperly bolster DeCurtis' inventorship theory because DeCurtis alleges in its answer that Carnival knew Mr. DeCurtis would disclose material prior art to the PTO concerning Assa Abloy's electronic lock system (the "Assa Abloy System"). In Carnival's view, including the Assa Abloy System as part of its alleged motive for excluding Mr. DeCurtis from the list of inventors on its patents improperly expands the scope of DeCurtis' motive allegations.[6]

---

6   Carnival also argues that DeCurtis' inclusion of additional factual detail in its answer concerning Disney-related prior art is improper, even though Carnival

10

Carnival submits that inclusion of the factual allegations in paragraphs 26-37 of DeCurtis' answer is improper for multiple reasons. As such, Carnival argues that those allegations should be stricken and, to the extent that the relevant counterclaims and affirmative defenses rely on those allegations, those counterclaims and defenses should be stricken as well.

First, Carnival argues that DeCurtis' operative complaint limits the motive underlying the inventorship theory to the disclosure of Disney-related prior art. But that view requires an overly restrictive reading of DeCurtis' operative complaint.[7] In any event, Carnival cites no law for the proposition that, at this juncture of our consolidated case, it is substantively improper for the allegations made in support of DeCurtis' counterclaims and affirmative defenses to include slightly more factual detail than what is alleged in DeCurtis' operative complaint. And because this Court already determined that DeCurtis' inventorship theory, which is premised on the idea that Carnival was concerned that Mr. DeCurtis would disclose "something" to the PTO, has been sufficiently alleged, there is no need to revisit the Court's prior Rule 12(b)(6) analysis now that DeCurtis has essentially alleged the scope of potential

---

appears to maintain that DeCurtis' inventorship theory should be limited to Mr. DeCurtis' potential disclosure of Disney-related prior art.

[7] For example, DeCurtis' operative complaint alleges that "Carnival and its agents omitted David DeCurtis from each of the Carnival Patents with the similar motive of avoiding the possibility that DeCurtis would identify certain material prior art that would impact the prosecution of the entire Carnival Patent family." [D.E. 87, ¶ 71]. This allegation is clearly not limited to Disney-related prior art, and Carnival cannot now pretend that it is surprised to learn that the Assa Abloy System falls within the scope of this allegation because that specific prior art is discussed repeatedly in DeCurtis' operative complaint and is expressly referenced in DeCurtis' unenforceability contentions.

11

disclosures with greater specificity. [D.E. 128 at 36, n. 9]. Accordingly, the Court rejects this argument and declines to strike any allegation, defense, or counterclaim on this basis.

Second, Carnival argues that including the Assa Abloy System among the prior art that underlies DeCurtis' inventorship theory is substantively improper because it is inconsistent with the unenforceability contentions that DeCurtis served on Carnival during discovery. That, however, is an overstatement of the record. To support its argument, Carnival attached a five-page excerpt of DeCurtis' unenforceability contentions as Exhibit A to the Motion. [D.E. 160-1]. Putting aside the fact that this excerpt is cherry picked from a document that is 280 pages long in its unredacted form, [D.E. 220-11], Carnival's excerpt indicates that the scope of Mr. DeCurtis' potential disclosure to the PTO included both "his prior work on guest engagement systems, including at Disney," and the prior art discussed in "Section III.A" of DeCurtis' unenforceability contentions [D.E. 160-1 at 4]. Notably, Section III.A of DeCurtis' unenforceability contentions discusses the Assa Abloy System in remarkable detail. [D.E. 220-11 at 207-29]. But Carnival neglected to address that aspect of DeCurtis' unenforceability contentions (or even attach it for the Court's review) and instead chose to represent that "DeCurtis' operative unenforceability contentions only rely on the Disney prior art as motive for not naming Mr. DeCurtis as an inventor." [D.E. 162 at 8]. This contention is not well taken, and so the Court rejects this argument and declines to strike any allegation, defense, or counterclaim on this basis.

Third, Carnival argues that the relevant affirmative defenses should be stricken insofar as they rely upon factual allegations in paragraphs 26-37 that were previously dismissed with prejudice. But the Order granting Carnival's original motion to dismiss, [D.E. 94], did not operate to dismiss/strike the factual *allegations* in DeCurtis' operative complaint; rather it dismissed the legal *theories* underlying certain claims for relief. *See, e.g., Limone v. United States*, 271 F. Supp. 2d 345, 364 (D. Mass. 2003) (holding that Rule 12(b) motions operate to dismiss claims rather than facts); *cf. Goldin v. Boce Grp., L.C.*, 773 F. Supp. 2d 1376, 1378 (S.D. Fla. 2011) (noting that a motion to dismiss tests whether a complaint alleges both "a cognizable legal theory and sufficient facts to support it."). Accordingly, the factual allegations relating to DeCurtis' prior-art theory of unenforceability survived Carnival's motion to dismiss, and DeCurtis is merely precluded from relying on those facts to support its prior-art theory because that theory has been dismissed with prejudice. But to reiterate, the inventorship theory has not been dismissed. Thus, the inclusion of factual allegations that support the inventorship theory – i.e., the allegations made in paragraphs 26-37 of DeCurtis' answer – is entirely appropriate. The Court, therefore, rejects this argument and declines to strike any allegations or affirmative defenses on this basis.

And so, in summary, Carnival's motion to dismiss (or alternatively strike) DeCurtis' counterclaims as substantively improper should be **DENIED**. Therefore, Carnival should have the opportunity to answer DeCurtis' counterclaims and the case should proceed on these finalized pleadings.

### III. CONCLUSION

For the foregoing reasons, Carnival's motion to dismiss (or alternatively strike) DeCurtis' counterclaims, affirmative defenses, and the factual allegations in support thereof should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of February, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge