# Exhibit 35

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Exhibit
0001**

2/3/2022
DeCurtis

**CASE NO. 1:20-CIV-22945-SCOLA-TORRES**

|  |  |
|---|---|
| DECURTIS LLC, | |
| Plaintiff, | |
| v. | |
| CARNIVAL CORPORATION, | |
| Defendant. | |
| CARNIVAL CORPORATION, | |
| Plaintiff, | |
| v. | |
| DECURTIS CORPORATION and DECURTIS LLC, | |
| Defendants. | |

**CARNIVAL CORPORATION'S FIRST NOTICE OF 30(B)(6) DEPOSITION
TO DEFENDANT DECURTIS LLC**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, beginning on October 4, 2021 at 9:00 a.m. in person at the offices of GrayRobinson, P.A., 333 S.E. 2nd Avenue, Suite 3200, Miami, Florida 33131 (or on another date and at another place mutually agreed to by the parties) and continuing from day to day until completed, Carnival Corporation, by and through its counsel, will take the deposition(s) of DeCurtis LLC as to the subjects listed in Attachment A. The deposition will be taken before a qualified certified shorthand reported authorized by law to administer oaths and will be recorded by stenographic means and videotape.

Pursuant to Rule 30(b)(6), DeCurtis LLC shall designate one or more qualified and knowledgeable officers, directors, managing agents, or other persons to testify on its behalf regarding each of the matters listed in Attachment A. No later than five business days prior to the deposition, DeCurtis LLC is requested to set forth in writing and transmit to counsel listed below the identity of each witness who will testify on behalf of DeCurtis LLC concerning the matters set forth in Attachment A and to further identify the specific matters in the notice about which that witness will testify.

Dated:  September 3, 2021

**GRAYROBINSON, P.A.**
333 S.E. 2nd Avenue, Suite 3200
Miami, FL  33131
Phone: (305) 416-6880
Facsimile: (305) 416-6887

By: */s/ T. Vann Pearce, Jr.*
  Jorge Espinosa
  Fla. Bar No.  779032
  jorge.espinosa@gray-robinson.com
  Robert R. Jimenez
  Fla. Bar. No. 72020
  robert.jimenez@gray-robinson.com

  Diana Marie Fassbender
  Florida Bar No. 0017095
  dszego@orrick.com
  Steven J. Routh (*pro hac vice*)
  T. Vann Pearce, Jr. (*pro hac vice*)
  **ORRICK, HERRINGTON & SUTCLIFFE LLP**
  Columbia Center, 1152 15th Street, N.W.
  Washington, D.C. 20005-1706
  Tel:  (202) 339-8533

  Robert L. Uriarte (*pro hac vice*)
  **ORRICK, HERRINGTON & SUTCLIFFE LLP**
  1000 Marsh Road
  Menlo Park, CA 94025
  Tel: (650) 289-7105

  Attorneys for Plaintiff,
  CARNIVAL CORPORATION

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY the foregoing was served via e-mail on September 3, 2021 on all counsel of record at the service list below:

Scott L. Watson (Pro Hac Vice)
Justin C. Griffin (Pro Hac Vice)
Patrick T. Schmidt (Pro Hac Vice)
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Email: scottwatson@quinnemanuel.com
justingriffin@quinnemanuel.com
patrickschmidt@quinnemanuel.com

David C. Gustman (Pro Hac Vice)
Jeffery M. Cross (Pro Hac Vice)
Jill C. Anderson (Pro Hac Vice)
Jennifer L. Fitzgerald (Pro Hac Vice)
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 360-6000
Email: dgustman@freeborn.com
jcross@freeborn.com
janderson@freeborn.com
jfitzgerald@freeborn.com

Jason P. Stearns (FBN 059550)
Freeborn & Peters LLP
201 N. Franklin Street
Tampa, FL 33602
Telephone: (813) 488-2920
Email: jstearns@freeborn.com

*Attorneys for Defendant DeCurtis LLC*

Dated: September 3, 2021

By:   */s/ Anna Z. Saber*
            Anna Z. Saber

**ATTACHMENT A**

**DEFINITIONS AND INSTRUCTIONS**

1.      The terms "**You**," "**Your**," "**Yours**," and "**DeCurtis**" as used herein means DeCurtis Corporation and DeCurtis LLC, individually or collectively, and any of their past or present officers, directors, employees, counsel, agents, representatives, or other persons under its control, any predecessor or successor whether incorporated or not, any division, subsidiary, affiliate, or parent company thereof, and those persons in active concert or participation or in privity with it or them.

2.      The term "**the Litigation**" means *DeCurtis LLC v. Carnival Corporation*, Case No. 1:20-cv-22945-RNS (S.D. Fla.) and *Carnival Corporation v. DeCurtis Corporation et al.*, No. 1:20-cv-21547-RNS (S.D. Fla.).

3.      "**Carnival**" as used herein means Carnival Corporation and its past or present officers, directors, employees, counsel, agents, representatives, or other persons under its control, any predecessor or successor whether incorporated or not, and any division, subsidiary, affiliate, or parent company thereof.

4.      "**Asserted Patents**" means U.S. Patent Nos. 10,045,184; 10,049,516; and 10,157,514.

5.      The terms "**DXP**" or "**DXP system**" refer to any systems and/or products identified, named, marketed, or sold by DeCurtis as the "DXP System" or "DXP" or "DeCurtis Experience Platform," and associated technology and services.  For example, the DXP "is an end-to-end, enterprise grade software solution for cruise lines that enables location and proximity-based services to assist in operational efficiency, experience enhancement and

3

customer engagement." *DeCurtis LLC v. Carnival Corporation*, Case No. 1:20-cv-22945-RNS, D.E. 87, ¶ 37 (S.D. Fla. Oct. 21, 2020).  The DXP "covers, among other things, activity and voyage reservations, free-flow embarkation and disembarkation modules, e-mustering, food and beverage reservations and ordering, table management, way finding, cabin/housekeeping notifications, and safety solutions." *Id.* The term "DXP" includes the DXP system and services as marketed to, sold to, and implemented by and for NCL and Virgin Voyages, but also includes the DXP system and services as marketed to, sold to, and implemented by and for DeCurtis's actual or potential customers. *See* June 17, 2021 Order on Motion to Compel (Dkt. 163) at 18-19. The DXP specifically includes, but is not limited to, DeCurtis products and systems marketed, described, or identified by DeCurtis as utilizing a Bluetooth Low Energy (or "BLE") beacon in the form of a wearable device.

6.      The term "**Guest Engagement Systems**" as used herein means "systems and methods for providing guests with seamless engagement with the facilities of cruise ships through the use of wireless sensing technologies." *DeCurtis LLC v. Carnival Corporation*, Case No. 1:20-cv-22945-RNS, D.E. 87, ¶ 122 (S.D. Fla. Oct. 21, 2020).

7.      The term **"MSA"** refers to the Master Services Agreement entered into between Carnival Corporation and DeCurtis Corporation, dated July 24, 2014.

8.      The term **"Statements of Work"** refers to Statements of Work issued under the MSA.

9.      The term "**OCEAN® Platform**" refers to the One Cruise Experience Access Network® and its components, including the OceanMedallion or Medallion wearable device.

4

10.     The term "**Project Trident**" refers to the project at Carnival for developing a guest engagement system involving wearable technology.

11.     The terms "**Norwegian Cruise Lines**" and "**NCL**" refer to Norwegian Cruise Line Holdings Ltd. and its past or present officers, directors, employees, counsel, agents, representatives, or other persons under its control, any predecessor or successor whether incorporated or not, and any division, subsidiary, affiliate, or parent company thereof.

12.     The terms "**Virgin**" and "**Virgin Voyages**" refer to Virgin Cruises Intermediate Limited and its past or present officers, directors, employees, counsel, agents, representatives, or other persons under its control, any predecessor or successor whether incorporated or not, and any division, subsidiary, affiliate, or parent company thereof.

13.     The term "**person**" means any individual, group, or entity.  The acts of a person shall include the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the person's behalf.

14.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

15.     The use of the singular form of any word includes the plural and vice versa.

16.     The phrases "regarding" or "relating to" include, but are not limited to, the following meanings: bearing upon, concerning, constituting, discussing, describing, evidencing, identifying, in connection with, pertaining to, respecting, referring to, responding to, or in any way logically or factually relevant to the matter described in the request.

17.     "Each" includes and encompasses "all," "any," and "every." The singular form of any word includes the plural and vice-versa. The use of the present tense includes the past tense

5

and vice-versa. The words "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to render each request as broad as possible and to render your responses fully responsive, comprehensible and not misleading.

18.     "Including," as well as variations thereof such as "include" and "includes," means including but not limited to. If you find the meaning of any term in these topics to be unclear, you should assume a reasonable meaning, state what that assumed meaning is and respond to the request on the basis of that assumed meaning, subject to Carnival's right to clarify the meaning in the same or a different manner.

19.     Pursuant to Federal Rule of Civil Procedure 30(b)(6), DeCurtis shall designate one or more qualified and knowledgeable officers, directors, managing agents or other persons to testify on its behalf regarding each of the subject matters listed below. If you object to any subpart or portion of a topic, state your objection(s) and designate a qualified and knowledgeable witness responsive to the subpart(s) or portion(s) to which you do not object.

## <u>DEPOSITION TOPICS</u>

**<u>DEPOSITION TOPIC 1</u>**:

Actual and proposed agreements between DeCurtis and Carnival Corporation, including, but not limited to, the MSA and any Statements of Works signed by the parties, and any draft or proposed Statements of Work.

**<u>DEPOSITION TOPIC 2</u>**:

DeCurtis's compliance with its confidentiality obligations under the MSA and Statements of Work, including but not limited to: DeCurtis's response to Carnival's audit demand; whether and how DeCurtis decided to retain, return to Carnival, destroy, or otherwise handle Carnival documents or information that is or was in DeCurtis's possession; DeCurtis's efforts (if any) to

track access to Carnival documents or information; and how DeCurtis can identify within its own file storage systems Carnival documents and information.

**DEPOSITION TOPIC 3**:

DeCurtis's compliance with its obligations under Section 6.11 of the MSA.

**DEPOSITION TOPIC 4**:

The products, services, prototypes, code, or other work product DeCurtis created for or provided to Carnival under the MSA, including but not limited to under each individual Statement of Work.

**DEPOSITION TOPIC 5**:

DeCurtis's efforts to remove references to Carnival (including, but not limited to, "OCEAN," "Carnival," "CSP," "Carnival Lab," "EIC," "XIC," "Medallion," "SeaCoin") from documents, code, and prototypes in connection with its development and marketing of products and services for other actual or prospective customers.

**DEPOSITION TOPIC 6**:

DeCurtis's use or re-use of products, services, prototypes, code, or other work product DeCurtis created for or provided to Carnival under the MSA and Statements of Work (including, but not limited to, products, services, prototypes, code, or other work product identified by the names "OCEAN," "Carnival," "CSP," "Carnival Lab," "EIC," "XIC," "Medallion," "SeaCoin") in its development and marketing of prototypes, products, and services for other actual or prospective customers.

**DEPOSITION TOPIC 7**:

Information, documents, and code DeCurtis had access to through its work on Project Trident, including information, documents, and code originating from Carnival employees or from other contractors on Project Trident.

**DEPOSITION TOPIC 8**:

DeCurtis's use of or reference to information, documents, and code DeCurtis had access to through its work on Project Trident in its development and marketing of products and services for other actual or prospective customers.

**DEPOSITION TOPIC 9**:

DeCurtis's dissemination to third parties of information, documents, and code DeCurtis had access to through its work on Project Trident, or of products, services, prototypes, code, or other work product DeCurtis created for or provided to Carnival under the MSA and Statements of Work.

**DEPOSITION TOPIC 10**:

DeCurtis's relationship with Level 11, including contracts between DeCurtis and Level 11, DeCurtis's access to and use of Level 11 documents and code in connection with development of the DXP system, communications between DeCurtis and Level 11, and DeCurtis's understanding of the source and ownership of code, documents, and other work product Level 11 provided to DeCurtis.

**DEPOSITION TOPIC 11**:

The identification of Carnival or use of any of Carnival's names, marks, codes, drawings, specifications, or other references to Carnival in any of DeCurtis's advertising, marketing or promotional activities, and Carnival's prior written consent (if any) for such identification or use.

**DEPOSITION TOPIC 12**:

Amounts owed and paid by Carnival to DeCurtis pursuant to the MSA and Statements of Work.

**DEPOSITION TOPIC 13**:

DeCurtis's marketing of itself as a provider of "experience platforms" and as having developed or created products and systems involving wearable BLE beacon devices, including

the content and factual basis of statements on DeCurtis's website and when DeCurtis began such marketing.

**DEPOSITION TOPIC 14**:

The identities of the persons who were involved, in an engineering capacity or otherwise, in the development of DeCurtis's DXP system, and the roles and responsibilities of those persons.

**DEPOSITION TOPIC 15**:

The identities of the persons who were involved, in an engineering capacity or otherwise, in the development of any confidential information, deliverables, or technology that DeCurtis was hired to develop for Carnival, and the roles and responsibilities of those persons.

**DEPOSITION TOPIC 16**:

DeCurtis's knowledge and understanding of what Carnival considered to be its "Confidential Information," "Deliverables," and "Carnival Information" under the MSA.

**DEPOSITION TOPIC 17**:

Any effort by DeCurtis to determine whether prototypes, documents, devices, or code in its possession were owned or controlled by Carnival under the MSA or Statements of Work.

**DEPOSITION TOPIC 18**:

DeCurtis's relationship with Virgin Voyages relating to the DeCurtis DXP system and Virgin's Guest Engagement System and relating to Virgin Voyages' selection of the "DeCurtis Shield as a core component in its 'Virgin Well' program," as announced in its October 28, 2020 press release.

**DEPOSITION TOPIC 19**:

DeCurtis's relationship with Norwegian Cruise Lines relating to the DeCurtis DXP system and NCL's Guest Engagement System.

**DEPOSITION TOPIC 20**:

9

Amounts owed and paid by Virgin Voyages to DeCurtis, including any failure by Virgin Voyages to timely pay amounts owed to DeCurtis and the reasons for any such failure and communications regarding same.

**DEPOSITION TOPIC 21**:

Amounts owed and paid by NCL to DeCurtis, including any failure by NCL to timely pay amounts owed to DeCurtis and the reasons for any such failure and communications regarding same.

**DEPOSITION TOPIC 22**:

DeCurtis's failure to perform its obligations and responsibilities under any agreement with Virgin Voyages, defects or failures in DeCurtis's work for Virgin Voyages, and complaints by Virgin Voyages regarding DeCurtis or its work.

**DEPOSITION TOPIC 23**:

DeCurtis's failure to perform its obligations and responsibilities under any agreement with NCL, defects or failures in DeCurtis's work for NCL, and complaints by NCL regarding DeCurtis or its work.

**DEPOSITION TOPIC 24**:

Actual or threatened claims by DeCurtis against NCL (or by NCL against DeCurtis) for breach of contract or other legal action, and communications and internal documents about the same.

**DEPOSITION TOPIC 25**:

Actual or threatened claims by DeCurtis against Virgin (or by Virgin against DeCurtis) for breach of contract or other legal action, and communications and internal documents about the same.

**DEPOSITION TOPIC 26**:

10

DeCurtis's indemnification of Virgin Voyages, including the amounts (if any) paid by DeCurtis pursuant to indemnity obligations.

**DEPOSITION TOPIC 27**:

The impact of the SARS-CoV-2 pandemic on the business of DeCurtis, the business of DeCurtis's customers, the cruise industry, and other markets in which DeCurtis sells or markets the DXP system and its components.

**DEPOSITION TOPIC 28**:

Any other business relationship of DeCurtis which DeCurtis alleges that Carnival has interfered with, the basis for DeCurtis's allegations, and any evidence of the alleged damages sustained by DeCurtis.

**DEPOSITION TOPIC 29**:

The timing and circumstances surrounding DeCurtis's departure from Project Trident, including DeCurtis's allegations that its "proposed projects were rejected" and the allegations set forth in Paragraphs 32-35 of DeCurtis's First Amended Complaint.

**DEPOSITION TOPIC 30**:

The purported contributions of anyone, including David DeCurtis, to the inventions claimed in the Asserted Patents.

**DEPOSITION TOPIC 31**:

Inventions developed during Project Trident, including documents or communications (including communications by David DeCurtis) concerning: the novelty, inventiveness, or patentability of those inventions; the inventorship of those inventions; the differences between the inventions and prior art (including alleged prior art products or systems of Disney or Assa Abloy); and efforts by DeCurtis to identify any alleged prior art to anyone at Carnival.

**DEPOSITION TOPIC 32**:

DeCurtis's knowledge, during the time DeCurtis was involved with Project Trident, of the structure, function, and operation of alleged Disney and Assa Abloy prior art systems.

**DEPOSITION TOPIC 33**:

David DeCurtis's alleged contributions to the inventions claimed in any Disney patents or patent applications or to any Disney products or services (including the MagicBand, Be Our Guest, and CDA), and any documentary evidence of the foregoing.

**DEPOSITION TOPIC 34**:

Whether DeCurtis or its employees believed that DeCurtis employees (including David DeCurtis) should have been, but were not, named as inventors on any Disney patents or patent applications, and if so, the basis for any such belief and communications with Disney representatives or employees regarding the same.

**DEPOSITION TOPIC 35**:

DeCurtis's knowledge or awareness of the Asserted Patents and efforts to design around the Asserted Patents.

**DEPOSITION TOPIC 36**:

The supply chain for the DXP and its components (such as wearable devices), including the identity of suppliers, manufacturers, assemblers, importers, and exporters; the locations where components are manufactured, stored, assembled, and sent; how wearable devices are distributed to end users; and DeCurtis's knowledge of where components are sent and how they are used by DeCurtis's customers or by end users.

**DEPOSITION TOPIC 37**:

Analysis of the Asserted Patents, whether by DeCurtis or any third party, including any analysis of infringement or non-infringement, validity or invalidity, enforceability or unenforceability, or the meaning or scope of the patents.

**DEPOSITION TOPIC 38**:

Comparisons between the DXP system or its components (including the DXP system as implemented for Virgin Voyages, NCL, or other customers), and the OCEAN® Platform or its components, whether prepared by DeCurtis or by third parties.

**DEPOSITION TOPIC 39**:

Non-infringing alternatives to any inventions claimed in any of the Asserted Patents, including the costs and amount of time to develop any such non-infringing alternatives.

**DEPOSITION TOPIC 40**:

Testing, use, or demonstrations of the DXP system, including the location and dates; the persons involved in and witnessing the testing, use, or demonstration; the aspects and functionalities of the DXP system that were tested, used, or demonstrated; and the results of the testing, use, or demonstration.

**DEPOSITION TOPIC 41**:

The identity and location of any facilities, locations, or cruise ships on which the DXP system or its components are installed or are planned to be installed.

**DEPOSITION TOPIC 42**:

DeCurtis's knowledge of, and involvement in, the selection, design, development, installation, structure, function, and operation of door locks, door lock assemblies, and components thereof to be used in or with the DXP system (including but not limited to its implementations for NCL and Virgin Voyages).

**DEPOSITION TOPIC 43**:

DeCurtis's relationship with Assa Abloy.

**DEPOSITION TOPIC 44**:

The structure, design, function, and operation of the DXP system and its components, including but not limited to wearable devices including or using Bluetooth Low Energy and/or

13

near field communication technologies, sensors or sensor networks including or using Bluetooth Low Energy and/or near field communication technologies, and location services.

**DEPOSITION TOPIC 45**:

The development of DeCurtis's DXP system and its components.

**DEPOSITION TOPIC 46**:

Differences between different versions or implementations of the DXP system, including versions tested by DeCurtis and versions demonstrated for, designed for, or implemented for different actual or prospective customers, and the reasons for changes between different versions or implementations.

**DEPOSITION TOPIC 47**:

The identity and contributions of any Third-Party developers, manufacturers, or suppliers of DeCurtis's DXP system, including its components.

**DEPOSITION TOPIC 48**:

The origin, operation, and development of source code for the DXP system, including the source code produced for inspection by DeCurtis in this Litigation.

**DEPOSITION TOPIC 49**:

DeCurtis's alleged injuries in business as a result of the allegedly anticompetitive and tortious acts DeCurtis claims Carnival undertook in DeCurtis's Complaint.

**DEPOSITION TOPIC 50**:

DeCurtis's efforts to market and sell the DXP and/or Guest Engagement Systems to customers other than cruise lines, including the identities of customers and potential customers.

**DEPOSITION TOPIC 51**:

DeCurtis's understanding of the competitive landscape for cruise line travel as it relates to Guest Engagement Systems.

**DEPOSITION TOPIC 52**:

Analyses of the markets for the DXP and/or Guest Engagement Systems outside of the cruise industry, including DeCurtis's statements and representations to third parties regarding those markets.

**DEPOSITION TOPIC 53**:

The identity of any third parties with a financial stake in the outcome of this litigation, including any insurance policies referenced in DeCurtis's Rule 26 disclosures, and the nature and amount of the financial stake.

**DEPOSITION TOPIC 54**:

DeCurtis's sources of income, revenue, and funding.

**DEPOSITION TOPIC 55**:

DeCurtis's revenues, expenses, profits, losses, and financial statements from 2014 to present, including the income, revenue, and profit that DeCurtis has made from providing Guest Engagement Systems, including the DXP system, to Norwegian Cruise Lines, Virgin Voyages, or any other DeCurtis customer.

**DEPOSITION TOPIC 56**:

Investments by Shamrock Capital in DeCurtis, and communications and analyses related to investments by Shamrock Capital in DeCurtis.

**DEPOSITION TOPIC 57**:

The relationship between DeCurtis Corporation and DeCurtis LLC.

**DEPOSITION TOPIC 58**:

DeCurtis's plans, forecasts, or projections for revenues, expenses, and profits from the sale or licensing of the DXP system or its components.

**DEPOSITION TOPIC 59**:

Communications DeCurtis has had with third parties regarding this litigation, the Asserted Patents, and the subject matter of "Project Trident," Carnival's OCEAN Platform® or OceanMedallion™ devices, or DeCurtis's involvement in developing Guest Engagement Systems or prototypes for Carnival.

**DEPOSITION TOPIC 60**:

DeCurtis's responses to any interrogatories Carnival has served in this case.

**DEPOSITION TOPIC 61**:

DeCurtis's responses to any requests for production Carnival has served in this case.

**DEPOSITION TOPIC 62**:

Information known or reasonably available to DeCurtis regarding DeCurtis's procedures, policies, and methods for organizing, filing, storing, maintaining, retaining, archiving, and destroying documents, including but not limited to source code, and the identification of the types of documents (e.g. databases, design files, presentations, source code, etc.), the format (e.g., paper or electronic, and if electronic the file format), location (e.g., shared drives, cloud storage, local hard drives, document management systems, etc.) accessibility, and searchability concerning any of the following:

(a)     The purported contributions of anyone, including David DeCurtis, to the inventions claimed in the Asserted Patents;

(b)     The DXP, including but not limited to testing, analysis, study, or evaluation of its functionality;

(c)     Communications including but not limited to Communications with third parties concerning the Asserted Patents or Carnival or the DXP; and

(d)     DeCurtis's claims or defenses relevant to this Litigation.

**DEPOSITION TOPIC 63**:

Information known or reasonably available to DeCurtis regarding DeCurtis's efforts to locate, collect, organize, and produce documents in response to any discovery request in this Litigation, and the authenticity of any documents produced by DeCurtis in this Litigation.