# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| **CARNIVAL CORPORATION**, a Panamanian corporation, Plaintiff, v. **DECURTIS LLC,** a Delaware limited liability corporation, and **DECURTIS CORPORATION**, a Florida corporation, Defendants. | ) ) ) ) ) ) ) No. 1:20-cv-22945-RNS ) ) ) ) ) ) ) ) |

## DECURTIS'S SEPARATE STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(a), DeCurtis, LLC and DeCurtis Corporation (collectively "DeCurtis") hereby provide this separate Statement of Material Facts ("Separate Statement") in support of their Motion for Summary Judgment ("MSJ"). This Separate Statement lists the material facts related to the MSJ that DeCurtis contends are not genuinely disputed.

I. **Material Facts in Support of Section I of DeCurtis's Motion for Summary Judgment.**

1. Carnival accuses DeCurtis of infringing claims 1-3, 7-8, and 11-15 of U.S. Patent 10,045,184 (the "'184 patent"); claims 13, 15, and 18 of U.S. Patent 10,049,516 (the "'516 patent"); and claim 11 of U.S. Patent 10,157,514 (the "'514 patent") (together "the Asserted Claims"). (Ex. D[1] (Amended Infringement Contentions at 4)).

2. All Asserted Claims of the '184 patent require a "sensor network" comprising sensors that are operative to detect signals from portable guest devices using BLE (Bluetooth low energy) communications. (Ex. A ('184 patent), claims 1-3, 7-8, & 11-15)).

3. Claim 15 of the '516 patent requires an "access panel" that "communicates via the first transceiver using a Bluetooth Low Energy (BLE) communication standard with the user device." (Ex. B ('516 patent) claim 15).

4. Claims 1-3 of the '184 patent require a "plurality of access panels," each comprising "a radio configured for wireless communication with a door lock communication module." (Ex. A ('184 patent) claims 1-3)).

5. Claims 13, 15, and 18, of the '516 patent require "an access panel separate from and fixedly mounted proximate to the door lock communication module" and "including a radio configured for wireless communication with the door lock communication module." (Ex. B ('516 patent) claims 13, 15 & 18).

6. A person of ordinary skill in the art understands that the "radio" term in the Asserted Claims excludes a transmitter or receiver for communicating using infrared links. (Ex. Q (10/22/21 de la Iglesia Dep.) at 80:21-81:2 ("█████████████████████████████████████████████████████████████████████████████████████████████████")

---

[1] Unless otherwise stated herein, references to "Ex. __" refer to the Declaration of Patrick T. Schmidt in Support of DeCurtis LLC's and DeCurtis Corporation's Motion for Summary Judgment, ECF ___.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); Ex. R (de la Iglesia Reb. Report) ¶ 396 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.").

7. Carnival offered no record evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See generally* Ex. E (de la Iglesia Op Rep)); Ex. AC (Shoemake Op. Report) ¶ 97.

8. DeCurtis does not design, manufacture, sell, import, or offer for sale electronically controlled door locks or door access panels. (Ex. AD (DeCurtis_00002177);  Ex. AE (NCL-008160); Ex. H (Declaration of Andrew P. Schwalb, hereafter "Schwalb Decl.") ¶ 9).

9. Virgin Voyages ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶ 5).

10. Virgin engaged DeCurtis to offer, design, and implement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶ 6).

11. Virgin engaged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶ 10).

12. Virgin made the decision to purchase its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶ 4).

13. The guest location technology that Virgin requested DeCurtis to design and provide was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. H (Schwalb Decl.) ¶¶ 8-9).

14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, DeCurtis provided no other hardware for Virgin. (Ex. H (Schwalb Decl.) ¶¶ 8-9).

15. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████ (Ex. H (Schwalb Decl.) ¶ 11).

16. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████. (Ex. H (Schwalb Decl.) ¶ 12; Ex. O (December 12, 2021 deposition transcript of Assa Abloy corporate representative Jon Engebretsen, hereafter "Engebretsen Dep.") 150:19-151:10; 279:11-280:6).

17. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████. (Ex. H (Schwalb Decl.) ¶ 12; Ex. O (Engebretsen Dep.) at 148:25-150:17, 152:3-162:7; 168:4-169:17. 279:11-280:6; 269:9-13 ("████████████████████████████████████████████
████████████████████████████████████████████"); 269:22-270:12).

18. ████████████████████████████████████████████████████████████
██████████████████████████████████████████████████. (Ex. H (Schwalb Decl.) ¶ 13).

19. *The Scarlet Lady* sailed a test trip across the Atlantic Ocean in February 2020 with ████████████████████████████. Due to the COVID-19 pandemic, no further installations were performed and no further use of these door panels took place between February 2020 and at least October 2020. (Ex. H (Schwalb Decl.) ¶ 13).

20. Virgin and Assa Abloy discussed the possibility of ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████. (Ex. H (Schwalb Decl.) ¶ 14).

21. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████. (Ex. H (Schwalb Decl.) ¶ 14).

3

22. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶¶ 14, 18-19; Ex. O (Engebretsen Dep.) 150:19-151:10; 279:11-280:6).

23. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶¶ 12, 14-15).

24. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶¶ 12, 14-15, 18).

25. In October of 2020, shortly before the deadline to amend the pleadings in this litigation, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. S (CARNIVAL00374690) at -720 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)).

26. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. T (CARNIVAL00124827) at § 2.1 (Carnival-Virgin Agreement to Avoid Intellectual Property and Related Disputes)).

27. Carnival does not believe that Virgin has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. U (Padgett Dep. Vol. 2) at 202:15-20).

28. Virgin directed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶ 16).

29. Virgin's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶ 16; Ex. W (DeCurtis_00726714)).

30. Virgin's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶ 16).

5973256v1/32949-0005

31. Further ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. H (Schwalb Decl.) ¶ 17).

32. Claim 11 of the '514 patent requires a portable wireless device that comprises a memory that stores a "private identifier[] unique to the portable device." (Ex. C ('514 patent) claim 11).

33. In distinguishing prior art in opposition to DeCurtis' petition for *inter partes* review of the '514 patent, Carnival emphasized the requirement that the "private identifier" be "unique to the portable wireless device" as opposed, for example, to being merely unique to a user. (Ex. M (Patent Owner Preliminary Response in IPR2021-00783) at 28 ("Equating such information [i.e., a user ID, account number, or a similar unique identifier which can be used to access the user's information] with the claimed private identifier is at best conclusory.")).

34. The Patent Trial and Appeal Board agreed with Carnival that the "private identifier" of claim 11 of the '514 patent must be "unique to the portable wireless device," and on that basis, denied institution of IPR on the '514 patent. (Ex. Y (Decision Denying Institution in IPR2021-00783) at 38).

35. Carnival's expert Mr. de la Iglesia agrees that claim 11 of the '514 patent requires ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. L (de la Iglesia Dep.) at 244:4-6, 12-14; 246:22-24).

36. Carnival and its expert Mr. de la Iglesia accuse DeCurtis of infringing claim 11 of the '514 patent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. E (de la Iglesia Op. Report) at pp. 247-252, ¶¶ 52-64).

37. Assa Abloy's door access panels only provide ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. K (DeCurtis_00807543) at -46).

38. The Assa Abloy ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

████████████████████████████████████████ (Ex. K (DeCurtis_00807543) at -55 (cited by de la Iglesia Op. Report at p. 248, ¶ 56)).

39. Carnival's expert Mr. de la Iglesia ████████████████████████ ██████████████████████████. (Ex. L (de la Iglesia Dep.) at 241:25-242:22 (citing Ex. K (DeCurtis_00807543) indicating that ███████████ █████████████████████████████████████████).

40. DeCurtis expert witness Dr. Jakobsson identified █████████████ ████████████████████████████████████████████████████████ █████████████████████. (Ex. Z (Jakobsson Opening Report) at ¶¶ 252-253).

41. For a prior art Assa Abloy system, Mr. de la Iglesia criticizes ███████ ████████████████████████████████████████████████████████ ████████████████████████████████ (Ex. R (de la Iglesia Reb. Report) ¶ 904).

Carnival did not question Assa Abloy's corporate representative, Jon Engebretsen, regarding the contents of ██████████████████████ in DeCurtis-implemented systems. (Ex. O (Engebretsen Dep.) at 266-315).

II. **Material Facts in Support of Section II of DeCurtis's Motion for Summary Judgment.**

42. DeCurtis is a ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ (Ex. AF (Project Ocean Capital Authorization Request) at 8).

43. Level 11 is a ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ (*Id.*)

44. ████████████████████████████████████████████████████ ████████████████ (Ex. U (Padgett Dep. Vol. 2) at 129:19-20).

45. Carnival engaged DeCurtis to work on Project Trident ████████████ ████████████████████████████████████████████████████████

(Ex. U (Padgett Dep. Vol. 2) at 134:7-21, 184:5-11, 194:1-195:7, 236:24-237:4); (Ex. AG (Carnival-DeCurtis Statement of Work ("SOW") 1)).

46. Carnival engaged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. AH (Carnival-Level 11 MSA dated August 22, 2014)); (Ex. U (Padgett Dep. Vol. 2) at 82:20-23).

47. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. AI (Carnival-DeCurtis July 23, 2014 email exchange marked as Padgett 1/17/22); (Ex. U (Padgett Dep. Vol. 2) at 171:2-7).

48. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. AJ (Carnival-DeCurtis MSA dated July 24, 2014)).

49. All the core vendors ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Compare* Ex. AJ (DeCurtis MSA § 4.4) *with* Ex. AH (▮▮▮▮▮▮▮ § 4.4) and Composite Ex. AK (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).[2]

50. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. L (de la Iglesia Dep.) at 122:12); (Ex. F (Fournier Vol. 1 Dep.) at 136-144).

51. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. U (Padgett Dep. Vol. 2) at 70:18-22).

---

[2] The relevant language is in section 4.5 of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the ▮▮▮▮▮▮▮▮▮▮.

52. After DeCurtis' departure, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. AL (2/26/2016 Carnival-Level 11 Component Purchase and License Agreement)).

53. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.*)

54. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.*)

55. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. U (Padgett Dep. Vol. 2) at 165:15-23; 170:6-22).

56. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. AM (DeCurtis-Level 11 MSA dated April 30, 2018)); (Ex. AQ (Curtis Dep.) at 135:15-19); (Ex. E, (de la Iglesia Op. Report) at ¶ 185).

57. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. AQ (Curtis Dep.) at 117:5-11, 136:14-19, 140:6-16); *see also* (Ex. AM (DeCurtis-Level 11 MSA dated April 30, 2018, subpara. E) (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓)).

58. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. AQ (Curtis Dep.) at 119:9-13, 149:25-150:4).

59. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Ex. AU (Carnival – O8 License)).[3]

60. In February 2020, Carnival sent a letter demanding to inspect documents that would show if DeCurtis had employed Carnival's information for its own use. (Ex. AN (February 20, 2020 letter)).

61. Carnival demanded the audit be "conducted by a computer forensics firm working with Carnival's outside legal counsel at Orrick." (Ex. AN (February 20, 2020 letter) at p. 2).

62. Section 3.4 of Carnival's MSA with DeCurtis provides that DeCurtis will "keep accurate and complete records of all matters relevant to or as required by [the MSA]." (Ex. AJ at § 3.4).

---

[3] Ex. AU is attached to the Declaration of Jason P. Stearns in Support of DeCurtis LLC's and DeCurtis Corporation's Motion for Summary Judgment, ECF _____.

5973256v1/32949-0005

63. The MSA permits Carnival to inspect DeCurtis's books and records "at any reasonable time or times upon prior notice." (*Id.* at § 3.4.)

64. In response to Carnival's February 2020 letter, DeCurtis offered to allow Carnival to inspect documents relating to the work DeCurtis did under the MSA, including any source code to which DeCurtis had reasonable access, records of expenses and receipts, policies and methods used to protect confidential information, and documents relating to statements of work that Carnival had identified. (Ex. AO (March 12, 2020 letter)).

65. Carnival rejected this offer. (Ex. AP (March 13, 2020 e-mail T. Vann Pearce)).

| | |
|---|---|
| Dated: April 25, 2022 | DECURTIS LLC & DECURTIS CORPORATION<br><br>By: __/s/ Jason P. Stearns_____<br>   One of their attorneys |
| David C. Gustman (pro hac vice)<br>Jeffery M. Cross (pro hac vice)<br>Jill C. Anderson (pro hac vice)<br>Jennifer L. Fitzgerald (pro hac vice)<br>Freeborn & Peters LLP<br>311 S. Wacker Drive, Suite 3000<br>Chicago, IL 60606<br>Tel. (312) 360-6000<br><br>Jason Stearns<br>Florida Bar No. 059550<br>Freeborn & Peters LLP<br>201 N. Franklin Street<br>Suite 3550<br>Tampa, FL 33602<br>Tel. (813) 488-2920<br>E-mail:  jstearns@freeborn.com<br><br>*Attorneys for Plaintiff DeCurtis LLC & DeCurtis Corporation* | Scott L. Watson (pro hac vice)<br>Justin C. Griffin (pro hac vice)<br>Patrick T. Schmidt (pro hac vice)<br>Quinn Emanuel Urquhart & Sullivan LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br>Tel. (213) 443-3000 |

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2022, I filed the foregoing DeCurtis's Statement of Material Facts in Support of its Motion for Summary Judgment via CM/ECF which will serve all attorneys of record.

DECURTIS LLC & DECURTIS CORPORATION


By: /s/  Jason P. Stearns
       One of their attorneys