# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CIVIL ACTION NO. 20-22945-CIV-SCOLA/TORRES**

CARNIVAL CORPORATION,

              Plaintiff,

    v.

DECURTIS CORPORATION and
DECURTIS LLC

              Defendants.

DECURTIS LLC,

              Plaintiff,

    v.

CARNIVAL CORPORATION,

              Defendant.

**CARNIVAL CORPORATION'S STATEMENT OF MATERIAL FACTS**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## INDEX OF EXHIBITS

| Ex. No. | Description | ECF No. |
|---|---|---|
| 1 | Masters Services Agreement effective July 24, 2014 (CARNIVAL00000270-284) (*hereinafter* "MSA") | 285-2 |
| 2 | Transcript of Deposition of Derek Fournier dated 01.25.22 (*hereinafter* "Fournier Dep. Vol. 1") | 285-3 |
| 3 | Transcript of Deposition of Derek Fournier dated 01.26.22 (*hereinafter* "Fournier Dep. Vol. 2") | 285-4 |
| 4 | DeCurtis Digital Experience Platform Presentation, April 2017 (DeCurtis_01636569-589) (*hereinafter* "DeCurtis_01636569") | 285-5 |
| 5 | Internal DeCurtis Email Chain dated March 17, 2016 (DeCurtis_01986338-339) (*hereinafter* "DeCurtis_01986338") | 285-6 |
| 6 | Expert Report of Erik de la Iglesia Regarding DeCurtis's Use of Carnival Information and Infringement of U.S. Patent Nos. 10,045,184; 10,049,516; and 10,157,514 dated March 1, 2022 (*hereinafter* "de la Iglesia Report") | 285-7 |
| 7 | Internal DeCurtis Email dated March 25, 2016 (DeCurtis_01471144-145) (*hereinafter* "DeCurtis_01471144") | 285-8 |
| 8 | Internal DeCurtis Email (with attachments) dated June 15, 2016 (DeCurtis_01517794-8065) (*hereinafter* "DeCurtis_01517794") | 285-9 |
| 9 | Internal DeCurtis Email Chain dated July 30, 2015 (DeCurtis_01529526-533) (*hereinafter* "DeCurtis_01529526") | 285-10 |
| 10 | DeCurtis Immersive Experience Presentation (DeCurtis_00685821-836) (*hereinafter* "DeCurtis_00685821") | 285-11 |
| 11 | Internal DeCurtis Email Chain dated June 23, 2017 (DeCurtis_00670679-680) (*hereinafter* "DeCurtis_00670679") | 285-12 |
| 12 | Internal DeCurtis Email Chain dated December 19, 2016 (DeCurtis_00933304) (*hereinafter* "DeCurtis_00933304") | 285-13 |
| 13 | Transcript of Deposition of Matthew Lynde dated April 15, 2022 (*hereinafter* "Lynde Dep.") | 285-14 |

| 14 | Transcript of Deposition of Arnold Donald dated January 31, 2022 (*hereinafter* "Donald Dep.") | 285-15 |
|----|---|---|
| 15 | Transcript of Deposition of Simon Murray dated January 31, 2022 (*hereinafter* "Murray Dep.") | 285-16 |
| 16 | DeCurtis Website (CARNIVAL00756076-077) (*hereinafter* "DeCurtis Website") | 285-17 |
| 17 | Expert Report of Matthew Lynde, Ph.D. dated March 1, 2022 (*hereinafter* "Lynde Report") | 285-18 |
| 18 | DeCurtis Strategy Session Offsite Agenda and DeCurtis Due Diligence Findings dated June 11, 2019 (DeCurtis_01945577-795) (*hereinafter* "DeCurtis_01945577") | 285-19 |
| 19 | DeCurtis Confidential Information Presentation dated November 2018 (DeCurtis_01945863-916) (*hereinafter* "DeCurtis_01945863") | 285-20 |
| 20 | Carnival Project Ocean Discussion Materials Presentation dated June 29, 2020 (CARNIVAL00375784-850) (*hereinafter* "CARNIVAL00375784") | 285-21 |
| 21 | ███████████████████████████████████ | 285-22 |
| 22 | Mary T. Coleman, David W. Meyer & David T. Scheffman, *Economic Analyses of Mergers at the FTC: The Cruise Ships Mergers Investigation*, REVIEW OF INDUSTRIAL ORGANIZATION 23 (2003) | 285-23 |
| 23 | Declaration of Francis Farro, Virgin Voyages, dated March 16, 2022 (*hereinafter* "Farro Declaration") | 285-24 |
| 24 | Princess Cruises Presentation:  PCL Strategic Update Medallion Class/OCEAN dated January 15, 2020 (CARNIVAL00375147-164) (*hereinafter* "CARNIVAL00375147") | 285-25 |
| 25 | Reply Expert Report of Mary Coleman dated March 31, 2022 (*hereinafter* "Coleman Rebuttal Report") | 285-26 |
| 26 | Transcript of Deposition of Mary Coleman dated April 15, 2022 (*hereinafter* "Coleman Dep.") | 285-27 |
| 27 | Letter to Virgin Cruises dated February 4, 2020 (CARNIVAL00124884_001-02) (*hereinafter* "CARNIVAL00124884_001") | 285-28 |

| 28 | Letter to NCL dated January 29, 2020 (CARNIVAL00124886_001-02) (*hereinafter* "CARNIVAL00124886_001") | 285-29 |
|----|---|---|
| 29 | Transcript of Deposition of John Padgett Vol. 2 dated January 18, 2022 (*hereinafter* "Padgett Dep. Vol. 2") | 285-30 |
| 30 | Letter from NCL to DeCurtis dated March 25, 2021 (DeCurtis_01988391-94) (*hereinafter* "DeCurtis_01988391") | 285-31 |
| 31 | Expert Report of Mary Coleman dated March 1, 2022 (*hereinafter* "Coleman Report") | 285-32 |
| 32 | Expert Report of Nicholas Godici dated March 1, 2022 (*hereinafter* "Godici Report") | 285-33 |
| 33 | Transcript of Deposition of Nicholas Godici dated April 12, 2022 (*hereinafter* "Godici Dep.") | 285-34 |
| 34 | Expert Rebuttal Report of Matthew Lynde, Ph.D. dated March 31, 2022 (*hereinafter* "Lynde Rebuttal Report") | 285-35 |
| 35 | Carnival Corporation's First Notice of 30(b)(6) Deposition to Defendant DeCurtis LLC (*hereinafter* "Carnival's 30(b)(6) Notice") | 285-36 |
| 36 | Transcript of Deposition of David DeCurtis dated February 3, 2022 (*hereinafter* "DeCurtis Dep. Vol. 1") | 285-37 |
| 37 | Transcript of Deposition of David DeCurtis dated February 4, 2022 (*hereinafter* "DeCurtis Dep. Vol. 2") | 285-38 |
| 38 | Opening Expert Report of Matthew Shoemake, Ph.D. Regarding Invalidity of U.S. Patent No. 10, 045, 184 and 10,049,516 dated March 1, 2022 (*hereinafter* "Shoemake Report") | 285-39 |
| 39 | Opening Expert Report of Markus Jakobson, Ph.D. Regarding Invalidity of U.S. Patent No. 10,157,514 dated March 1, 2022 (*hereinafter* "Jakobsson Report") | 285-40 |
| 40 | Rebuttal Expert Report of Erik de la Iglesia Regarding Validity of U.S. Patent Nos. 10,045,184; 10,049,516; and 10,157,514 dated March 31, 2022 (*hereinafter* "de la Iglesia Rebuttal Report") | 285-41 |
| 41 | Email Chain dated October 21, 2014 (DeCurtis_00157407-157408) (*hereinafter* "DeCurtis_00157407") | 285-42 |
| 42 | Ideas and Concepts Developed by EIC Project (GlennCurtis-0045-57) (*hereinafter* "Glenn Curtis Memo") | 285-43 |

| 43 | Ideas and Concepts Developed by EIC Project (as produced by DeCurtis) (DeCurtis_01469956-1466008) (*hereinafter* "Glenn Curtis Memo-DeCurtis Production") | 285-44 |
| 44 | Email to John Padgett (with attachments) dated July 14, 2014 (JP_CC_00000175-233) (*hereinafter* "JP_CC_00000175") | 285-45 |
| 45 | Responses of DeCurtis LLC and DeCurtis Corp. to Carnival's Second Set of Interrogatories [Nos. 13-19] dated February 12, 2021 (*hereinafter* DeCurtis Responses to Second Set of Interrogatories") | 285-46 |
| 46 | Virgin-DeCurtis Contract (DeCurtis_02000045-053) (*hereinafter* "Virgin-DeCurtis Contract") | 285-47 |
| 47 | Carnival/Evercore/Accenture Presentation: Project Ocean Due Diligence Deliverable dated October 2020 (CARNIVAL00565245-409) (*hereinafter* "CARNIVAL00565245") | 285-48 |
| 48 | Internal DeCurtis Email Chain dated April 25, 2017 (DeCurtis_00563474-476) (*hereinafter* DeCurtis_00563474") | 285-49 |
| 49 | DeCurtis Corp. Presentation Q3 Board Meeting (DeCurtis_01419567-665) (*hereinafter* "DeCurtis_01419567") | 285-50 |
| 50 | Statement of Work No. 1 between Carnival Corp. and DeCurtis Corp. (CARNIVAL00000265-268) (*hereinafter* "SOW1") | 285-51 |
| 51 | Statement of Work No. 13 between Carnival Corp. and DeCurtis Corp. (CARNIVAL00000313-321) (*hereinafter* "SOW13") | 285-52 |
| 52 | Statement of Work No. 14 between Carnival Corp. and DeCurtis Corp. (CARNIVAL00000322-331) (*hereinafter* "SOW14") | 285-53 |
| 53 | Letter from Freeborn & Peters LLP dated February 24, 2020 (CARNIVAL00015237) (*hereinafter* "Freeborn letter") | 285-54 |
| 54 | Letter from Orrick, Herrington & Sutcliffe LLP dated February 20, 2020 (CARNIVAL00015242-15244) (*hereinafter* "Orrick letter") | 285-55 |
| 55 | Statement of Work No. 2 between Carnival Corp. and DeCurtis Corp. (CARNIVAL00063868-63871) (*hereinafter* "SOW2") | 285-56 |
| 56 | Statement of Work No. 4 between Carnival Corp. and DeCurtis Corp. (CARNIVAL00063872-63874) (*hereinafter* "SOW4") | 285-57 |
| 57 | Statement of Work No. 5 between Carnival Corp. and DeCurtis Corp. (CARNIVAL00063875-63876) (*hereinafter* "SOW5") | 285-58 |

| 58 | Statement of Work No. 6 between Carnival Corp. and DeCurtis Corp. (CARNIVAL00063877-63890) (*hereinafter* "SOW6") | 285-59 |
| 59 | Statement of Work No. 7 between Carnival Corp. and DeCurtis Corp. (CARNIVAL00063891-63893) (*hereinafter* "SOW7") | 285-60 |
| 60 | Statement of Work No. 8 between Carnival Corp. and DeCurtis Corp. (CARNIVAL00063894-63897) (*hereinafter* "SOW8") | 285-61 |
| 61 | Statement of Work No. 3 between Carnival Corp. and DeCurtis Corp. (DeCurtis_00172995-173000) (*hereinafter* "SOW3") | 285-62 |
| 62 | Statement of Work No. 15 between Carnival Corp. and DeCurtis Corp. (DeCurtis_00173252-173275) (*hereinafter* "SOW15") | 285-63 |
| 63 | DeCurtis-Virgin Email Chain dated April 25, 2017 (DeCurtis_00563474-476) (*hereinafter* "DeCurtis_00563474") | 285-64 |
| 64 | Internal DeCurtis Email with attachments dated March 14, 2016 (DeCurtis_00564480-569) (*hereinafter* "DeCurtis_00564480") | 285-65 |
| 65 | DeCurtis Corp. Portfolio Overview dated September 2020 (DeCurtis_01418907-926) (*hereinafter* "DeCurtis_01418907") | 285-66 |
| 66 | DeCurtis Corp. Presentation: Cruise Freedom (DeCurtis_01473563-649) (*hereinafter* "DeCurtis_01473563") | 285-67 |
| 67 | NCL Demo Planning dated February 28, 2017 (DeCurtis_01509732) (*hereinafter* "DeCurtis_01509732") | 285-68 |
| 68 | Statement of Work No. 12 between Carnival Corp. and DeCurtis Corp. (DeCurtis_01531277-281) (*hereinafter* "SOW12") | 285-69 |
| 69 | DeCurtis Corp Presentation: Digital Experience Platform (DeCurtis_01599549-1599560) (*hereinafter* "DXP Slides") | 285-70 |
| 70 | Internal DeCurtis Email Chain dated August 29, 2018 (DeCurtis_01624330-341) (*hereinafter* "DeCurtis_01624330") | 285-71 |
| 71 | Internal DeCurtis Email dated March 6, 2017 (DeCurtis_01639344) (*hereinafter* "DeCurtis_01639344") | 285-72 |
| 72 | Statement of Work No. 9 between Carnival Corp. and DeCurtis Corp. (DeCurtis_01642453-457) (*hereinafter* "SOW9") | 285-73 |
| 73 | Statement of Work No. 10 between Carnival Corp. and DeCurtis Corp. (DeCurtis_01642458-467) (*hereinafter* "SOW10") | 285-74 |

| 74 | Internal DeCurtis Email with attachments dated August 12, 2015 (DeCurtis_01643376-385) (*hereinafter* "DeCurtis_01643376") | 285-75 |
| 75 | DeCurtis Corp. Proposal to Tampa Bay Buccaneers (DeCurtis_01976191-202) (*hereinafter* "DeCurtis_01976191") | 285-76 |
| 76 | Master Project, Software License, Hardware and Support Agreement between DeCurtis Corp. and NCL Corp. effective March 1, 2018 (DeCurtis_01999956-007) (*hereinafter* "NCL Agreement") | 285-77 |
| 77 | Norwegian Cruise/DeCurtis Corp. Presentation: Digital Experience Platform (NCL-019628-643) (*hereinafter* "NCL Presentation") | 285-78 |
| 78 | Transcript of Deposition of Joseph Carino dated February 2, 2022 (*hereinafter* "Carino Dep.") | 285-79 |
| 79 | Internal DeCurtis Email dated November 14, 2018 (DeCurtis_01494346) (*hereinafter* "DeCurtis_01494346") | 285-80 |
| 80 | Transcript of Deposition of John Padgett dated January 17, 2022 (*hereinafter* "Padgett Dep. Vol. 1") | 285-81 |
| 81 | Transcript of Deposition of Erik de la Iglesia dated April 14, 2022 (*hereinafter* "de la Iglesia Dep.") | 285-82 |
| 82 | Transcript of Deposition of Vincent Ball dated January 31, 2022 (*hereinafter* "Ball Dep.") | 285-83 |
| 83 | Transcript of Deposition of Stephen Becker dated December 15, 2021 (*hereinafter* "Becker Dep.") | 285-84 |
| 84 | Transcript of Deposition of Richard Criado dated February 1, 2022 (*hereinafter* "Criado Dep.") | 285-85 |
| 85 | Transcript of Deposition of Douglas Steele Vol. 2 dated January 14, 2022 (*hereinafter* "Steele Dep. Vol. 2") | 285-86 |
| 86 | Transcript of Deposition of Michael Jungen dated January 7, 2022 (*hereinafter* "Jungen Dep.") | 285-87 |
| 87 | Transcript of Deposition of Sander Lam dated November 1, 2021 (*hereinafter* "Lam Dep.") | 285-88 |
| 88 | Transcript of Deposition of Patrick Mendiuk dated January 19, 2022 (*hereinafter* "Mendiuk Dep.") | 285-89 |

| 89 | Transcript of Deposition of Adam Leonards dated January 26, 2022 (*hereinafter* "Leonards Dep.") | 285-90 |
|----|---|---|
| 90 | Transcript of Deposition of Kyle Prestenback dated January 28, 2022 (*hereinafter* "Prestenback Dep.") | 285-91 |
| 91 | Transcript of Deposition of Neil Rippon dated November 16, 2021 (*hereinafter* "Rippon Dep.") | 285-92 |
| 92 | DeCurtis Corp. Presentation: Project Trident dated July 8, 2015 (CARNIVAL00000489-518) (*hereinafter* "CARNIVAL00000489") | 285-93 |
| 93 | Project Trident: Product Requirements Document Guest Medallion dated August 14, 2015 (CARNIVAL00018461) (*hereinafter* "CARNIVAL00018461") | 285-94 |
| 94 | Project Trident: Product Requirements Document Static Reader dated August 15, 2015 (CARNIVAL00018462) (*hereinafter* "CARNIVAL00018462") | 285-95 |
| 95 | Product Trident: Product Requirements Documents Carnival Signature Door Lock dated August 16, 2016 (CARNIVAL 00037290-306) (*hereinafter* "CARNIVAL 00037290") | 285-96 |
| 96 | Email Chain dated August 13, 2015 (CARNIVAL00129846) (*hereinafter* "CARNIVAL00129846") | 285-97 |
| 97 | Internal DeCurtis Email Chain dated August 12, 2015 (DeCurtis_01643365) (*hereinafter* "DeCurtis_01643365") | 285-98 |
| 98 | Internal DeCurtis Email dated April 23, 2014 (DeCurtis_020005673) (*hereinafter* "DeCurtis_020005673") | 285-99 |
| 99 | CLIA Presentation: Cruise Travel Report dated January 2018 (Shamrock_00003393-3436) (*hereinafter* "Shamrock_00003393") | 285-100 |
| 100 | BCG Presentation: Project Deep Sea – Final Report – Commercial dated March 2019 (Shamrock_00005229-5339) (*hereinafter* "Shamrock_00005229") | 285-101 |
| 101 | Non -Infringement, Unenforceability, and Invalidity Contentions of DeCurtis LLC and DeCurtis Corporation, October 29, 2020, at Exhibit 184-16 (Invalidity Claim Chart for U.S. Patent No. 10,045,184 ("the '184 patent") (*hereinafter* "'184 Invalidity Chart (Royal)") | 285-102 |

| 102 | First Amended Non-Infringement, Unenforceability, and Invalidity Contentions of DeCurtis LLC and DeCurtis Corporation, dated March 4, 2021 (*hereinafter* "Am. Invalidity Contentions") | 285-103 |
|-----|-----|-----|
| 103 | Transcript of Deposition of Megha Agrawal dated January 24, 2022 (*hereinafter* "Agrawal Dep.") | 285-104 |
| 104 | Statement of the FTC Concerning Royal Caribbean Cruises and Princess Cruises (*hereinafter* "FTC Statement 1") | 285-105 |
| 105 | FTC Closes Cruise Line Merger Investigations (*hereinafter* "FTC Statement 2") | 285-106 |
| 106 | Internal DeCurtis Email with attachment dated April 25, 2018 (DeCurtis_00321912-917) (*hereinafter* "DeCurtis_00321912") | 285-107 |
| 107 | Internal DeCurtis Email Chain dated March 16, 2048 (DeCurtis_00329968-971) (*hereinafter* "DeCurtis_00329968") | 285-108 |
| 108 | Internal DeCurtis Email Chain dated March 15, 2017 (DeCurtis_00366687-688) (*hereinafter* "DeCurtis_00366687") | 285-109 |
| 109 | Internal DeCurtis Email Chain dated July 28, 2015 (DeCurtis_00367647-651) (*hereinafter* "DeCurtis_00367647") | 285-110 |
| 110 | Internal DeCurtis Email Chain dated February 13, 2017 (DeCurtis_00370216) (*hereinafter* "DeCurtis_00370216") | 285-111 |
| 111 | Internal DeCurtis Email Chain dated February 23, 2017 (DeCurtis_00464905-912) (*hereinafter* "DeCurtis_00464905") | 285-112 |
| 112 | Internal DeCurtis Email Chain dated August 10, 2015 (DeCurtis_00487736-487740) (*hereinafter* "DeCurtis_00487736") | 285-113 |
| 113 | Internal DeCurtis Email Chain dated February 9, 2017 (DeCurtis_00499044) (*hereinafter* "DeCurtis_00499044") | 285-114 |
| 114 | Internal DeCurtis Email dated April 4, 2016 (DeCurtis_00499806) (*hereinafter* "DeCurtis_00499806") | 285-115 |
| 115 | Internal DeCurtis Email Chain dated September 20, 2018 (DeCurtis_00636581-582) (*hereinafter* "DeCurtis_00636581") | 285-116 |
| 116 | Internal DeCurtis Email dated April 18, 2016 (DeCurtis_00673688-699) (*hereinafter* "DeCurtis_00673688") | 285-117 |

| 117 | Internal DeCurtis Email Chain dated July 30, 2015 (DeCurtis_01529526-533) (*hereinafter* "DeCurtis_01529526") | 285-118 |
| 118 | Internal NCL Email Chain dated February 22, 2017 (DeCurtis_01639029-036) (*hereinafter* "DeCurtis_01639029") | 285-119 |
| 119 | Internal DeCurtis Email Chain with attachments dated July 19, 2018 (DeCurtis_01828868-920) (*hereinafter* "DeCurtis_01828868") | 285-120 |
| 120 | Internal DeCurtis Email Chain dated April 20, 2018 (DeCurtis_01948208-210) (*hereinafter* "DeCurtis_01948208") | 285-121 |
| 121 | Internal DeCurtis Email Chain dated July 22, 2016 (DeCurtis_01976203-207) (*hereinafter* "DeCurtis_01976203") | 285-122 |
| 122 | Internal DeCurtis Email dated July 26, 2016 (DeCurtis_01986654-656) (*hereinafter* "DeCurtis_01986654")" | 285-123 |
| 123 | Internal NCL Email dated November 27, 2018 (DeCurtis_01986988) (*hereinafter* "DeCurtis_01986988") | 285-124 |
| 124 | Internal DeCurtis Email Chain dated December 19, 2018 (DeCurtis_02001898 -902) (*hereinafter* "DeCurtis_02001898") | 285-125 |
| 125 | Internal DeCurtis Email dated April 18, 2016 (DeCurtis_02005583-646) (*hereinafter* "DeCurtis_02005583") | 285-126 |
| 126 | Internal DeCurtis Email dated April 12, 2018 (DeCurtis_01633122) (*hereinafter* "DeCurtis_01633122") | 285-127 |
| 127 | Internal DeCurtis Email dated March 6, 2017 (DeCurtis_01639350-352) (*hereinafter* "DeCurtis_01639350") | 285-128 |
| 128 | Deposition of Glenn Curtis dated January 12, 2022 (*hereinafter* "Curtis Dep.") | 285-129 |
| 129 | Deposition of Dr. Matthew Shoemake dated April 11, 2022 (*hereinafter* "Shoemake Dep. Vol. 2) | |
| 130 | Deposition of Apurva Saxena dated January 26, 2022 (*hereinafter* "Saxena Dep.") | |
| 131 | DXP Proposal for NCL (DeCurtis_01670472-480) (*hereinafter* "DeCurtis_01670472") | |
| 132 | March 31, 2022 Rebuttal Expert Report of Markus Jakobson, Ph.D. (*hereinafter* "Jakobsson Reb. Rep.") | |

## Carnival's Local Rule 56.1 Statement of Material Facts

1.  Carnival and DeCurtis entered into a Master Services Agreement on July 24, 2014 ("MSA").  Ex. 1 (MSA).

████████████████████████████████████████████████

████████████████████████████████████████████

3.  Article 4 of the MSA is entitled "Protection of Carnival's Confidential Information," and Section 4.1 provides restrictions on DeCurtis's use and treatment of both Carnival's "Confidential Information" and "Deliverables" prepared for Carnival under the MSA (collectively, "Carnival Information").  Ex. 1 (MSA) at CARNIVAL00000275.

4.  In the MSA, DeCurtis

"agree[d] that during the term of this Agreement and at all times thereafter, (i) [DeCurtis] shall not use any Carnival Information for its own use or for any purpose other than the specific purpose of completing the Services contemplated in the Agreement" and "(ii) [DeCurtis] shall not disclose any Carnival Information to any other person or entity"  Ex. 1 (MSA) at CARNIVAL000002750.

5.  MSA Section 4.4 provides that DeCurtis may not use "the aid of written materials of any type produced in connection herewith" "for the purpose of executing projects for other [DeCurtis] clients." Ex. 1 (MSA) at CARNIVAL00000275 (emphasis added).

6.  MSA Section 6.11 provides: "No identification of Carnival Corporation and plc or use of any of their names, marks, codes, drawings specifications or other references to Carnival Corporation and plc may be used in any of [DeCurtis's] advertising, marketing, or promotional activities without Carnival's prior written consent."  Ex. 1 (MSA) at CARNIVAL00000280.

7.  MSA Section 4.2 provides: "If any action is necessary to enforce this Article 4, the prevailing party shall be entitled to recover its attorneys' fees."  MSA Section 6.9 also provides for the prevailing party to recover costs, including reasonable attorneys' fees, in connection with litigation arising from the MSA. Ex. 1 at CARNIVAL00000276.

████████████████████████████████████████████████

████████████████████████████████████████████

9.  DeCurtis and Carnival entered Statements of Work ("SOW") under the Carnival-DeCurtis MSA, pursuant to which DeCurtis created prototypes and other deliverables for Carnival's "Project Trident."  Exs. 50-52, 55-62, 68, 9-10.

1

10. On February 20, 2020, Carnival provided written notice to DeCurtis stating *inter alia* "this letter serves as written notice pursuant to Section 6.5 of the ['MSA'] that Carnival is exercising its audit right under Section 3.4 of the MSA. Ex. 54.

11. DeCurtis responded to Carnival's February 20, 2020 Notice Letter on February 24, 2020 in a letter that stated *inter alia* "DeCurtis declines the requested audit." Ex. 53.

13. DeCurtis used Carnival's name on its website. Ex. 16 (CARNIVAL00756076-077);

25. DeCurtis's Sherman Act, tortious interference, and unfair competition claims each arise from Carnival's alleged threats of litigation, publicizing its patents, and bringing litigation against DeCurtis. (FAC ¶¶ 121, 162, 170, 178, 185); DeCurtis's Response to Carnival's Motion to Dismiss

First Amended Complaint (D.E. 99) at 15; Ex. 17 (Lynde Report) ¶¶ 100, 55-60; 69-70; Ex. 13 (Lynde Dep.) at 157:6-22.

26.  DeCurtis has pleaded just one theory of fraud on the Patent Office (or "inequitable conduct"): that Carnival fraudulently omitted Mr. DeCurtis as an inventor on Carnival's patents. FAC ¶¶ 44-71, D.E. 128 at 22-28, D.E. 144.  DeCurtis has pleaded just one theory of fraud on the Patent Office (or "inequitable conduct"): that Carnival fraudulently omitted Mr. DeCurtis as an inventor on Carnival's patents.  FAC ¶¶ 44-71, D.E. 128 at 22-28, D.E. 144.

27. DeCurtis deposed every one of the ten living inventors named on the patents plus the lead patent prosecution attorney, and none testified that Mr. DeCurtis should have been an inventor on the patents or that he had been intentionally omitted.  *See, e.g.*, Ex. 85 (Steele Dep. Vol. 2) at 382:7-15; Ex. 90 (Prestenback Dep.) at 149:23-150:10; Ex. 84 (Criado Dep.) at 83:22-25; Ex. 82 (Ball Dep.) at 127:7-10; Ex. 89 (Leonards Dep.) at 130:19-21; Ex. 128 (Curtis Dep.) at 211:25-212:9; Ex. 88 (Mendiuk Dep.) at 52:4-14; Ex. 87 (Lam Dep.) at 78:22-79:3; Ex. 83 (Becker Dep.) at 102:5-13.

28. Mr. Padgett and Mr. Jungen, whom DeCurtis accused of intentionally concealing Mr. DeCurtis's alleged inventorship (FAC (D.E. 87) ¶¶ 64-68), both testified that they believed the patents' inventorship is correct.  Ex. 80 (Padgett Dep. Vol. 1) at 194:5-13; Ex. 29 (Padgett Dep. Vol. 2) at 164:6-165:4, 166:12-14; Ex. 86 (Jungen Dep.) at 173:5-175:18.

29. DeCurtis was just one of many contractors and employees on the project, most of whom were not named as inventors.  *See, e.g.*, Ex. 92 (CARNIVAL00000489); Ex. 96 (CARNIVAL 00129846).  DeCurtis's role was to assist with rapid prototyping, demos, and serve as a system administrator.  *See, e.g.*, Ex. 50 (CARNIVAL00000265); Ex. 92 (CARNIVAL00000489); Ex. 80 (Padgett Dep. Vol. 1) at 165:15-23; 184:1-11; Ex. 29 (Padgett Dep. Vol. 2) at 83:10-84:12.

30. Other employees and contractors were responsible for actually designing and developing the hardware and software.  *See, e.g.*, Ex. 92 (CARNIVAL00000489) at *495-99 ██████████

██████████████████████████████████████████████

31. From the summer of 2014 to the beginning of 2015 was an initial phase focused on securing the program budget, which ended in a demo showcase.  Ex. 29 (Padgett Vol. 2) at 53:20-55:4.

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

33. After Mr. DeCurtis purportedly conceived of "inventions," the project requirements and technical architecture changed significantly.  *See, e.g.*, Ex. 93 (CARNIVAL00018461), Ex. 95 (CARNIVAL00037290), Ex. 94 (CARNIVAL00018462) (technical requirements); Ex. 40 (de la Iglesia Reb. Rep.) ¶¶ 1180-88 (additional evidence).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

35. DeCurtis is not providing any fact witness, including Mr. DeCurtis, to testify about what aspects of Carnival's patent claims were invented by Mr. DeCurtis. ███████████████████

████████████████████████████████████

36. DeCurtis's expert, Dr. Shoemake, ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

37. DeCurtis's expert, Dr. Jakobsson, ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

38. ███████████████████████████████████████████

███████████████████████████████████████

39. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

42. A device that could alternate between "sleep" and "wake" is a different concept than a device that can switch between "beacon" and "bi-directional" modes. Ex. 40 (de la Iglesia Reb. Rep.) ¶¶ 1215-1216.

43. ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Ex. #42, GlennCurtis-0045-57 ("Glenn Curtis Memo") at 0055 (emphasis added) (cited by Ex. #38, Shoemake Rep. at ¶¶ 1285-1286 and Ex. #39, Jakobsson Report at ¶¶ 597-598); Ex. 40, (de la Iglesia Reb. Rep.) ¶ 1220.

44. Dr. Shoemake and Dr. Jakobsson both contend that "mobile devices operating as BLE beacons" were not invented by Carnival and is not a novel improvement over prior art. Ex. #38, Shoemake Report at ¶ 1329; Ex. #39, Jakobsson Report at ¶ 625. Dr. Shoemake and Dr. Jakobsson both contend that "mobile devices operating as BLE beacons" were not invented by Carnival and is not a novel improvement over prior art. Ex. #38, Shoemake Report at ¶ 1329; Ex. #39, Jakobsson Opening Report at ¶ 625.

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

47. Dr. Shoemake identified no Carnival patent claims that recite or require a "modular, coin-like form factor." Ex. #38, Shoemake Rep. at ¶ 1316-1318.

48. A coin-like product was not an original idea by the Carnival EIC team. Ex. #38, Shoemake Rep. at ¶ 1321; Ex. #80, Padgett Dep. Vol. 1 at 167:5-168:12.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

50. The capacitive "proximity sensor" recited in the '516 patent's claims references a sensor that detects the approach of a hand to a door latch and does not require physical contact with a door handle. Ex. #40, de la Iglesia Reb. Rep. at ¶ 1202-1203; Ex. #85, Steele Dep. Vol. 2 at 424:21-436:25, 440:12-25, 427:3-429:12, 429:22- 430:2, 430:3-9, 430:12-15, 433:24-434:17.

51. The door handle concept that Mr. DeCurtis supposedly helped to conceive of requires physical contact with the handle to release the latch, which is a fundamentally different mechanism than the proximity sensor claimed in the '516 patent. Ex. #40, de la Iglesia Reb. Rep. at ¶¶ 1172, 1204; Ex. #85, Steele Dep. Vol. 2 at 425:8-426:13; Ex. #88, Mendiuk Dep. at 49:2-50:1.

52. The door locks described in the ████████████████ are door locks wholly resident on the door, which is an entirely different concept than the door locks later developed by Carnival and claimed in Carnival's patents, including the '516 patent. Ex. #40, de la Iglesia Reb. Rep. at ¶¶ 1171, 1203; Ex. #128, Curtis Dep. at 210:1-22; Ex. #87, Lam Dep. at 112:19-24; Ex. #88, Mendiuk Dep. at 50:2-12; Ex. #29, Padgett Dep. Vol. 2 at 229:2-12; Ex. #86, Jungen Dep. at 95:15-96:22, 203:5-10, 203:12-20; Ex. #85, Steele Dep. Vol. 2 at 429:22-430:15.

53. Carnival's pre-suit communications with NCL and Virgin provided notice of Carnival's intellectual property rights and did not contain statements directed either to litigation or to any business relationships those entities had with DeCurtis. *See* Ex. 27 (CARNIVAL00124884_001-02), Ex. 28 (CARNIVAL00124886_001-02); Ex. 14 (Donald Dep.) at 34:10-19, 35:2-36:11, 50:13-52:5; Ex. 80 (Padgett Dep.) at 180:17-181:20, 182:7-183:4.

███████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████ DeCurtis' damages expert has not opined on any damages resulting from any alleged interference with DeCurtis' relationship with Virgin. Ex. 17 (Lynde Report) at ¶ 107, n.123; Ex 46 ████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████

56. DeCurtis' Complaint does not assert any claim based on a relationship between DeCurtis and any identified businesses or cruise lines other than NCL and Virgin, and it includes no allegations regarding either Royal Caribbean Cruises ("Royal") or MSC Cruises ("MSC").

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████

58. ████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████

8

61. Carnival does not have knowledge of any alleged business relationships between DeCurtis and either Royal or MSC, and DeCurtis has produced no evidence of such knowledge.

62. Carnival has not taken any action, including any communication, directed to Royal or MSC regarding DeCurtis, Carnival patents, or any other issues relating to DeCurtis. Ex. 14 (Donald Dep.) at 42:14-43:2; Ex. 13 (Lynde Dep.) at 155:6-22.

63. Both GES technology systems and cruises are differentiated products. Ex. 13 (Lynde Dep.) at 235:18-22, 236:4-15; Ex. 25 (Coleman Rebuttal Report) at ¶¶ 59-83, 126-39. Both

64. The "vast majority of the major cruise lines" offer different forms of GES technology, █████ ████████████████████████████████ including Royal, Disney, MSC, and Virgin. ████████ █████████████████████████████████████ DeCurtis' technology experts emphasize Disney MagicBand and Royal Caribbean's WOW Band capabilities. Ex. 25 (Coleman Rebuttal Report) at ¶¶36, 40.

65. Carnival developed the OCEAN GES platform, currently on Princess ships and using the wearable Medallion. Ex. 80 (Padgett Dep. Vol. 1) at 21:12-22, 23:3-9, 34:9-10, 61:19-23.

66. Tech companies including DeCurtis, Fidelio, Favendo, TE2, eCruise, Allin Interactive, Level 11, Otalio, Polestar, Cisco, and others also develop GES technology for cruise and other industries. ████████████████████████████████████████████ ██████████████████████████████

67. DeCurtis' GES technology is the "DXP," which includes 16 suites/modules. S*ee* https://www.decurtis.com/decurtis-experience-platform/. █████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████

69. Cruise lines use personal phones, smart watches, and wearables with their GES technology systems. Ex. 25 (Coleman Rebuttal Report ) at ¶¶ 35-40; Ex. 18 ██████████████████████

9



Ex. 25 (Coleman Rebuttal Report ) at ▮▮▮▮

72. OCEAN and Carnival's patented inventions have applicability outside of cruise. *See* Ex. 20 (CARNIVAL00375784-850) at 789, 801, 802; Ex. 47 (CARNIVAL00565245-409) at 253-57; Dkt. 267 at 19.

73. Passengers consider many factors in selecting cruises, with price, destination/itinerary, and timing being most important. ▮▮▮▮▮▮▮▮ Ex. 23 (Farro Decl.) ¶ 4; Ex. 25 (Coleman Rebuttal Report) at ¶¶ 131-39; Ex. 91 (Rippon Dep.) at 217:9-19; Ex. 99 ▮▮▮▮▮▮▮▮ Ex. 24 (CARNIVAL00375147-164) at 163; *see also* Ex. 3 (Fournier Dep. Vol. 2) at 852:17-22; 846:5-15.

74. In 2002, the Federal Trade Commission investigated the proposed: (1) a combination of Royal Caribbean and Princess, and/or (2) Carnival and Princess. Ex. 105 (FTC Closes Cruise Line Merger Investigations (Oct. 4, 2002)). The FTC closed the investigation finding no anticompetitive effects from either transaction. Ex. 104 (FTC Statement). The FTC recognized cruises as differentiated products and defined the relevant product market as oceanic cruising and observed competition with other vacation options. Ex. 22 (Mary T. Coleman, et. al., *Economic Analyses of Mergers at the FTC: The Cruise Ships Mergers Investigation*, REVIEW OF INDUSTRIAL ORGANIZATION 23 (2003)) at 143-44.

Dated:  April 25, 2022                        RESPECTFULLY SUBMITTED,

                                              **GRAYROBINSON, P.A.**
                                              333 S.E. 2nd Avenue, Suite 3200
                                              Miami, FL  33131
                                              Phone:     (305) 416-6880
                                              Facsimile: (305) 416-6887


                                      By: */s/ Diana Marie Fassbender*
                                          Diana Marie Fassbender
                                          Florida Bar No. 0017095
                                          dszego@orrick.com
                                          Steven J. Routh (*pro hac vice*)
                                          T. Vann Pearce, Jr. (*pro hac vice*)
                                          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                          Columbia Center, 1152 15th Street, N.W.
                                          Washington, D.C. 20005-1706
                                          Tel: (202) 339-8500

                                          Robert L. Uriarte (*pro hac vice*)
                                          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                          1000 Marsh Road
                                          Menlo Park, CA 94025
                                          Tel: (650) 289-7105

                                          *Attorneys for CARNIVAL CORPORATION*

11