## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| DECURTIS LLC, | |
| Plaintiff, | Civil Action No. 1:20-22945-Civ-Scola-Torres |
| v. | |
| CARNIVAL CORPORATION, | CONTAINS CONFIDENTIAL INFORMATION IN ACCORDANCE WITH THE PROTECTIVE ORDER |
| Defendant. | |
| CARNIVAL CORPORATION | |
| Plaintiff, | |
| v. | |
| DECURTIS CORPORATION and DECURTIS LLC, | |
| Defendant. | |

## CARNIVAL CORPORATION'S OBJECTIONS TO REPORT & RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

I.   THE R&R FAILS TO MEANINGFULLY ADDRESS OR PROPERLY
     RESOLVE CARNIVAL'S MOTION CHALLENGING THREE DECURTIS
     CLAIMS ON WHICH CARNIVAL IS ENTITLED TO SUMMARY
     JUDGMENT ............................................................................................................ 2

     A.   The R&R Rests on the Erroneous Premise that DeCurtis' "Patent-Related
          Claims" Cannot Be Subject to Summary Judgment Until After All
          Disputes Regarding the Validity of Carnival's Patents Have Been
          Adjudicated ..................................................................................................... 2

     B.   Carnival is Entitled to Summary Judgment Because DeCurtis Has Failed
          to Show Grounds to Overcome *Noerr-Pennington* and the Patent Privilege ........ 4

          1.   DeCurtis Has Failed to Make a Sufficient Showing of Sham
               Litigation to Survive Summary Judgment .................................................... 4

               a.   There is No Genuine Dispute for Trial Over Whether
                    Carnival's Patent Notice Communications Were
                    Objectively Baseless ..................................................................... 4

               b.   There is No Genuine Dispute for Trial Over Whether
                    Carnival's Litigation Claims Are Objectively Baseless ................ 5

               c.   There Is No Evidence of Improper Subjective Motivation............ 6

          2.   DeCurtis Has Failed to Make a Sufficient Showing of Any Bad
               Faith to Overcome the Patent Privilege Doctrine ...................................... 7

          3.   DeCurtis Failed to Make a Sufficient Showing of *Walker Process*
               Fraud ....................................................................................................... 7

     C.   Carnival Further is Entitled to Summary Judgment on DeCurtis' Antitrust
          Claims Because DeCurtis Has Failed to Make a Sufficient Showing that
          Carnival Has Monopoly Power in Any Relevant Market................................... 11

     D.   Carnival Further is Entitled to Summary Judgment Because DeCurtis Has
          Failed to Make a Sufficient Showing to Support its Tortious Interference
          and Unfair Competition Claims....................................................................... 13

II.  RULE 56 REQUIRES DENIAL OF DECURTIS'S MOTION ON THE '514
     PATENT ............................................................................................................... 15

CONCLUSION................................................................................................................. 20

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

## INTRODUCTION

Carnival Corporation ("Carnival") respectfully objects to the Report and Recommendation ("R&R") on the parties' respective Rule 56 motions (D.E. 426). In particular, the R&R errs and *should not be adopted* on: (i) Carnival's motion for summary judgment on DeCurtis' antitrust, unfair competition and tortious interference claims, and (ii) one part of DeCurtis' motion on non-infringement. Indeed, in summarily rejecting Carnival's motion, the R&R fails even to address Carnival's arguments for why summary judgment is warranted on each of the three DeCurtis claims. As a result, the R&R fails to satisfy the fundamental purpose of Rule 56 to dispose *before trial* of all claims on which there is no disputed issue of fact on one or more required elements. To put this case ready for trial, therefore, the Court must correct the errors in the R&R by entering final rulings on the pending motions in favor of Carnival, as discussed below.

**Section I.** The R&R recommends that Carnival's motion be denied on DeCurtis' antitrust, unfair competition, and tortious interference claims—which the R&R lumps together and refers to as "patent-related claims"—based on a supposition that the validity of Carnival's patents must "first" be adjudicated, and only "after those facts have been determined" can an assessment of those claims be undertaken. *See* R&R at 6-8. That supposition is legally and logically incorrect; it is a false premise that infects the entirety of the R&R on Carnival's motion directed to DeCurtis' claims. The grounds for Carnival's motion are wholly independent of the validity of Carnival's patents; whether they are valid or not, DeCurtis bears the burden of proving elements unrelated to invalidity, including for example objective baselessness and monopoly power. DeCurtis has failed to make a sufficient showing to create a triable issue on one or more such elements for each of its claims. Courts routinely grant summary judgment on antitrust and other such claims despite disputes regarding patent validity that remain for trial. Application of Rule 56 requires that summary judgment be entered in Carnival's favor on the three DeCurtis' claims—a result that, significantly, will dramatically streamline this case for its February 2023 trial.

**Section II.** The R&R also errs in recommending that DeCurtis be granted summary judgment on one of Carnival's patent infringement claims. A material dispute of fact exists as to whether DeCurtis's DXP wearables use "access blobs" that are "unique to the device." Carnival's documentary and expert opinion evidence would permit a rational jury to find that DXP wearables use access blobs that are unique and thus infringe Claim 11 of Carnival's '514 patent. Summary judgment on Carnival's '514 patent claim therefore must be denied.

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

I.   **THE R&R FAILS TO MEANINGFULLY ADDRESS OR PROPERLY RESOLVE CARNIVAL'S MOTION CHALLENGING THREE DECURTIS CLAIMS ON WHICH CARNIVAL IS ENTITLED TO SUMMARY JUDGMENT[1]**

   A.   **The R&R Rests on the Erroneous Premise that DeCurtis' "Patent-Related Claims" Cannot Be Subject to Summary Judgment Until After All Disputes Regarding the Validity of Carnival's Patents Have Been Adjudicated**

   The mandate of Rule 56 is explicit: A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (the "plain language" of the rule "mandates the entry of summary judgment" when the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991). Adhering to this obligation ensures that Rule 56 can accomplish its purpose "to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323-24.

   In recommending against Carnival's motion for summary judgment on DeCurtis' claims— without even meaningfully addressing Carnival's arguments specific to those claims—the R&R runs afoul of Rule 56's "mandates." The R&R observed (at 7) "that there is still a genuine dispute of material fact with respect to DeCurtis' claims that Carnival's patents are invalid" and went on to conclude that this alone precludes summary judgment as to all other "patent-related claims." The R&R then denied Carnival's motion for summary judgment on DeCurtis' (1) antitrust, (2) unfair competition, and (3) tortious interference claims without consideration of the other elements that must necessarily be proven at trial. *Id.* at 7-8. This was error for multiple reasons.

   ***First,*** factual disputes over patent validity do not preclude summary judgment in favor of Carnival on its *Noerr-Pennington* and patent privilege immunities. *See, e.g.*, *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007) (affirming summary judgment for patentee on *Noerr-Pennington* despite invalidity of its patents); *In re Androgel Antitrust Litig. (No. II)*, 888 F. Supp. 2d 1336, 1345 (N.D. Ga. 2012) (granting summary judgment for patentee on *Noerr-Pennington* despite remaining factual disputes on validity). "Neither the bringing of an unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls to invalidity subjects the suitor to antitrust liability." *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d

---

[1] The R&R was issued without oral argument. Carnival respectfully renews its request for oral argument on Carnival's pending summary judgment motion and on these Objections to the R&R.

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

1340, 1369 (Fed. Cir. 1998); *accord, e.g., In re Ciprofloxacin Hydrochloride Antitrust Litig*., 544 F.3d 1323, 1336 (Fed. Cir. 2008) ("in the absence of evidence of fraud before the PTO or sham litigation, the court need not consider the validity of the patent" in disposing claims barred by *Noerr-Pennington* immunity). Moreover, in ruling on claims such as DeCurtis', "the Court cannot be swayed by the subsequent invalidity of the patent." *In re Terazosin Hydrochloride Antitrust Litig*., 352 F. Supp. 2d 1279, 1303 (S.D. Fla. 2005); *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus*., 508 U.S. 49, 61 n.5 (1993) ("*PRE*") (same); *see also Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc*., 75 F.3d 1568, 1576 (Fed. Cir. 1996) (fact dispute over joint inventorship immaterial to *Noerr-Pennington* absent proof of intent to deceive PTO).

The R&R's premise that, "if Carnival's patents are found to be invalid, then the likelihood of DeCurtis's success on its antitrust claims measurably increases" (R&R at 8) thus is directly contrary to binding precedent. Regardless of the ultimate disposition of the validity of Carnival's patents, DeCurtis can maintain its claims only if it can prove an exception to the *Noerr-Pennington* and patent privilege doctrines. D.E. 128 at 39-40 (permitting DeCurtis' claims to proceed past the pleading stage on fraud-on-the-PTO theory). As shown in Carnival's motion and below, DeCurtis has failed to make a sufficient showing of "sham litigation" to overcome *Noerr-Pennington* (Section I.B(1), *infra*); "bad faith" to overcome the patent privilege (Section I.B(2) *infra*); or a *Walker Process* antitrust claim (Section I.B(3), *infra*). This failure "necessarily renders all other facts immaterial," and summary judgment should be granted. *Celotex*, 477 U.S. at 323; *Guinness PLC v. Ward*, 955 F.2d 875, 882-83 (4th Cir. 1992) ("[o]nly disputes over facts that might affect the outcome … will properly preclude" summary judgment).

***Second,*** DeCurtis can maintain its antitrust claim only if it can also prove that Carnival has monopoly power (or the dangerous probability of acquiring it) in a properly defined relevant market. Market power is not established simply because an antitrust defendant enforces its patents. *See Ill. Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 45-46 (2006). DeCurtis' failure to make a sufficient showing to support this element, as shown in Carnival's motion and in Section I.C., *infra*, cannot be excused on summary judgment based on disputed questions of patent validity.

***Third,*** DeCurtis cannot maintain its tortious interference and unfair competition claims absent a sufficient showing on each element of those claims, which DeCurtis has failed to make. *See* Section I.D., *infra*. Summary judgment thus should be entered in favor of Carnival on these claims, irrespective of patent validity. The R&R was wrong in suggesting otherwise.

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

**B.    Carnival is Entitled to Summary Judgment Because DeCurtis Has Failed to Show Grounds to Overcome *Noerr-Pennington* and the Patent Privilege**

DeCurtis's antitrust, tortious interference, and unfair competition claims all arise from Carnival's patent notice communications and patent claims in this litigation. FAC (D.E. 87) ¶¶ 162, 170, 178, 185. Those communications and claims are protected by the *Noerr-Pennington* doctrine and the patent privilege unless DeCurtis proves sham litigation, bad faith, or a *Walker Process* fraud claim, *see McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1559 (11th Cir. 1992), as the Court previously has acknowledged and DeCurtis itself has conceded. D.E. 128 at 45-46 (R&R Motion to Dismiss); D.E. 99 at 14 (DeCurtis Opposition to Motion to Dismiss). The sham litigation and bad faith doctrines are similar in that both require a showing of both objective baselessness and subjective bad faith under the two-part *PRE* test. *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc*., 362 F.3d 1367, 1377 (Fed. Cir. 2004). A *Walker Process* fraud claim is a "separate cause of action" requiring proof that a fraudulently procedure patent was used in an antitrust violation. *Ritz Camera & Image, LLC v. SanDisk Corp*., 700 F.3d 503, 508 (Fed. Cir. 2012). DeCurtis has failed to make a sufficient showing to survive summary judgment on any of the above three grounds.

**1.    DeCurtis Has Failed to Make a Sufficient Showing of Sham Litigation to Survive Summary Judgment**

Under the sham litigation exception to *Noerr-Pennington*, to survive summary judgment, DeCurtis must show *both* that: (1) Carnival's lawsuit is so objectively baseless that "no reasonable litigant could realistically expect to secure favorable relief"; and (2) the party bringing the allegedly baseless suit did so with a subjective motivation to "interfere directly with the business relationships of a competitor." *PRE*, 508 U.S. at 62; *Orange Lake Country Club Inc. v. Reed Hein & Assocs*., 2019 U.S. Dist. LEXIS 223939, at *55 (M.D. Fla. Oct. 4, 2019) (same). Here, DeCurtis cannot show either element with respect to either Carnival's pre-suit patent notice communications or Carnival's filing and pursuit of this litigation.

**a.    There is No Genuine Dispute for Trial Over Whether Carnival's Patent Notice Communications Were Objectively Baseless**

*PRE*'s "objectively baseless standard" applies to "pre-litigation communications alleging patent infringement*"* and permits patentee liability only for (1) "objectively baseless" (2) "allegations of infringement." *Globetrotter*, 362 F.3d at 1377. To survive summary judgment, DeCurtis therefore must present "affirmative evidence" that Carnival's "allegations" were

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

"objectively false." *See, e.g., Golan v. Pingel Enter.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002). Because DeCurtis does not identify any false statements in Carnival's patent notice communications, it has failed to meet its burden on summary judgment with respect to those communications. *Id.*; DeCurtis Summary Judgment Opp. (D.E. 311) at 10-11; DeCurtis Response to Carnival Statement of Material Facts (D.E. 310) SOF 53. DeCurtis' argument that a jury could find that Carnival "convey[ed] a threat of litigation" (D.E. 310 SOF 53) is a red herring and is insufficient on its face to defeat summary judgment on *Noerr-Pennington.* Only "objectively baseless" infringement allegations are actionable, and factually accurate communications cannot be objectively baseless as a matter of law. *Golan*, 310 F.3d at 1371; *Globetrotter*, 362 F.3d at 1377. "Communication of accurate information about patent rights, whether by direct notice to potential infringers or by publicity release" cannot be actionable. *E.g., Mikohn*, 165 F.3d at 898.

> **b.    There is No Genuine Dispute for Trial Over Whether Carnival's Litigation Claims Are Objectively Baseless**

DeCurtis bears a heavy burden to establish that Carnival's lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60-61. As long as an objective litigant in Carnival's shoes "could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and [claims] premised on the sham exception must fail." *Id.* DeCurtis' claims fail for that reason. The undisputed facts demonstrate that Carnival achieved success throughout this litigation, which establishes that Carnival's lawsuit is not objectively baseless. *See, e.g., id.* at 58 ("a valid effort to influence government action" not a sham). Carnival's contractual audit rights have already been vindicated—the breach of contract claim in this case has resulted in Carnival obtaining access to information and audit documents DeCurtis refused to produce pre-suit. D.E. 163 (Order on Pending Motions to Compel); *In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330, 338-39 (S.D.N.Y. 2019) (no sham where plaintiff "obtained certain relief or information it sought by filing the lawsuits"). As a result, for example, Carnival has established that DeCurtis' DXP software contains over 200 lines of source code written for Carnival. R&R at 21.

Carnival's patent claims, therefore, will proceed to trial. And Carnival has obtained favorable rulings on several patent issues by both this Court and the Patent Trial and Appeal Board. The Court adopted Carnival's reading of its patents on every disputed claim construction issue, while also denying DeCurtis's motion for summary judgment of invalidity. D.E. 413. As the R&R acknowledges, DeCurtis failed to even move for summary judgment on invalidity a second time.

**CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER**

The simple fact that the R&R recommends denial of DeCurtis's motion for summary judgment on thirteen of Carnival's fourteen patent claims necessarily means that Carnival's lawsuit cannot be objectively baseless. *E.g., PRE,* 508 U.S. at 61 (a "genuine issue" under Rule 56 establishes objective reasonableness); *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1263–64 (Fed. Cir. 2008) (denial of motion for summary judgment evidenced probable cause); *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 958 (S.D. Cal. 1996) (same); *VAE Nortrak N. Am., Inc. v. Progress Rail Servs. Corp.*, 459 F. Supp. 2d 1142, 1166 (N.D. Ala. 2006) (same); *FilmTec*, 67 F.3d at 938–39. Thus, Carnival's success in this very litigation demonstrates "probable cause" and "compels the conclusion that a reasonable litigant in [Carnival's] position could realistically expect success on the merits." *PRE*, 503 U.S. at 63.

Carnival was entitled to assert its patent rights in this lawsuit, particularly since it did so only *after* DeCurtis "fired the first shot" by filing suit in the Middle District and alleging antitrust, unfair competition, and tortious interference claims. *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 204 (S.D.N.Y. 2014) ("to do anything less would have risked default"); *Wilson v. Leigh Law Grp., P.C. (LLG),* 2020 U.S. Dist. LEXIS 124830, at *10 (N.D. Cal. July 14, 2020) (applying sham test to defensive litigation). The litigation that has ensued has largely validated Carnival's patent positions and, at worst, has shown that certain of those claims may be subject to contested facts and legal arguments. *PRE*, 50 U.S. at 61 (Rule 56 "'genuine issue' is one 'that properly can be resolved only by a finder of fact because [it] may *reasonably* be resolved in favor of either party.'"). Given the record, DeCurtis cannot meet PRE's "objectively baseless" test as a matter of law, and summary judgment must therefore be entered.

### c.     There Is No Evidence of Improper Subjective Motivation

Summary judgment separately is required because DeCurtis has failed to make any showing, much less a showing of "clear and convincing" evidence, that Carnival filed this lawsuit with improper subjective intent to interfere directly with the business relationships of a competitor. *In re Terazosin*, 335 F. Supp. 2d at 1364-65. DeCurtis' incorrect legal arguments about the merits of Carnival's claims (DeCurtis Opp. at 10-11) do not even establish Carnival's claims are baseless—DeCurtis's legal arguments certainly do not support an inference that Carnival's "actual motivation" was to "dragoon the [litigation] process itself into use as a competitive tool," *Campbell v. Pennsylvania Sch. Boards Ass'n*, 972 F.3d 213, 219 (3d Cir. 2020), as opposed to "a genuine desire for judicial relief …." *See McGuire O*il, 958 F.2d at 1559-60. The record makes clear the

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

true motivations for Carnival's lawsuit: DeCurtis sued Carnival first (D.E. 1), in the wrong venue, thereby requiring Carnival to file suit in this District to protect its contractual rights. D.E. 39 at 13-14. Carnival's patent infringement claims are compulsory counterclaims to DeCurtis's non-infringement and unenforceability claims; it is *DeCurtis* who set this litigation in motion. *See id*. It cannot be a sham for Carnival to defend itself. *See Mosdos Chofetz Chaim,* 14 F. Supp. 3d at 204. DeCurtis cannot dispute that it sued Carnival first, so it relies instead on unsupported attorney argument that Carnival has made this litigation more expensive (DeCurtis Opp. at 10), but that is insufficient to carry DeCurtis's summary judgment burden. "[M]ere knowledge that the filing of a suit may collaterally damage a litigant is not evidence of a bad-faith motive," and Carnival "had the legal right to file suit." *In re Terazosin*, 335 F. Supp. 2d at 1365.

### 2. DeCurtis Has Failed to Make a Sufficient Showing of Any Bad Faith to Overcome the Patent Privilege Doctrine

Because there is a "presumption that the assertion of a duly granted patent is made in good faith," in general, "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith." *Golan,* 310 F.3d at 1370-1371 (internal quotations omitted). Like the sham litigation exception, the "bad faith standard cannot be satisfied in the absence of a showing" that the subject communication was "objectively baseless." *GP Indus. v. Eran Indus*., 500 F.3d 1369, 1374 (Fed. Cir. 2007). As discussed above, DeCurtis has failed to make such a showing as to either Carnival's patent notice communications or this litigation. DeCurtis' only additional argument is that "the patent privilege cannot apply if there are allegations of bad faith," DeCurtis Opp. at 1 n.1, but that misstates the governing standard at this stage of proceedings. To survive summary judgment, DeCurtis "must present affirmative evidence," and that evidence must be considered "in light of the burden of clear and convincing evidence that will adhere at trial." *Golan*, 310 F.3d at 1371. Allegations are not enough; DeCurtis has presented no evidence of bad faith, and its claim must fail as a matter of law.

### 3. DeCurtis Failed to Make a Sufficient Showing of *Walker Process* Fraud

This Court declined to dismiss DeCurtis' antitrust claims at the pleading stage only because DeCurtis' untested allegations conceivably could support a *Walker Process* fraud claim. D.E. 128 at 46-47. *See Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965); *Ritz*, 700 F.3d at 508 (a *Walker Process* claim is "a separate cause of action"). In *Walker Process*, the Supreme Court held that enforcement of a fraudulently procured patent may constitute a basis for an antitrust claim under the Sherman Act if a claimant can prove: (1) the

**CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER**

antitrust defendant enforced a patent that was obtained upon knowing and willful fraud on the patent office, and (2) all the necessary elements to establish an antitrust claim under the Sherman Act. *Chandler v. Phx. Servs. LLC*, 1 F.4th 1013, 1014 (Fed. Cir. 2021). DeCurtis has failed to make a sufficient show of fraud on the PTO to satisfy the first of these two requirements. [2] And, as discussed in Section I.C., *infra*, DeCurtis has failed to meet its burden on the second requirement as well.

To satisfy its burden on the first *Walker Process* requirement, DeCurtis must show "clear and convincing evidence" that fraudulent intent is the "single most reasonable inference to be drawn from the evidence." *United States Water Servs. v. Novozymes A/S*, 843 F.3d 1345, 1352-1353 (Fed. Cir. 2016) (affirming summary judgment on inequitable conduct despite disputes over validity and intent). "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91. That is necessarily the case here, where the R&R concludes that there are permissible inferences in Carnival's favor that preclude summary judgment on the inventorship issue. R&R at n.7; *PRE*, 506 U.S. at 603; *Therasense*, 649 F.3d at 1290-91. Regardless of whether David DeCurtis should have been named as an inventor, DeCurtis has failed to make a sufficient showing of *deceptive intent* to survive summary judgment. *See, e.g., Optium Corp. v. Emcore Corp*., 603 F.3d 1313, 1321-22 (Fed. Cir. 2010) (affirming summary judgment because, even assuming patentee withheld a material reference, accused infringer lacked clear and convincing evidence of intent to deceive); *AstraZeneca Pharms. LP v. Teva Pharms USA, Inc*., 583 F.3d 766 (Fed. Cir. 2009) (same).

DeCurtis is wrong in asserting that fraudulent intent can be shown by: (1) Carnival's maintenance of privilege; (2) a 2015 memorandum ("Curtis Memo") with a list of possible patentable ideas, (3) purported "motive" evidence; or (4) an abandoned request by another Carnival contractor to be added as an inventor to certain of Carnival's patents. This "evidence" is not evidence of deceptive intent at all, but rather unsupported speculation and falls far short of

---

[2] Carnival respectfully notes that the R&R's "potential" question on the timeliness of Carnival's motion on unenforceability (R&R at 6) is misplaced. This Court previously ruled that such motions could be filed after the close of discovery. D.E. 73 at 1; D.E. 72 at 8-9. Moreover, DeCurtis's *Walker Process* claim applies only to Carnival's conduct in filing and maintaining this litigation, since the Court has already ruled that Carnival's patent notice letters did not create a basis for federal subject matter jurisdiction. D.E. 144 at 6-7; *Unitherm Food Sys. v. Swift-Eckrich, Inc*., 375 F.3d 1341, 1358 (Fed. Cir. 2004) (a *Walker Process* claim requires patent "enforcement" sufficient to give rise to declaratory judgment jurisdiction).

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

*Therasense*'s rigorous "single most reasonable inference" standard.

      **Carnival's maintenance of privilege**. DeCurtis's principal argument on deceptive intent is that "Carnival has used attorney-client privilege to turn its patent prosecution process into a 'black box.'" DeCurtis Opp. at 5-7 & 9-10. But it is black letter Federal Circuit precedent that Carnival has no duty to "offer any good faith explanation," and "the absence" of such an explanation from a patentholder cannot prove intent to deceive. *Therasense,* 649 F.3d at 1291. A patentholder further is not obligated or expected to waive attorney client privilege. No "negative inference can arise from the assertion of the privilege and, even if it did, such a negative inference cannot substitute for the requisite clear and affirmative evidence of bad faith." *Terazosin*, 335 F. Supp. 2d at 1365. Where, as here, the antitrust plaintiff fails to offer independent proof of deceptive intent, summary judgment must be granted. *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007).

      "DeCurtis deposed every one of the ten living inventors named on the patents plus the lead patent prosecution attorney, and none testified that Mr. DeCurtis should have been an inventor on the patents or that he had been intentionally omitted." Carnival SOF 27 (D.E. 290). DeCurtis responded to SOF 27 merely by stating that "most [inventors] lacked first-hand knowledge regarding whether Mr. DeCurtis should have been named as an inventor." DeCurtis Response to Carnival SOF 27 (D.E. 310). But that response does nothing to evidence deceptive intent on the part of Carnival or anyone else – at most it establishes a lack of knowledge (and therefore *lack of intent*) by most Carnival inventors. As to the inventors who did have knowledge of David DeCurtis, each one testified to his good faith belief in the correctness of Carnival's inventorship submissions to the PTO. Carnival SOF 28 (D.E. 290).[3]

      **Curtis Memo**. As to inequitable conduct, the R&R only discusses one document, a memo authored by a non-lawyer inventor nearly two years before the first relevant patent application was filed. The R&R recognizes that the author himself testified that he may have erred in labelling this memo. The R&R suggests that this creates a fact dispute over proper inventorship. Even if so, that does not establish a genuine fact dispute as to intent; at most it evidences a potential omission. *Dippin' Dots,* 476 F.3d at 1347 ("there must be evidence of intent separable from the simple fact

---

[3] The fact finder need not credit this inventor testimony to grant summary judgment. "[I]ntent cannot be shown merely from the absence of evidence which would come about from the [fact finder's] discounting [Carnival's] explanation." *Dippin' Dots*, 476 F.3d at 1348.

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

of the omission"). The R&R does not address the separate intent requirement at all, much less acknowledge that *Therasense* requires summary judgment of no inequitable conduct if "one reasonable inference on the record" is that the relevant parties lacked intent to deceive. *Intercontinental Great Brands LLC v. Kellogg N. Am. Co*., 869 F.3d 1336, 1352 (Fed. Cir. 2017). Here, by the R&R's own reasoning, one reasonable inference on the record is that those involved in the prosecution understood that the Curtis memo "mislabeled" David DeCurtis as an "inventor," and thus omitted Mr. DeCurtis because they did not believe he was an inventor– foreclosing a finding of intent to deceive. *See, e.g., id*.

**Motive**. DeCurtis has proffered no support for its speculation of a "motive" to omit David DeCurtis as an inventor because "Carnival's inventors understood that Mr. DeCurtis would not have cooperated with a scheme to secure overbroad patent claims that cover prior-art Disney and Assa Abloy technology." DeCurtis Opp at 8. And the Court ruled long ago that "DeCurtis has failed to state a claim based on prior-art fraud," D.E. 144, including DeCurtis's claims that "Carnival fraudulently withheld from the Patent Office certain details of the Disney Magic Band/Be Our Guest System" and "the full extent of the Assa Abloy 'Allure' electronic lock system." D.E. 128. DeCurtis has neither a live claim in the case nor any evidence that anyone at Carnival fraudulently concealed Disney or Assa prior art. Instead, DeCurtis' sole remaining *Walker Process* theory is based on an alleged "fraudulent scheme" to omit David DeCurtis as an inventor. DeCurtis Opp. at 8-9; D.E. 128 at 36 n.9.  It is *this inventorship omission* that DeCurtis must prove was motivated by deceptive intent, but DeCurtis has identified no evidence—much less clear and convincing evidence—on this point. DeCurtis Opp. at 7-8 (relying on fact of omission; no independent evidence of Carnival's intent); *contra Dippin' Dots*, 476 F.3d at 1347.

DeCurtis further has identified no evidence of the "something" that it suspects Carnival was "concerned about" David DeCurtis saying to an Examiner. DeCurtis Opp. at 7 (citing D.E. 128 & 260). For example, DeCurtis has no evidence that anyone at Carnival believed Carnival's patents might be invalid over any Disney or Assa prior art, and even if such evidence existed, it would be insufficient. "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense*, 649 F.3d at 1290. *A fortiori*, even if Carnival knew David DeCurtis knew of a reference and of its materiality, but decided not to name DeCurtis as an inventor, that would not prove specific intent to deceive.

10

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

Similarly, DeCurtis has no evidence that anyone at Carnival was concerned that David DeCurtis had material information about Disney or Assa. Indeed, DeCurtis offers no evidence even about what David DeCurtis himself knew at the time of Carnival's patent prosecution, much less what Carnival's inventors thought about what David DeCurtis knew. DeCurtis Opp. at 1-11. Given the record, no reasonable jury could credit DeCurtis's argument that Carnival omitted David DeCurtis as an inventor as part of a "scheme to secure overbroad patent claims that cover prior-art Disney and Assa Abloy technology." *Id.* at 8. Even if DeCurtis' evidence suggests a factual dispute over whether David DeCurtis made "a sufficient contribution for him to have been a joint inventor, there [is] no evidence that omitting [him] as an inventor was due to an intent to deceive the PTO concerning any matter material to patentability." *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1576 (Fed. Cir. 1996).

**Character Evidence**. DeCurtis points to an unfounded and abandoned assertion of inventorship by another contractor, Jan Elfstrom, as admissible pattern evidence under Fed. R. Evid. 404. DeCurtis Opp. at 8. The essence of DeCurtis' argument is that it will "demonstrate that [Carnival] acted deceptively" with respect to Mr. Elfstrom, "so it might have acted deceptively later" with respect to DeCurtis, which is a classic violation of Rule 404's prohibition on "improper character evidence." *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 2012 U.S. Dist. LEXIS 188155, at *9 (C.D. Cal. 2012). In any event, DeCurtis' dubious character evidence is not "clear and convincing" of any fact material to its *Walker Process* theory. DeCurtis' citation to *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, highlights the lack of merit to its position, as that case involved an "exhaustive record" that included a well-documented pattern of intentional false statements. 225 F.3d 1315, 1320 (Fed. Cir. 2000). DeCurtis has no such "pattern" evidence.

C. **Carnival Further is Entitled to Summary Judgment on DeCurtis' Antitrust Claims Because DeCurtis Has Failed to Make a Sufficient Showing that Carnival Has Monopoly Power in Any Relevant Market**

Separately, Carnival's Motion for Summary Judgment demonstrates that no reasonable jury could find that Carnival has monopoly power in a properly defined relevant market (Carnival MSJ (D.E. 288) at 11-16; Carnival Reply at 6-8). *Gulf States Reorganization Group, Inc. v. Nucor Corp.*, 721 F.3d 1281, 1286-87 (11th Cir. 2013) (affirming summary judgment); *Levine v. Centr. Florida Med. Affiliates, Inc.*, 72 F.3d 1538, 1553, 1556 (11th Cir. 1996) (same). As discussed above, this element of DeCurtis' antitrust claims is completely independent of any issues relating to patent invalidity. The R&R completely failed to address these issues. For this additional reason,

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

Carnival's motion requires that summary judgment be entered in favor of Carnival on DeCurtis' antitrust claims.

The R&R ignores dispositive record evidence that contradicts DeCurtis' overly narrow proffered markets comprised of (i) "end-to-end (E2E) wearable GES technology in the cruise industry," which DeCurtis' expert defines to include only Carnival's OCEAN platform, and (ii) "cruises with E2E wearable GES technology," which DeCurtis' expert claims is limited to only the five Carnival Princess ships with Carnival's OCEAN platform installed. Carnival SOF 63-74; Carnival MSJ at 11-16. The "vast majority of the major cruise lines" offer different forms of "GES technology" to enhance the guest experience, OCEAN is only one such system, and it can be used in and outside of cruise—as can DeCurtis' DXP system. Carnival SOF 63-72. Indeed, DeCurtis's CEO testified that ████████████████████████████████████████ *See* Carnival MSJ at 12-14. These include GES technology systems from other technology companies as well as other cruise lines that do not use wearables with BLE to provide location services (i.e. Carnival's patented solution) but instead use other technology to provide guest engagement services. Carnival SOF 68-70. All of these systems are in any properly defined relevant market, the boundaries of which must be determined by "the interchangeability of products which have similar uses considering price, characteristics, and adaptability." *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 713 (11th Cir. 1984); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir.1997).

In opposing Carnival's summary judgment motion, DeCurtis ██████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████. DeCurtis Opp. at 11-12. However, Dr. Lynde's opinion cannot create material issues of fact to defeat summary judgment. *Rosefielde v. Falcon Jet Corp.*, 701 F. Supp. 1053, 1070 (D.N.J. 1988) (an antitrust plaintiff cannot defeat summary judgment with an expert report that lacks record support); *accord Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 822 F. Supp. 2d 1201, 1209 (N.D. Ala. 2011), *affm'd.* 721 F.3d at 1287 (11th Cir. 2013); *see also It's My Party, Inc. v. Live Nation, Inc*., 811 F.3d 676, 683 (4th Cir. 2016) (affirming summary judgment and recognizing "[n]o party can expect to gerrymander its way to an antitrust victory without due regard for market realities."). Indeed, at deposition, Lynde acknowledged that a patent does not confer market power, and yet he ████████████████████████████████████████ ████████████████████████████████████████████████████████████████

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

█████████████████████████████████████████ Carnival MSJ at 11-12 (citing Lynde deposition). The Supreme Court has rejected the assumption that patent rights confer a presumption of market power and define an antitrust market. *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 45-46 (2006).

DeCurtis must claim that Carnival's ████████████████████████████████ because otherwise there is no way for DeCurtis to argue that Carnival possesses monopoly power or that DeCurtis is excluded from a relevant market. However, the undisputed evidence shows the market is broader. ███████████████████████████████████████████████ ████████████████████████████████████ D.E. 285-14 at 52:12-53:4; 57:24-59:24. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████ D.E. 309 at ¶¶ 1-2; Carnival SOF 54. The boundaries of the relevant product market are determined by a product's reasonable interchangeability of use between the product and its substitutes. *Maris Distributing Company, v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1221-22 (11th Cir. 2019). Yet, Lynde conducted no analysis ████████████████████████████████████████████████████ ████████████████████████████████████ D.E. 285-14 at 59:16-24. This alone demonstrates summary judgment is required. In addition, DeCurtis' antitrust claims fail because they cannot establish harm or antitrust injury. Carnival MSJ at 15, 19; Carnival Reply at 8-10.

> **D.**     **Carnival Further is Entitled to Summary Judgment Because DeCurtis Has Failed to Make a Sufficient Showing to Support its Tortious Interference and Unfair Competition Claims**

To succeed on its tortious interference claim, DeCurtis must show: (1) the existence of a business relationship between the plaintiff and a third person under which the plaintiff has legal rights; (2) defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform; and (4) damage to the plaintiff resulting therefrom. *See* Carnival MSJ at 16 (citing, *e.g*, *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). The same legal requirements apply to DeCurtis's claim for unfair competition, since that claim is premised on the allegations underlying the tortious inference claim. *Id.* at 16, n. 5. The R&R fails to consider any of the arguments or evidence presented in Carnival's Summary Judgment Motion on this point, due to the erroneous supposition that the validity of Carnival's patents must first be resolved.

**CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER**

Carnival MSJ at 16-20. Carnival incorporates those arguments by reference and summarizes them as follows:

>    ***Royal Caribbean and MSC.*** Despite DeCurtis' belated attempt to assert a tortious interference claim relating to Royal Caribbean Cruise Lines and MSC Cruises, DeCurtis has failed to make any showing of a business relationship between DeCurtis and either Royal or MSC "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed" but for the alleged interference. *See* Carnival MSJ at 18-19 (citing *inter alia*, *Ethan Allen, Inc.*, 647 So. 2d at 815); Carnival SOF 59-60 (D.E. 290). Further, and most glaringly, DeCurtis has no evidence that Carnival knew of such alleged relationships between DeCurtis and Royal or MSC, and no evidence of any actions by Carnival directed at Royal or MSC that caused those cruise lines not to perform. *Id.* at 19 (citing Carnival SOF 61-62). Indeed, DeCurtis did not even oppose Carnival's motion on these points. *See* DeCurtis Opp. at 17. DeCurtis also did not dispute Carnival's SOF 61 ("Carnival does not have knowledge of any alleged business relationship between DeCurtis and either Royal or MSC, and DeCurtis has produced no evidence of such knowledge") or SOF 62 ("Carnival has not taken any action, including any communication, direct to Royal or MSC regarding DeCurtis, Carnival patents, or any other issues relating to DeCurtis."). *See* D.E. 290; DeCurtis SOF Opposition (D.E. 310).

>    In other words, DeCurtis concedes – as it must – that it does not have evidence to establish these elements of its claim for tortious interference and unfair competition with respect to Royal or MSC. As a result, DeCurtis also cannot establish injury caused with reasonable certainty by Carnival's assertion of its patent rights. *Id.* at 19 (citing *Martinez v. Rabbit Tanaka Corp*., No. 04-61504-CIV, 2006 WL 5100536, at *9 (S.D. Fla. Jan. 6, 2006)). Summary judgment in Carnival's favor is therefore warranted. *Celotex Corp.*, 106 S. Ct. at 2552 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") Neither the Court nor the jury's time should be required to hear DeCurtis's claims relating to Royal or MSC.

>    ***Virgin and NCL.*** DeCurtis also has not raised a dispute of material fact that could allow it to proceed on its tortious interference and unfair competition claims as to Virgin and NCL for at least three reasons. *First*, DeCurtis's claims with respect to Virgin fail because DeCurtis has not established any harm, as required under governing law. Carnival MSJ at 17. ███████████████

14

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  *See* Carnival SOF 54

and DeCurtis response thereto. In other words, DeCurtis and Virgin continue to work together despite the alleged "interference."

*Second*, DeCurtis cannot satisfy its burden to prove the existence of an intentional and unjustified interference as to Virgin or NCL. *Id.* (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So.2d 381, 385-86 (Fla. 4th DCA 1999)). DeCurtis' tortious interference claim is premised on Carnival "making thinly veiled threats that it would bring patent infringement litigation" against DeCurtis and its customers (*see* DeCurtis FAC (D.E. 87) Count IV); however, this Court has already found that Carnival's pre-suit communications with NCL and Virgin did not constitute threats of litigation. Carnival MSJ at 17 (citing D.E. 128 at 10-22 (finding that "the only thing that can be discerned [from the pre-suit communications] is that Carnival gave an overview of its entire patent portfolio"); D.E. 144)). Carnival's actions in communicating with Virgin and NCL regarding Carnival's patent portfolio were neither unjustified nor intended to interfere with DeCurtis's relationships.

*Third*, for similar reasons, the evidence shows that Carnival's pre-suit communications to NCL and Virgin were *not* intended to interfere with either entity's business relationship with DeCurtis. *Id.* at 18; Carnival Reply (D.E. 323) at 10. Thus, this Court should grant summary judgment in Carnival's favor on DeCurtis' tortious interference and unfair competition claims in their entirety.

## II.    RULE 56 REQUIRES DENIAL OF DECURTIS'S MOTION ON THE '514 PATENT

The R&R improperly weighs evidence and ignores disputed facts in erroneously recommending that summary judgement of non-infringement be entered on Claim 11 of Carnival's '514 patent. Even DeCurtis' own evidence supports a reasonable inference of infringement. In fact, DeCurtis' motion relies on the same document that Carnival's expert relied on in finding Claim 11 infringed, but DeCurtis (and the R&R) ignores Carnival's expert's testimony and other evidence that contradicts DeCurtis' position.

Claim 11 recites a portable device with a memory that "stores both public and private identifiers *unique to the portable wireless device*." R&R at 15. Based on his review of DeCurtis-produced source code and documents, Carnival's technical expert Erik de la Iglesia testified that

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

DeCurtis' DXP wearables contain encrypted "access blobs" that are "identifiers unique to the portable wireless device" within the meaning of Claim 11. Carnival Opp. (D.E. 300) at 12. According to Mr. de la Iglesia's analysis, DeCurtis's door access system implements a Wearable Transaction Protocol in a configuration that uses device-specific "access blobs" to unlock doors. D.E. 285-82 (de la Iglesia Dep.) at 244:4-246:24. DeCurtis has offered no testimony to the contrary. DeCurtis MSJ (D.E. 292) at 10-12; DeCurtis MSJ Reply (D.E. 319) at 7-8. Instead, DeCurtis argues that Carnival cannot prove DXP's access blobs are unique because Mr. de la Iglesia did not decrypt and "analyze the contents" of the access blob. DeCurtis MSJ at 11. DeCurtis is wrong. *See, e.g.*, *Symantec Corp. v. Computer Assocs. Int'l, Inc.,* 522 F.3d 1279, 1293 (Fed. Cir. 2008) (software manual sufficient evidence even without review or analysis of software code).

The R&R simply adopts DeCurtis's erroneous position, faulting Carnival's purported lack of "direct" or "tangible evidence" regarding "the contents of [the] 'access rights blob.'" R&R at 16, 18 n.8. But the analogy relied on in the R&R to reach that conclusion – i.e., "Carnival's expert has examined an oyster and concluded, without peeking inside its shell, that it contains a pearl" *id.* at 18 – is contrary to Federal Circuit precedent. A patentee is not required to present "direct evidence of infringement." *Symantec*, 522 F.3d at 1293. "[N]or is a patentee required to prove direct infringement to a complete certainty." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 449 F. App'x 923, 928 (Fed. Cir. 2011) (unpublished). DeCurtis is wrong to suggest that it is necessary to decrypt every encrypted file, or to review source material directly on point to prove infringement. *See, e.g.*, *Symantec*, 522 F.3d at 1293; *Cochran Consulting, Inc. v. Uwatec USA, In*c., 102 F.3d 1224, 1231 (Fed. Cir. 1996) (schematics provided during discovery sufficient to present a triable issue of infringement); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1312 (Fed. Cir. 1998) (advertising statements sufficient).

DeCurtis, as a Rule 56(c)(2) movant seeking summary judgment based on an "utter lack of proof," bears the initial burden "to show affirmatively the absence of any evidence in the record" suggesting that access blobs are "unique to the device" within the meaning of Claim 11. *Gordon v. United States*, 2016 U.S. Dist. LEXIS 118364, at *5 (M.D.AL 2016) (applying *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993)). "[T]he moving party must point to specific portions of the record" showing that "the nonmoving party cannot meet its burden of proof at trial." *AIM Recycling of Fla., LLC v. Metals USA, Inc*., 2020 U.S. Dist. LEXIS 5081, at *62-63 (S.D. Fla. 2020) (citations omitted). The evidence DeCurtis cites, however, shows that *Carnival does*

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

*have evidence* to support its infringement claim on Claim 11 of the '514 patent, including:

**1. DeCurtis's Exhibit K (DeCurtis_00807543)**. This is █████████████ "Wearable Protocol Specification" that both parties rely on. DeCurtis SOF 37-39 (D.E. 291); DeCurtis MSJ at 12 n.13; Carnival Opp. (D.E. 300) at 12. Carnival points to page *548 of the specification, which states: ████████████████████████████████████████" wearables must ████████████ ████████████████████████████████████████████████████████████████████," and "████████████████████████████████████████████████████████████████████ ████████████████████████████. Carnival Opp. at 12. Mr. de la Iglesia testified that page *548 of the Wearable Specification is one reason for his conclusion that DXP access blobs are device specific. *Id.* For its part, DeCurtis argues that page *555 of the Wearable Protocol Specification "████████ ███████████████████████████████████████████████████" DeCurtis MSJ at 11, but Rule 56 requires the Court to reject DeCurtis's "suggestion" and view the specification in Carnival's favor. R&R at 4. The parties' competing positions regarding the Wearable Specification present a quintessential factual dispute that prohibits summary judgment. *See, e.g.*, Carnival Opp. to SOF 38 (D.E. 301) (identifying this very dispute).

**2. DeCurtis's Ex. E (Mr. de la Iglesia's Opening Report)**. DeCurtis cites pages 247-252 of Mr. de la Iglesia's Opening Report, which contain detailed analysis of multiple DeCurtis and Assa documents that Mr. de la Iglesia reviewed in forming his opinion, including: (1) DeCurtis_01620106 (Wearable Transaction Protocol); (2) DeCurtis_00807543 (each wearable receives an "access rights blob" ████████████████████████████████████████████████; (3) DeCurtis_01491115 (an email from DeCurtis contractor Jaycon Systems to DeCurtis discussing t██████████████████████████████████████████████████████████████ ████████; (4) DeCurtis_01620132 (detailing ██████████████ command); and (5) DeCurtis_01891932 (showing that the unique access blob ████████████████████████████ ████████████████████████. D.E. 285-7 at 247-252. Mr. de la Iglesia's Opening Report also describes the DeCurtis source code files that implement functionalities related to the access blob. *Id.* at 24 ¶ 74.

DeCurtis' speculation objection is belied by the foregoing documents, which DeCurtis does not address, and which standing alone preclude summary judgment on the unique identifier issue. Moreover, DeCurtis's motion makes no attempt to show that Carnival "cannot produce admissible

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

evidence" at trial on the issue. Fed. R. Civ. P. 56(c)(2). A jury could conclude from Mr. de la Iglesia's analysis and the documents cited that DXP wearables store unique identifiers.

**3. DeCurtis's Ex. L (de la Iglesia's Deposition Excerpts)**. DeCurtis cites testimony at pages 241-246 of Mr. de la Iglesia's deposition transcript to support the assertion that Mr. de la Iglesia "did not analyze the contents of Assa Abloy's 'access rights blob'" and "could [not] provide relevant details during his deposition." D.E. 292 at 11. But the transcript tells a different story. Asked if he "analyzed the content of the encrypted BLOB," Mr. de la Iglesia testified: "I analyzed the source code on the DeCurtis wearable which is responsible for performing the infringing [] behavior with that access BLOB…I start some of the analysis here on paragraph 56…on page 248." *Id*. at 242. Mr. de la Iglesia also testified that he analyzed DeCurtis-produced documentation about the contents of the access blob, providing specific document and page citations. *Id*. at 242-45. His testimony about the contents of the access blob, as well as about the details on where the blob comes from, how it is stored, and what it is used for, supports a jury finding for Carnival.

Each document discussed above is evidence that DeCurtis's DXP wearables contain access blobs "unique to the portable device" within the meaning of Claim 11 of the '514 Patent. DeCurtis disagrees with what the above evidence proves, but that is precisely the kind of factual dispute that precludes summary judgment. The R&R's "imagine[d]" scenario where a "hypothetical cruise passenger books a stateroom on a ship and then elects to share that stateroom with her husband," is entirely unmoored from the record and underscores the implausibility of DeCurtis's argument. R&R at 17. The R&R posits a system in which "[t]he wife is the 'user' and, as such, she is given a wearable device storing a private identifier that is unique to her. Her husband is given a second wearable device, however, the private identifier stored on this his [sic] device is identical to the private identifier stored on his wife's" wearable "in order to gain access to the shared stateroom." *Id*. at 17-18. But nothing in the record suggests that DeCurtis implemented this "hypothetical" system, which would be unable to differentiate the wife's access history and the husband's. Viewing the facts in the light most favorable to Carnival, it is unreasonable to assume that this speculative system could exist.

Because DeCurtis "fails to discharge the initial burden" on its motion, summary judgment "must be denied and the court need not consider what, if any, showing [Carnival] has made." *Fitzpatrick*, 2 F.3d at 1116. That said, Carnival's showing also precludes summary judgment. Carnival's opposition identified "overlooked" (1) passages of the Wearable Specification that

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

support Carnival's position; (2) paragraphs of Mr. de la Iglesia's Opening Report explaining the bases for his opinion on Claim 11; and (3) passages of Mr. de la Iglesia's deposition transcript that DeCurtis omitted that are favorable to Carnival. There is no "properly analyzed *Daubert* order" excluding Mr. de la Iglesia's testimony on the topic, so it constitutes admissible, "*Daubert*-qualified" expert testimony that precludes summary judgment.[4] *See, e.g., Chapman v. P&G Distrib., LLC*, 766 F.3d 1296, 1316 (11th Cir. 2014); *Apple Inc. v. Motorola, Inc*., 757 F.3d 1286, 1329 (Fed. Cir. 2014) (moving party failed its initial Rule 56(c)(2) burden to show inadmissibility of expert testimony) *partially overruled on other grounds as stated in Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015); *see also* D.E. 425 (*Daubert* Order).

In addition, Carnival has identified evidence that DeCurtis attempted to design around the '514 patent to avoid infringement. Carnival Opp. at 12-13. In April 2019, DeCurtis studied the '514 Patent, recognized that the "access blob" could constitute the claimed "private identifier" of Claim 11, and attempted to redesign its code to make that identifier no longer "private." Carnival SOF Opp. (D.E. 301) SOF 89-90 (citing design-around email DeCurtis_01491115). DeCurtis' own communications on these design-around efforts acknowledged that ███████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████ and that the ███████████████████████████ ██████████████████████████████████████" D.E. 285-7 at 249, 257, 259, 262-63. A jury could infer from these party admissions that the access blob is unique to DeCurtis' wearable device. Mr. de la Iglesia testified that he did in fact draw such an inference. D.E. 285-82 at 239:11-240:24 (discussing DeCurtis_01491115). Yet the R&R draws the inference in DeCurtis' favor that the design-around evidence is "unpersuasive" because it "relates to a different limitation in claim 11 of the '514 patent." R&R at 18 n.8. What is the basis for this conclusion? The R&R does not say, and there is no evidence to support it. In any event, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Guantanamera Cigars Co. v. SMCI Holding, Inc*., 2022 U.S. Dist. LEXIS 72668, at *9 (S.D. Fla. Apr. 20, 2022).

---

[4] Mr. de la Iglesia's testimony "need not 'show [infringement]' to be admitted under Rule 702…As expert evidence, the testimony need only assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chems*., 158 F.3d 548, 564-65 (11th Cir. 1998).

CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER

"As circumstantial evidence," Carnival's design-around evidence "need not prove [Carnival's] case by [itself]; [it] must merely constitute one piece of the puzzle that [Carnival] endeavor[s] to assemble before the jury." *City of Tuscaloosa*, 158 F.3d at 565. Importantly, there are almost certainly additional pieces to the puzzle that bolster Carnival's arguments, but those pieces are currently hidden behind the veil of DeCurtis's baseless privilege assertions. Carnival Opp. at 13 n.9 (citing Rule 56(d)). In the middle of a deposition on the design-around topic, DeCurtis used the Protective Order to claw back third-party emails based on an attorney-client privilege assertion that is, to put it charitably, "possibl[y] meritless." D.E. 372. The prejudice to Carnival from DeCurtis' abuse of the privilege continues as Carnival awaits ruling on its March 2022 Motion for Adjudication of Privilege Claims, D.E. 265.  *Contra* Fed. R. Civ. P. 56(d); *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 871 (11th Cir. 1988).

*     *     *     *

Carnival finally objects to any potential suggestion that the R&R somehow excludes from Carnival's breach of contract claim DeCurtis' unauthorized use of Carnival's name and Carnival Information in advertising and customer solicitations. Indeed, that issue currently is pending before the Court in Motion in Limine No. 5. *See* D.E. 377 at 14-15; D.E. 407 at 10-14; D.E. 416 at 6-7. DeCurtis' alleged failure to comply with § 6.11 of the MSA (Advertising) is part and parcel of its alleged failure to comply with § 3.4 (Audit Rights) and § 4.1 (Carnival Information); and overlapping evidence will be presented at trial regarding DeCurtis' non-compliance with the contract provisions. The parties also fully and actively conducted discovery on § 6.11, without objection, although DeCurtis did not produce much discovery on that topic until *after* the Court's deadline for amendment of pleadings. *Id.* at 12-13. Lastly, because parties routinely are granted leave to amend under Rule 15(b) to conform pleadings to evidence developed in discovery and/or presented at trial (*id.*), there is no basis for excluding evidence of DeCurtis' failure to comply with the MSA requirements set forth in § 6.11.

## CONCLUSION

For the foregoing reasons, Carnival respectfully submits that the Court should not adopt the R&R on the foregoing grounds and instead enter summary judgment in favor of Carnival.

Dated:  November 28, 2022                RESPECTFULLY SUBMITTED

                                     By: */s/ Diana Marie Fassbender*

**CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER**

Diana Marie Fassbender
Florida Bar No. 0017095
dszego@orrick.com

Steven J. Routh (*pro hac vice*)
T. Vann Pearce, Jr. (*pro hac vice*)
Eileen M. Cole (*pro hac vice*)
Jay Jurata (*pro hac vice*)
Emily Luken (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Columbia Center, 1152 15th Street, N.W.
Washington, D.C. 20005-1706
Tel: (202) 339-8533

Jorge Espinosa
Fla. Bar No.  779032
jorge.espinosa@gray-robinson.com
**GRAYROBINSON, P.A.**
333 S.E. 2nd Avenue, Suite 3200
Miami, FL  33131
Phone: (305) 416-6880
Facsimile: (305) 416-6887

Robert L. Uriarte (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 289-7105

Olivia Clements (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Tel: (212) 506-5000

Johannes Hsu (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
2050 Main Street
Suite 1100
Irvine, CA 92614-8255
Tel: (949) 567-6700

David R. Medina (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
777 South Figueroa Street
Suite 3200
Los Angeles. CA 90017-5855
Tel: (213) 629-2020

Sheryl Garko (*pro hac vice*)

21

**CONTAINS CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER**

Laura Najemy (*pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
222 Berkeley Street
Suite 2000
Boston, MA  02116
(617) 880-1800

*Attorney for Plaintiff/Counterclaim Defendant*
*Carnival Corporation*