United States District Court
for the
Southern District of Florida

| | |
|---|---|
| DeCurtis LLC, Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-22945-Civ-Scola |
| ) | |
| Carnival Corporation, Defendant. ) | |
| | |
| Carnival Corporation, Plaintiff, ) | |
| ) | |
| v. ) | Consol. Case No. 20-21547-Civ-Scola |
| ) | |
| DeCurtis Corporation and DeCurtis ) | |
| LLC, Defendants. ) | |

## **SEALED Order on Report and Recommendations Regarding Cross Motions for Summary Judgment**

In these consolidated cases, the parties' grievances against one another stem primarily from alleged intellectual-property rights related to portable devices aimed at enhancing guest engagement in various tourism venues. Carnival Corporation seeks redress against DeCurtis Corporation and DeCurtis LLC (together, "DeCurtis") for breach of contract, trade-secret misappropriation, and patent infringement (Carnival's 2nd Am. Compl., ECF No. 88). DeCurtis, conversely, in its complaint, seeks declaratory relief as to non-infringement and unenforceability, and damages based on unfair competition, tortious interference, and antitrust violations (DeCurtis's Am. Compl., ECF No. 87). This matter was referred to United States Magistrate Judge Edwin G. Torres for a ruling on all pre-trial, non-dispositive matters, and for a report and recommendation on any dispositive matters. (ECF No. 102.) Presently under consideration is Judge Torres's report and recommendations as to the parties' cross motions for summary judgment. (Rep. & Rec., ECF No. 426.) Judge Torres recommends that the Court deny Carnival's motion in its entirety, rejecting Carnival's quest for judgment in its favor as to (1) its own breach-of-contract claims; (2) DeCurtis's monopolization, tortious-interference, unfair-competition, and declaratory-judgment claims; and (3) DeCurtis's affirmative defenses and claims as to patent unenforceability. Judge Torres also recommends mostly denying DeCurtis's motion, to the extent it seeks judgment in its favor as to (1) Carnival's breach-of-contract claim; and (2) some of the infringement theories advanced by Carnival. Conversely, Judge Torres recommends granting summary judgment in DeCurtis's favor, in part, as to

Carnival's infringement allegations regarding one claim of one of the three patents at issue in this case. Both parties have filed objections to the report (Carnival's Objs., ECF No. 429; DeCurtis's Objs., ECF No. 431) and those objections have been fully briefed (Carnival's Resp. to Objs., ECF No. 452; DeCurtis's Resp. to Objs., ECF No. 450).[1] After careful review, the Court **adopts** Judge Torres's report and recommendations **in part** (**ECF No. 426**), **granting in part and denying in part** the parties' cross motions for summary judgment (**ECF Nos. 288, 292**) as further explained below.

1. **Background**

The dispute in this case centers on a "guest engagement system" that Carnival has patented. The invention, in broad strokes, uses wireless sensing technology to enable a host to seamlessly engage with guests throughout the host's facilities. DeCurtis, among others, was involved as an independent contractor with helping Carnival develop, in disputed degrees, the patented system. Before the invention was patented, however, the parties' relationship ended. After the split, Carnival began to suspect that DeCurtis was violating the parties' confidentiality agreement and preparing to provide or providing infringing technology to Carnival's competitors. This litigation ensued, as a consolidation of two separate actions filed by the parties. After extensive discovery and motion practice, remaining for disposition are, essentially, three groups of claims.

<u>One group</u> is comprised of Carnival's breach-of-contract claim. (Carnival's 2nd Am. Compl. at 36.) Through that claim, Carnival alleges that DeCurtis has breached the parties' master services agreement by failing to comply with a number of its provisions.

The <u>second group</u> is made up of the parties' competing claims regarding the three Carnival patents at issue in this case.[2] Carnival alleges that DeCurtis has infringed the three Asserted Patents (*id.* at 41–62) while DeCurtis seeks declaratory judgments that the patents are invalid, unenforceable, and not infringed (DeCurtis's Am. Compl. at 32–33, 37–58).

---

[1] The Court cites to the parties' redacted filings rather than their sealed filings. Further, the Court initially files this order under seal, pending input from the parties regarding a redacted version that may be filed on the public docket.

[2] The three patents at issue, which share a common specification, are U.S. Patent No. 10,045,184 (the "'184 patent" or "system patent") (ECF No. 205-2), U.S. Patent No. 10,049,516 (the "'516 patent" or "door-lock patent"), (ECF No. 205-3), and U.S. Patent No. 10,157,514 (the "'514 patent or "portable-wireless-device patent"), (ECF No. 205-4). Collectively, these are the "Asserted Patents" or "Patents."

And, lastly, the third group is composed of DeCurtis's claims for antitrust violations, tortious interference, and unfair competition. (*Id.* at 33–36.)

Judge Torres issued a report and recommendation as to the parties' cross motions for summary judgment, as described above. Both parties have objected to various aspects of that report.

## 2. Standard of Review

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones,* 863 F.2d 815, 822 (11th Cir.1989) (cleaned up). The objections must also present "supporting legal authority." Local Mag. J. R. 4(b). Once a district court receives "objections meeting the specificity requirement set out above," it must "make a *de novo* determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 F. App'x at 783–84 (quoting *Heath,* 863 F.2d at 822) (cleaned up). To the extent a party fails to object to parts of the magistrate judge's report, those portions are reviewed, at a minimum, for clear error. *Macort,* 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir.1999)). A court, in its discretion, need not consider arguments that were not, in the first instance, presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009).

## 3. Analysis

Although the parties have only objected to some of Judge Torres's findings and conclusions, the Court has, nonetheless reviewed the entirety of his report de novo. Having done so, the Court finds itself in agreement with much of Judge Torres's analyses and resulting determinations, modifying it only as to the third group of claims and, generally, DeCurtis's allegations of inequitable conduct relating to inventorship omission, as set forth in detail, below. Accordingly, the Court **overrules** DeCurtis's objections (**ECF No. 431**) in their entirety and **overrules in part and sustains in part** Carnival's objections (**ECF No. 429**).

### A. Carnival's Breach-of-Contract Claim

As to Carnival's breach-of-contract allegations, both parties moved for summary judgment, as to various aspects of that claim. Judge Torres found both efforts fell short and recommended denying both motions, leaving the entirety of Carnival's breach-of-contract claim for resolution through trial. Carnival does not object to this aspect of Judge Torres's report but DeCurtis does. DeCurtis argues (1) that it should be granted summary judgment as to the breach-of-contract theories that Judge Torres concluded Carnival failed to prevail on; and (2) Judge Torres erred in denying DeCurtis's defensive motion for summary judgment based on the master service agreement's "audit demand" and "Carnival information" provisions. The Court is not persuaded.

First, DeCurtis provides no legal authority for its contention that a rejection of a plaintiff's motion for summary judgment on its own claim should be converted into a defensive judgment on that claim, in favor of the responding party. Accordingly, the Court overrules DeCurtis's objections as to Judge Torres's rejection of Carnival's theories based on the master service agreement's forum-selection and advertising clauses. (DeCurtis's Objs. at 16.)

Second, the Court agrees with Judge Torres that DeCurtis's motion should be denied with respect to Carnival's allegations that DeCurtis breached the agreement by misusing Carnival's source code and failing to comply with the audit provision. As found by Judge Torres, the record reveals genuine issues of material fact as to both issues. DeCurtis's objections to the contrary are unpersuasive.

### B. The Asserted Patents

Carnival accuses DeCurtis of infringing claims 1–3, 7–8, and 11–15, of the '184 patent; claims 13, 15, and 18 of the '516 patent; and claim 11 of the '514 patent. As Judge Torres observes, "[t]hese infringement contentions are numerous and nuanced, alleging an array of infringement theories pursuant to 35 U.S.C. §§ 271(a), 271(b), 271(c), and 271(f)." (Rep. & Rec. at 9.) DeCurtis sought summary judgment on only a fraction of the infringement theories advanced by Carnival, some relating to DeCurtis's collaboration with Norwegian Cruise Lines and some with Virgin Voyages. As to DeCurtis's arguments relating to the Norwegian allegations, Judge Torres found DeCurtis's position wholly unsupported. In contrast, Judge Torres found one of DeCurtis's four arguments as to Carnival's Virgin allegations viable, recommending that the Court grant summary judgment in DeCurtis's favor on that front. Unsurprisingly, in this case, each party objects to those parts of the report that are adverse to its respective position.

After careful consideration, the Court overrules both parties' objections, agreeing with Judge Torres's findings, analyses, and ultimate conclusions regarding the infringement claims. First, as Judge Torres found, DeCurtis's arguments in seeking summary judgment as to the infringement claims that are related to DeCurtis's collaboration with Norwegian are wholly deficient. In objecting, DeCurtis ignores the deficiencies of its initial arguments and instead complains, essentially, that Carnival failed, in responding to DeCurtis's motion for summary judgment, to marshal facts showing that Carnival itself was entitled to summary judgment on this claim. In doing so, DeCurtis scrambles the parties' respective burdens in the context of a motion for summary judgment: in resisting DeCurtis's motion, Carnival's role was only to address the sufficiency of that motion; not to affirmatively show that summary judgment should instead be granted in Carnival's favor.

Next, DeCurtis's objections regarding Judge Torres's conclusion that DeCurtis is not entitled to summary judgment regarding the Patent claims that require an access panel equipped with a "radio," are similarly misdirected. Again, in responding to DeCurtis's motion for summary judgment, Carnival directed its efforts towards undermining DeCurtis's specific argument: that certain testimony showed that the access panels installed on Virgin's ship were not infringing because they used an infrared communication module—rather than a "radio"—to communicate information between any given access panel and its paired door. In its efforts to undercut that argument, Carnival pointed to documentation that, read in the light most favorable to Carnival, depicts DeCurtis's system's indeed using access panels with radios. This directly contradicts the testimony DeCurtis relies on, thus creating a genuine issue of material fact for trial. DeCurtis's objection, that this documentation, at most, shows an inchoate *plan* to install radios, rather than actual implementation, amounts to nothing more than its competing interpretation of the evidence—exactly the kind of thing that should be presented to a jury for determination at trial.

Continuing, DeCurtis's arguments that it is entitled to summary judgment as to the "sensor network" infringement claims follow a similar pattern. Regarding both the alleged installation of door-access panels on Virgin's ship and DeCurtis's alleged testing of a version of its system that infringed upon the claimed BLE "sensor network," Judge Torres found genuine issues of material fact. DeCurtis's objections to Judge Torres's conclusions again miss the mark. DeCurtis fails to acknowledge that Carnival has marshaled record evidence that, viewed in the light most favorable to Carnival, casts doubt on the evidence DeCurtis set forth trying to show noninfringement. Carnival was not required to come forward with record evidence controverting

all possible aspects of DeCurtis's conclusory position that infringing panels were never installed on Virgin's ships; instead, Carnival's burden was to show that either (A) DeCurtis failed to establish an absence of a genuine issue of material fact or (B) if DeCurtis carried its threshold burden, to designate facts which, if viewed in the light most favorable to Carnival, would allow a reasonable juror to find in Carnival's favor. The Court agrees with Judge Torres that Carnival succeeded in carrying its burden in opposing DeCurtis's motion as to the "sensor network" infringement claims.

The Court also agrees with Judge Torres's finding that DeCurtis failed to establish entitlement to summary judgment as to Carnival's infringement assertion based on DeCurtis's offers to sell. DeCurtis's objections focus on the various pieces of evidence Carnival relies on as if each document, in isolation, has to, independently, establish infringement. DeCurtis's efforts miss the mark. When viewed collectively, and in the light most favorable to Carnival, the evidence, considered together, could lead a reasonable trier of fact to conclude that DeCurtis's extensive, detailed communications with specific customers (like NCL and Virgin, for example) about the DXP system establish infringing offers to sell.

Finally, Carnival objects to Judge Torres's one adverse infringement finding against Carnival, where he concludes that Carnival has failed to come forward with record evidence establishing DeCurtis's infringement of claim 11 of the '514 Patent. At issue is whether DeCurtis's wearable device infringes a limitation of claim 11 that requires the wearable device to "store," in its "memory," a "private identifier[] unique to the portable wireless device [the wearable device]." (Rep. & Rec. at 15.) Carnival complains that the report, in granting DeCurtis's motion on this issue, "improperly weighs evidence and ignores disputed facts." (Carnival's Objs. at 17.) The Court disagrees: none of the evidence Carnival relies on supports a finding of DeCurtis's infringement of the unique private-identifier limitation of claim 11. Although bits and pieces of that evidence might implicate discrete parts of the limitation, none of it, either singularly or read together, would lead the Court to infer an infringing wearable device with memory that stores a unique private identifier. While the evidence Carnival points to might show that the allegedly infringing product might *allow* for a wearable device that has a "unique" "private identifier[]" stored in the "memory" of the wearable device, that does not amount to evidence, indirect or direct, that it actually does so—no matter how favorably to Carnival the Court reads the evidence. Further, the substance of Carnival's allegations of error is, in many respects lacking. For example, Carnival lists several pages from Carnival's expert's opening report that it says DeCurtis cited in its motion for summary judgment to support DeCurtis's position that Carnival's private-

identifier infringement allegations are purely speculative. Carnival then posits, without elaboration, that "DeCurtis's speculation objection is belied by the foregoing documents" (Carnival's Objs. at 17) but doesn't actually explain how and certainly doesn't reveal any error in Judge Torres's analysis. Ultimately, after careful review, the Court agrees with Judge Torres's conclusion that DeCurtis should be granted summary judgment with respect to claim 11 of the '514 patent.[3]

### C. DeCurtis's Antitrust and Tort Claims

Through its complaint, DeCurtis maintains that, because Carnival's Asserted Patents are invalid, unenforceable, or both, Carnival has engaged in monopolization and attempted monopolization in violation of the Sherman Act; and tortious interference with DeCurtis's business relationships and unfair competition under Florida law. These claims all arise from Carnival's (1) providing notice of its patents; and (2) bringing its part of this lawsuit. In seeking summary judgment on these four claims, Carnival argued that, even if DeCurtis's factual allegations were all accepted as true, Carnival's lawsuit is nonetheless protected under the *Noerr-Pennington* doctrine; and its pre-suit communications and ensuing lawsuit are also protected under the patent-privilege doctrine. (Carnival's Mot. for Summ. J., ECF No. 288.) Further, said Carnival, DeCurtis was unable to come forward with any facts that could establish a genuine issue for trial regarding either the sham-litigation, fraud, or bad-faith exceptions to those doctrines. (*Id.*) Finally, Carnival pointed to other infirmities, as well, regarding a dearth of record evidence as to various elements of DeCurtis's claims. In its opposition, DeCurtis opined that the record raises "serious questions regarding Carnival's conduct." (DeCurtis's Resp. to Mot. for Summ. J., ECF No. 311, 8.) In support, DeCurtis pointed to record evidence that it argues (1) shows Carnival made misrepresentations to the PTO regarding David DeCurtis's inventorship; (2) indicates Carnival intended to deceive the PTO; and (3) establishes that Carnival threatened, and has now engaged in, sham litigation. (*Id.* at 8–18.)

In evaluating Carnival's motion for summary judgment on these claims, Judge Torres notes that the resolution of the disputed validity of the Asserted Patents would facilitate determining whether Carnival's conduct amounts to an antitrust violation, tortious interference, or unfair competition. (Rep. & Rec. at

---

[3] Carnival contends that documents that are the subject of a pending privilege dispute before Judge Torres may bolster its showing regarding its '514 claims. Depending on the outcome of that controversy, the Court's ruling is without prejudice, on that very narrowly circumscribed basis, to the extent Carnival might believe it has a good faith basis to renew its motion in that limited regard.

7–8.) As he explains it, "the genuinely disputed facts of invalidity and unenforceability infect the balance of the patent-related claims." (*Id.* at 8.) Based on this infection, Judge Torres found summary judgment on any of DeCurtis's antitrust or tort claims unwarranted. While the Court agrees a resolution of the validity and enforceability issues would certainly aid the Court, the Court disagrees that this sought-after efficiency thwarts the Court's consideration of Carnival's position altogether. Indeed, upon a de novo review, the Court finds Carnival's points on summary judgment well taken. The Court, therefore, and as more fully explained below, sustains Carnival's objections, and instead grants summary judgment in Carnival's favor as to DeCurtis's antitrust and tort claims as well as any other claims or defenses to the extent they are based on the same alleged inequitable conduct.

Under the *Noerr-Pennington* doctrine and the patent privilege, a patentholder is, ordinarily, shielded from liability based on its patent communications and claims. The *Noerr–Pennington* doctrine protects the First Amendment guarantee of the right of the people to petition the government. Under the *Noerr–Pennington* doctrine, those who petition the government, including the courts, for redress are "generally immune from antitrust liability." *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 56 (1993). Relatedly, as to the patent privilege, "federal patent law bars the imposition of liability for publicizing a patent in the marketplace." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356 (Fed. Cir. 1999).

These protections, however, are not absolute and are subject to exceptions. The *Noerr-Pennington* doctrine can be overcome by a showing that the patent owner either engaged in sham litigation or obtained the patent through knowing and willful fraud. *See Andrx Pharm., Inc. v. Elan Corp.*, PLC, 421 F.3d 1227 (11th Cir. 2005) (sham litigation); *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 174 (1965) (fraud). Similarly, the patent-privilege shield is ineffective upon a showing that the patentholder acted in bad faith. *Hunter Douglas*, 153 F.3d at 1336. It is these exceptions that are at the heart of the parties' dispute on summary judgment.

**(1) DeCurtis has failed to come forward with record evidence or argument establishing a genuine issue of material fact regarding the sham-litigation exception.**

"The burden falls on the party challenging immunity to show that the underlying litigation is a 'sham.'" *Atico Intern. USA, Inc. v. LUV N' Care, Ltd.*, 09-60397-CIV-COHN, 2009 WL 2589148, at *3 (S.D. Fla. Aug. 19, 2009) (Cohn,

J.). To prove "sham litigation" DeCurtis must show that: (1) Carnival's lawsuit is objectively baseless; *and* (2) Carnival acted with the "subjective motivation to interfere directly with the business relationships of a competitor." *Andrx Pharm.*, 421 F.3d at 1234 (cleaned up). Establishing that a lawsuit is objectively baseless is far from a simple task, requiring a showing that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate*, 508 U.S. at 60. Importantly, a court "must remember that even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at 61 n. 5 (cleaned up). That is, "sham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Id.* at 62. DeCurtis's showing does not establish that Carnival's suit is objectively baseless.

DeCurtis's attempt to show that Carnival's case is objectively baseless is wholly conclusory and unsupported. The entirety of DeCurtis's argument, in its summary-judgment opposition brief, was that Carnival has asserted "bogus 'trade secrets' and overbroad, unenforceable patents against technology it knows does not infringe to make this litigation as expensive and burdensome as possible." (DeCurtis's Resp. to Carnival Mot. for Summ. J. at 17.) In support of its position, DeCurtis points to a Third Circuit opinion where the court there acknowledged that "one might imagine a situation where a single claim, separated from an otherwise arguably meritorious suit, is so harmful and costly to a defendant that it might impose anticompetitive harm on the defendant in a way that triggers the sham litigation exception to *Noerr–Pennington*." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 414 (3d Cir. 2016). DeCurtis offers no further elaboration. Without more, the Court cannot conclude that Carnival's trade-secrets or any of its patent claims are objectively baseless or, even if they were, that they would be so harmful that they would taint the entirety of Carnival's case. Accordingly, upon a de novo review, the Court finds the sham-litigation exception inapplicable here.

### (2) DeCurtis has failed to come forward with record evidence or argument establishing a genuine issue of material fact regarding the *Walker Process* fraud exception.

In opposing Carnival's motion for summary judgment, DeCurtis maintained the *Noerr-Pennington* doctrine was also inapplicable under the *Walker Process* fraud exception. *Walker Process*, 382 U.S. at 174 (holding that "the enforcement of a patent procured by fraud on the Patent Office may be violative of [federal antitrust law] provided the other elements necessary to a[n] [antitrust] case are present."). In support, DeCurtis pointed to (1) Carnival's

alleged omission of David DeCurtis as an inventor of the Asserted Patents; and (2) Carnival's alleged purposeful omission of David DeCurtis, intending to deceive the PTO in seeking the Asserted Patents. (DeCurtis's Resp. to Carnival's Mot. for Summ. J. at 8–17.) Although there may be genuine issues of material fact as to inventorship, the Court finds no such showing with respect to Carnival's alleged intent to deceive and, accordingly, finds DeCurtis has failed to ward off summary judgment on this point.

The *Walker Process* fraud exception, as it is commonly referred to, requires, as a starting point, "(1) a false representation or deliberate omission of a fact material to patentability (2) made with the intent to deceive the patent examiner, (3) on which the examiner justifiably relied in granting the patent, and (4) but for which misrepresentation or deliberate omission the patent would not have been granted." *NRT Tech. Corp. v. Everi Holdings Inc.*, CV 19-804-MN-JLH, 2020 WL 3403091, at *5 (D. Del. June 19, 2020), *report and recommendation adopted,* CV 19-804 (MN) (JLH), 2020 WL 5742792 (D. Del. Sept. 25, 2020). Further, "[c]laims of *Walker Process* fraud must satisfy the particularity requirement of Rule 9(b)" which "requires pleading the who, what, when, where, and how of the events at issue." *Id.* As to intent to deceive, a patent challenger must ultimately show, by clear and convincing evidence, "that deceptive intent [is] the single most reasonable inference to be drawn from the evidence." *U.S. Water Services, Inc. v. Novozymes A/S*, 843 F.3d 1345, 1352 (Fed. Cir. 2016) ("In situations of nondisclosure of information rather than affirmative misrepresentation, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference.") (cleaned up).

As an initial matter, DeCurtis argues that it need only show some factual dispute as to deceptive intent rather than, more onerously, pointing to record evidence showing that deceptive intent is "the single most reasonable inference able to be drawn from the evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). In support of its argument, DeCurtis cites several cases (DeCurtis's Resp. to Objs. at 12; DeCurtis's Resp. to Mot. for Summ. J. at 4–5, 10), which either do not stand for that proposition or with which the Court's disagrees.

For example, DeCurtis cites to *Ohio Willow Wood Co. v. Alps S., LLC*, for the proposition that "district courts routinely deny summary judgment of inequitable conduct because of the factual issues that remain." (DeCurtis's Objs. at 12 (citing *Ohio Willow*, 735 F.3d at 1351); *see also* DeCurtis's Resp. to Carnival's Mot. For Summ. J. at 12.) But that is not what the Federal Circuit said in that case—far from it. Instead, the *Ohio Willow Wood* court made clear that, in evaluating a motion for summary judgment, "when there are multiple

reasonable inferences that may be drawn, intent to deceive *cannot be found.*" 735 F.3d at 1351 (emphasis added). Although the court there reversed the district court's grant of summary judgment (in favor of the patentee) on the intent-to-deceive element, it did not do so based on mere "factual issues," as DeCurtis suggests. Instead, it did so based on the conclusion that "the collective weight of this evidence supports our conclusion that the evidence would support a finding of intent that is the *single most reasonable inference* to be drawn from the evidence at this stage of the proceedings." *Id.* at 1351 (emphasis added). That is a far cry from a mere "factual issue."

Similarly, DeCurtis looks to a Middle District of Florida district-court case for the same proposition, again ignoring *Therasense's* "single most reasonable inference" language. In that case, *Mitsubishi Heavy Indus., Ltd. v. Gen. Elec. Co.*, the court denied a patentee's motion for summary judgment on the intent-to-deceive issue. 6:10-CV-812-ORL-28, 2012 WL 4336208, at *4 (M.D. Fla. Sept. 21, 2012). But in doing so, the court reiterated that a challenger, to prevail, must show that "the specific intent to deceive is the single most reasonable inference able to be drawn from the evidence." *Id.* (cleaned up). And, in finding for the challenger, the court identified multiple pieces of evidence, including a document "directly on point," in favor of the challenger as well as pivotal credibility issues which, on a motion for summary judgment, the Court was unable resolve. *Id.* The *Mitsubishi Heavy* court did not clarify the precise standard on which it relied, but it appears the evidence it identified could have been substantial enough, read in the light most favorable to the challenger, to support a finding that an intent to deceive was "the single most reasonable inference able to be drawn" from the record.

In contrast, in *Alcon Research, Ltd. v. Apotex, Inc.*, another case DeCurtis relied on, the court concluded that *Therasense* set forth the standard a challenger would need to prove at trial, not the standard on a motion for summary judgment. 1:09-CV-102-RLY-TAB, 2013 WL 2244338, at *8 (S.D. Ind. May 21, 2013). Instead, concluded the *Alcon* court, the proper inquiry, on a patentee's motion for summary judgment, should be only "whether, viewing the evidence in the light most favorable to the [challenger], no reasonable trier of fact could find the Applicants acted with the specific intent to deceive the PTO." *Id.* While the Court agrees that, certainly, the evidence must be viewed in the light most favorable to the nonmovant—here, DeCurtis—the standard in *Therasense* nonetheless still applies. That is, for a patentee to prevail on a motion for summary judgment, on the intent-to-deceive issue, the evidence, viewed in the light most favorable to the challenger, must show that no reasonable trier of fact could find that "the specific intent to deceive is the single most reasonable inference able to be drawn." *See Intercontinental Great*

*Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1352 (Fed. Cir. 2017) (in affirming a district court's grant of summary judgment in favor a patentee on intent to deceive, concluding "that the *Therasense* intent standard could not be met") ("[T]he record does not support an inference of deceptive intent under the *Therasense* standard.").

The other two cases DeCurtis relies on are equally unavailing. *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.*, for example, was decided before *Therasense*. 606 F.3d 1353 (Fed. Cir. 2010). And *Morningware, Inc. v. Hearthware Home Products, Inc.*, for its part, merely concluded that a finding in favor of a *challenger*, on a motion for summary judgment, on the inequitable-conduct issue, is "rarely appropriate." 898 F. Supp. 2d 1018, 1022 (N.D. Ill. 2012). That has little bearing on this case, where the issue is whether DeCurtis, who carries the burden to prove intent to deceive, has come forward with evidence sufficient to carry it past summary judgment.

In light of the *Therasense* standard, the Court finds DeCurtis's showing wholly insufficient to get past summary judgment. Indeed, the bulk of DeCurtis's support simply highlights the dearth of any intent-to-deceive evidence at all, never mind enough to show that the intent to deceive is the single most reasonable inference to be drawn from the record. For example, in opposing summary judgment, DeCurtis complained that "there is no evidence—*none*—explaining why Carnival . . . chose to omit Mr. DeCurtis as an inventor." (DeCurtis's Resp. to Mot. for Summ. J. at 14.) Indeed, DeCurtis repeatedly points to a lack of any evidence from Carnival showing that David DeCurtis was omitted for a good-faith or legitimate reason. (*Id.* at 14, 16.) But a patentee's failure to produce evidence affirmatively showing good faith does not equate to a concomitant showing of bad faith, especially when the burden falls to the challenger to make its case for inequitable conduct. Put simply, "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense*, 649 F.3d at 1290. DeCurtis improperly flips the parties' respective burdens when it complains that "[w]hether an inference of 'good faith' is reasonable here is a complex, fact[-]intensive question, ill-suited to summary judgment." (DeCurtis's Resp. to Mot. for Summ. J. at 17.) Carnival does not need to proactively prove good faith in order to establish that DeCurtis has failed to come forward with evidence "sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Therasense*, 649 F.3d at 1290 (emphasis in original). To be sure, "a patentee need not offer any good faith explanation unless the accused infringer first proves a threshold level of intent to deceive by clear and convincing evidence." *Id.* at 1296 (cleaned up).

Moreover, the Court finds the record reveals evidence that, even if read in the light most favorable to DeCurtis, reasonably indicates Carnival did not intend to defraud the Patent Office and, instead, omitted David DeCurtis because it was actually believed he was not, in fact, an inventor. For example, not a single inventor testified that David DeCurtis should have been named on any Carnival patent. (*See, e.g.*, Carnival's Reply to Mot. for Summ. J. at 7.) But even if these inventors were incorrect in their beliefs, without any evidence in the record showing that these inventors were lying, the most that can be inferred is a mistake. *See Great Brands*, 869 F.3d at 1352 (noting that the challenger had presented "no admission or anything similar indicating that any relevant [patentee] officer or representative" "actually believed" the error was actually an error).

DeCurtis pins much of its position on "an internal Carnival memorandum in the record that predates the Asserted Patents and includes David DeCurtis among a 'List of Inventors' responsible for numerous '[p]atent ideas.'" (DeCurtis's Resp. to Objs. at 11 (quoting Rep. & Rec. at 8 n. 7).) But to draw fraudulent intent from this document, the Court would have to make a number of unsupported inferential leaps. For example, the Court would have to infer that Carnival believed this document, which predates the patent application by almost two years and which does not track what Carnival *actually* patented, accurately lists all the inventors who should have been included in the application. But DeCurtis has provided no evidence that this is so. And, to the contrary, Carnival has presented evidence that the author of this document has himself testified that he may have erred in labelling the memo in the way that he did. (*See, e.g.*, Carnival Objs. at 11.) Ultimately, at most, the memo shows a potential omission which, in and of itself is not enough. "[T]o find a prosecution omission fraudulent there must be evidence of intent separable from the simple fact of the omission." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007) (noting that an omission "could happen for any number of nonfraudulent reasons—the applicant could have had a good-faith belief that disclosure was not necessary, or simply have forgotten to make the required disclosure").

Nor is the Court persuaded by DeCurtis's motive and pattern theories that it says show an intent to deceive. As to motive, DeCurtis has presented no actual evidence that Carnival believed David DeCurtis had any material information to disclose to the PTO. Nor has DeCurtis demonstrated any sort of pattern of deception. Both theories are supported by nothing more than argument and unmoored speculation.

In sum, then, DeCurtis has failed to carry its "demanding" *Therasense* burden, in opposing Carnival's summary-judgment motion, to come forward

with evidence sufficient to show that deceptive intent is "the single most reasonable inference able to be drawn from the evidence." *Great Brands*, 869 F.3d at 1351 (cleaned up).

### (3) DeCurtis has failed to come forward with record evidence or argument establishing a genuine issue of material fact regarding bad faith to overcome the patent privilege doctrine.

Finally, DeCurtis's arguments as to Carnival's bad faith miss the mark as well. Because there is a "presumption that the assertion of a duly granted patent is made in good faith," in general, "federal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith." *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1370 (Fed. Cir. 2002) (cleaned up). Like the sham-litigation exception, the "bad faith standard cannot be satisfied absent a showing that the patentee's assertions were objectively baseless." *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1373 (Fed. Cir. 2007). As more fully fleshed out above, DeCurtis has failed to make such a showing as to either Carnival's patent notice communications or this litigation.

In sum, then, Carnival is protected from suit regarding DeCurtis's antitrust, tortious interference, and unfair-competition claims under the *Noerr-Pennington* doctrine and the patent privilege. Because of this finding, the Court declines to pass on the parties' separate quarrels regarding the elements of these claims. To the extent any of DeCurtis's other claims or defenses also rely on its allegations of inequitable conduct due to inventorship omission, summary judgment is entered on those allegations as well.

## 4. Conclusion

As set forth above, the Court **adopts** Judge Torres's report and recommendations **in part** (**ECF No. 426**). As to DeCurtis's motion, the Court **grants** its request for summary judgment, **in part**, and **denies** it, **in part**. (**ECF No. 292**.) Summary judgment is thus granted in DeCurtis's favor only with respect to claim 11 of the '514 patent and the patent infringement claim that relies on that particular aspect of this patent in suit. As to all other theories raised in DeCurtis's motion, summary judgment is denied.

As to Carnival's motion, on the other hand, the Court parts ways with the report in a key respect, rejecting its recommendation to deny Carnival's motion for summary judgment in its entirety. Instead, the Court **grants** Carnival's motion for summary **in part**, and **denies** it, **in part**. (**ECF No. 288**.) Importantly, the Court grants summary judgment in Carnival's favor on DeCurtis's antitrust, tortious interference, and unfair-competition claims along

with any of DeCurtis's claims or defenses that rest on a showing of inequitable conduct as to inventorship omission. In all other respects, the Court adopts the report's recommendation to deny Carnival's motion.

      Accordingly, the Court **sustains** Carnival's objections, **in part**, and **overrules** them, **in part**, as fully explained above (**ECF No. 429**). The Court **overrules** DeCurtis's objections in their entirety (**ECF No. 431**).

      Lastly, vast swaths of the parties' filings, addressed in this order, were filed under seal, due to information designated highly confidential or confidential as provided for in a protective order. Accordingly, the Court directs the Clerk to file this order **under seal**, to be unsealed upon further order from the Court. In the meantime, however, the Court orders the parties to immediately meet and confer and to, thereafter, **on or before February 14**, either (1) advise the Court that the order may appear on the public docket, without redaction, or (2) jointly agree on a redacted version of the order, in accordance with the protective order in this case, and upload that version of the order themselves, attached to a notice of filing.

      **Done and ordered** at Miami, Florida, on February 8, 2023.

Robert N. Scola, Jr.
United States District Judge