**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

| | |
|---|---|
| DECURTIS LLC, *Plaintiff*, v. CARNIVAL CORPORATION, *Defendant*. CARNIVAL CORPORATION, *Plaintiff*, v. DECURTIS CORPORATION and DECURTIS LLC, *Defendants*. | Case No. 20-22945-CIV-SCOLA/Torres |

**DECURTIS'S AMENDED MOTION FOR CLAIM CONSTRUCTION**
**OF "OPERATIVE" IN THE '184 PATENT**

CASE NO.:  20-22945-CIV-SCOLA/Torres

DeCurtis respectfully moves the Court to construe the term "operative" to mean "functional" or "work" to resolve the parties' dispute over the scope of the claim term. Following the Court's order [D.E. 524], the parties met and conferred at 6:30pm eastern today. Carnival disagrees with DeCurtis's construction and asserts that "operative" needs no construction and carries its plain and ordinary meaning.  As discussed below, adopting the plain and ordinary meaning of the term would not resolve the parties' dispute as to claim scope.

### A. The Parties Have a Dispute Over the Scope of the Claim Term "Operative" That Is a Question of Law and Requires the Court's Resolution

The term "operative" appears in each of the asserted claims of Carnival's '184 Patent (claims 1–3, 7, 11–15).  For example, claim 1 recites the following elements:

- each guest device including a wireless communication antenna and *operative to emit a periodic beacon signal broadcasting a unique identifier of the guest device using Bluetooth low energy (BLE) communications*;

- a sensor network comprising a plurality of sensors each mounted at a different known location and *operative to detect the periodic beacon signals including the unique identifiers emitted using BLE communications by portable guest devices* of the plurality of portable guest devices that are proximate to the sensor;

- each access panel is *operative to detect the periodic beacon signals including the unique identifiers emitted using BLE communications by guest devices* that are proximate thereto, and to selectively unlock the associated electronically controlled door lock based on the unique identifier of the detected periodic beacons.

'184 Patent, claim 1; *see also* claim 7 (reciting "operative to emit" and "operative to detect"), claim 15 (reciting "operative to detect").  Other claims recite limitations "operative to transmit" (asserted claim 11), "operative to engage" (asserted claims 12, 13, 14), "operative to selectively unlock" (asserted claim 2), and "operative to report" (asserted claim 3).

The parties did not dispute the meaning of the "operative" term during claim construction and, thus, the Court did not construe the term in its Claim Construction Order.  [D.E. 267 at 36–37; D.E. 413 at 2–3.]  Following the Court's Claim Construction Order, it came to light that the

1

CASE NO.:  20-22945-CIV-SCOLA/Torres

parties have a claim scope dispute regarding the meaning of "operative" in the '184 Patent. Specifically, in response to DeCurtis's motion for summary judgment of non-infringement, Carnival dismissed evidence from Virgin Voyages' Andy Schwalb that Virgin's testing of the "Allure 2 Panel" with DXP was not "operational" and argued that there was evidence that Virgin's door lock access panels are "configured to communicate with the DXP wearable via BLE." [D.E. 300 at 5–6, D.E. 301 at ¶ 22.]  The Court denied DeCurtis's summary judgment motion.[1] [D.E. 426, 494.]  Thus, the jury will be asked to determine, among other things, whether testing of a non-operational system satisfies the "operative" limitations in the asserted claims. [D.E. 300 at 5–6 (Carnival asserting that "whether non-'operational testing' in an 'artificial environment' constitutes testing for purposes of infringement" is a disputed fact "that must be litigated and resolved at trial")].

It has become clear now through the parties' pretrial exchanges and discussions, including the pretrial conference and the parties' meet-and-confer today, that it is up to the jury to decide whether the scope of the claim term "operative" means "functional" or "works" (DeCurtis's position) or whether the claim term is broad enough to encompass capability to have such functionality *i.e.*, "configured to operate" or "configured to."  While this dispute is meaningful to infringement, it is fundamentally a claim construction issue because the resolution of the dispute turns on the parties' competing constructions of "operative" rather than facts

---

[1] In the Report and Recommendation denying DeCurtis's motion for summary judgment of non-infringement, the Magistrate Judge suggested actual implementation was required. [D.E. 426 at 14–15 (citing *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) ("No wrong is done the patentee until the combination is formed.  His monopoly does not cover the manufacture or sale of separate elements capable of being, but never actually, associated to form the invention.  Only when such association is made is there a direct infringement of his monopoly, and not even then if it is done outside the territory for which the monopoly was granted.").] The Court adopted the Magistrate Judge's R&R on this issue. [D.E. 494, at 5–6.]

2

CASE NO.: 20-22945-CIV-SCOLA/Torres

regarding the operation of the accused product. Specifically, if the term is given the meaning that DeCurtis proposes, at least some of Carnival's alleged evidence of infringement is not probative of infringement, including non-operational testing of the accused products.

"This dispute over the scope of the asserted claims is a question of law," and where, as here, "the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360–62 (Fed. Cir. 2008) (remanding because the parties presented their arguments to the jury about claim scope: "when the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute"). That is the case here even though this issue was raised on the eve of trial. The Federal Circuit has made clear that even where a claim construction issue is raised ***during*** trial it is not necessarily untimely. *See GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371–72 (Fed. Cir. 2016) (no waiver where claim construction dispute was raised during trial and "before the case went to the jury").[2] Thus, another court in this District construed a patent term less than a month before trial where the claim construction issue arose after the claim construction order. *See Amgen, Inc. v. Apotex*, No. 15-cv-61631-JIC, Dkts. 181 & 184 (S.D. Fla. Jun. 24, 2016). Other district courts have done the same. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-CV-00630-LHK, 2014 WL 1322028, at *3 (N.D. Cal. Mar. 28, 2014) (considering claim construction "three weeks before trial"); *Intell. Ventures II LLC v. BITCO Gen. Ins. Corp.*, No. 6:18-CV-00298-JRG, 2019 WL 999902, at *2 (E.D. Tex. Feb. 28,

---

[2] *See also Enovsys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1344 (Fed. Cir. 2010) ("Though it had ample opportunity to do so, at no time before or during trial did Sprint Nextel object to the district court's claim construction, request clarification, or offer the construction it now advances on appeal."); *Microchip Tech. Inc. v. Aptiv Servs. US, LLC*, No. 1:17-CV-01194-JDW, 2022 WL 4119755, at *3 (D. Del. Sept. 9, 2022) ("Microchip forfeited its claim construction argument because it did not request construction of the term 'simultaneously configured' before or during trial.").

2019) (construing claim term "[f]ive days before a scheduled pretrial conference and on the very eve of trial").

### B.  "Operative" in the '184 Patent Means "Functional" or "Works"

| '184 Patent Claim Term | Carnival's Proposed Construction | DeCurtis's Proposed Construction |
|---|---|---|
| "operative" | No construction necessary: plain and ordinary meaning | "functional" or "works" |

#### 1.  The Intrinsic Evidence Supports DeCurtis's Proposed Construction

The words of the claims support DeCurtis's proposed construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). For example, "operative to emit" must mean that the guest device is functional or works to emit "a" unique identifier in order to provide antecedent basis for the later claim elements requiring "the" unique identifier "emitted using BLE communications." *See, e.g.*, *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015) (holding that the preamble provides antecedent basis for limitations in the body of the claim). This is clear from asserted claim 7 which requires *first* that the guest device is "operative to emit" a periodic beacon signal broadcasting a unique identifier of a guest device using BLE communications and *then* that the "unique identifiers emitted using BLE communications" are detected or used.

> 7. A guest engagement system comprising:
>
> a plurality of portable guest devices provided to users of the guest engagement system to be carried by the users, each guest device including a wireless communication antenna and ***operative to emit a periodic beacon signal broadcasting a unique identifier*** of the guest device using Bluetooth low energy (BLE) communications;
>
> a sensor network comprising a plurality of sensors each mounted at a different known location and operative to detect the periodic beacon signals including ***the unique identifiers emitted using BLE communications*** by portable guest devices of the plurality of portable guest devices that are proximate to the sensor;

4

\*\*\*

> each access panel is operative to detect the periodic beacon signals including ***the unique identifiers emitted using BLE communications by guest devices*** that are proximate thereto, and to selectively unlock the associated electronically controlled door lock based on the unique identifier of the detected periodic beacons, and

> each interface device comprises an associated sensor of the plurality of sensors of the sensor network, and provides the personalized services to a user proximate thereto based on an identity of the user determined ***based on the unique identifier emitted using BLE communications by a guest device of the user***.

'184 Patent, claim 7 (emphasis added). Similarly, asserted claims 1 and 7 require *first* that the sensor network is "operative to detect" the periodic beacon signals including the emitted unique identifiers, and *then* that the "detected" unique identifiers are associated or used:

> 1. A guest engagement system comprising:

> \*\*\*

> a sensor network comprising a plurality of sensors each mounted at a different known location and ***operative to detect the periodic beacon signals including the unique identifiers*** emitted using BLE communications by portable guest devices of the plurality of portable guest devices that are proximate to the sensor;

> \*\*\*

> a central server communicatively connected to each of the plurality of sensors of the sensor network via the communication network, and storing a log associating ***each unique identifier of a portable guest device detected using BLE communications*** by a sensor of the sensor network with the known location of the sensor and a timestamp,

> \*\*\*

> each access panel is operative to detect the periodic beacon signals including the unique identifiers emitted using BLE communications by guest devices that are proximate thereto, and to selectively unlock the associated electronically controlled door lock ***based on the unique identifier of the detected periodic beacons*** . . .

'184 Patent, claim 1; *see also* claim 7. Asserted dependent claims 2 and 3 also require "the unique identifier of the ***detected*** periodic beacon" and "the unique identifiers ***detected*** using BLE communications." *Id.* at claims 2, 3 (emphasis added).

5

CASE NO.: 20-22945-CIV-SCOLA/Torres

The claims also confirm that "operative" does not mean "configured" because Carnival chose to use the term "configured for" with respect to other claim elements. *Id.* at claim 1 (reciting "a radio ***configured for*** . . .; a first transceiver ***configured for*** . . .; and a second transceiver ***configured for*** . . . ."), claim 5 (reciting "network transceiver ***configured for*** communication across the communication network"), claim 11 (reciting "antennas respectively ***configured for*** Bluetooth low energy (BLE)"), claim 16 (reciting "configured to detect guest devices"). Having chosen to use the term "operative" rather than "configured" or "configured to operate," Carnival cannot rewrite its claims now to give those different terms the same meaning. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1370 ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in meaning of those terms.").

The specification also supports DeCurtis's proposed construction. Carnival's alleged invention here is a "guest engagement system" whose components are functional to detect and emit BLE communications, and not a system that is configured to have that functionality without it being turned on. For example, the specification repeatedly discusses that the periodic beacon signals "are detected" and that the unique identifier is "detected using BLE communications." *See, e.g.*, '184 Patent at 2:2-4, 28:11, 32:16. And the specification describes that "[t]he access panel 705 maintains its BLE transceiver (or the BLE transceiver of the associated sensor 15) ***activated so as to detect any beacon signals*** transmitted by medallions 11 operating in proximity to the access panel 705." *Id.* at 20:7-11 (emphasis added). The specification also describes that the system is "used by the medallion 11 to emit periodic beacon signals." *Id.* at 15:40.

Accordingly, the intrinsic evidence confirms that DeCurtis's construction is correct because it "stays true to the claim language and most naturally aligns with the patent's

6

CASE NO.: 20-22945-CIV-SCOLA/Torres

description of the invention" in view of "what the inventors actually invented and intended to envelop with the claim." *AWH Corp.*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

### 2. Carnival's Proposal to Construe the Term to Have its Plain and Ordinary Meaning Does Not Resolve the Parties' Dispute

Carnival does not agree with DeCurtis's proposed construction and opposes this motion, but Carnival has not provided its own construction beyond asking that the term be given its plain and ordinary meaning. This is contrary to *O2 Micro International Ltd.*:

> A determination that a claim term "needs no construction" or has the "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute.

521 F.3d at 1361. Indeed, Carnival's proposed construction to adopt the "plain and ordinary meaning" of the term "would leave unresolved the parties' disputes and would largely negate the importance of the claims construction process." *Baxter Healthcare Corp. v. Mylan Lab'ys Ltd.*, 346 F. Supp. 3d 643, 653 (D.N.J. 2016).

District courts thus reject proposals that "disputed claim terms require no construction, or can be construed simply by reference, without explanation, to the 'plain and ordinary meaning'" because such an approach is unhelpful to resolving the parties' legal dispute as to claim scope. *Id.* And district courts have ordered that: "If a party believes that a term should be given its plain and ordinary meaning, then the party needs to state what that plain and ordinary meaning is." *Charles Smith Enters., LLC v. Catapult Sports, Inc.*, No. 1:21-1278-CFC, Dkt. No. 62, slip op. at 1–2 (D. Del. Feb. 8, 2023) (attached as Ex. A); *see Hybrid Audio, LLC v. Asus Comput. Int'l Inc.*, No. 3:17-cv-05947-JD, 2022 WL 3348594, at *3 (N.D. Cal. Aug. 12, 2022) (rejecting "plain and ordinary meaning, without saying what that might be" as unhelpful).

CASE NO.: 20-22945-CIV-SCOLA/Torres

## CONCLUSION

For these reasons, DeCurtis respectfully requests that the Court construe the term "operative" in the '184 Patent to mean "functional" or "works."

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.01(a)(3)

The undersigned certifies that on February 22, 2023, he conferred in good faith with counsel for Carnival (T. Vann Pearce, Jr., Melanie Bostwick, and Robert Uriarte) who advised that Carnival disagrees with DeCurtis's construction and that Carnival's position is that "operative" needs no construction and carries its plain and ordinary meaning.

CASE NO.: 20-22945-CIV-SCOLA/Torres

Dated: February 22, 2023

By: */s/ Adam L. Schwartz*

| | |
|---|---|
| Nicholas Groombridge (*pro hac vice*) | Adam Louis Schwartz |
| Nick.groombridge@groombridgewu.com | aschwartz@homerbonner.com |
| Jennifer H. Wu (*pro hac vice*) | Florida Bar No.: 103163 |
| Jennifer.wu@groombridgewu.com | Brian Lechich |
| Daniel J. Klein (*pro hac vice*) | blechich@homerbonner.com |
| Dan.klein@groombridgewu.com | Florida Bar No.: 84419 |
| Allison Penfield (*pro hac vice*) | Antonio M. Hernandez, Jr., Esq. |
| Allison.penfield@groombridgewu.com | Email: ahernandez@homerbonner.com |
| Kyle N. Bersani (*pro hac vice*) | Florida Bar No.: 117756 |
| Kyle.bersani@groombridgewu.com | **HOMER BONNER JACOBS ORTIZ, P.A.** |
| **GROOMBRIDGE, WU, BAUGHMAN & STONE LLP** | 1200 Four Seasons Tower |
| 565 Fifth Avenue, Suite 2900 | 1441 Brickell Avenue |
| New York, NY 10017 | Miami, FL 33131 |
| Tel. (332) 269-0030 | Tel. (305) 350-5100 |
| | |
| Saurabh Gupta (*pro hac vice*) | Martha A. Leibell |
| Saurabh.gupta@groombridgewu.com | Martha.leibell@morganlewis.com |
| **GROOMBRIDGE, WU, BAUGHMAN & STONE LLP** | Florida Bar No. 1106990 |
| 801 17th Street NW, Suite 1050 | **MORGAN LEWIS & BOCKIUS LLP** |
| Washington, D.C. 20006 | 600 Brickell Avenue, Suite 1600 |
| Tel. (202) 505-6566 | Miami, FL 33131 |
| | Tel. (305) 415-3000 |
| | |
| | Julie S. Goldemberg (*pro hac vice*) |
| | Julie.goldemberg@morganlewis.com |
| | **MORGAN LEWIS & BOCKIUS LLP** |
| | 1701 Market Street |
| | Philadelphia, PA 19103 |
| | Tel. (215) 963-5095 |

*Attorneys for DeCurtis LLC & DeCurtis Corporation*